HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
MARK R. DROZDOWSKI (Bar No. 166669)
(E–Mail: Mark_Drozdowski@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-7520
Facsimile: (213) 894-0081

Attorneys for Petitioner
DONALD RAY MILLWEE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DONALD RAY MILLWEE,<br><br>                    Petitioner,<br><br>          v.<br><br>KELLY MITCHELL, Warden,<br>California State Prison at San<br>Quentin,<br><br>                    Respondent. | Case No. CV 99-07220-AB<br><br>**DEATH PENALTY CASE**<br><br>**PETITIONER'S OPENING MERITS BRIEF** |

# TABLE OF CONTENTS

Page

I. STATEMENT OF FACTS ................................................................................ 1

II. AEDPA PRINCIPLES ................................................................................... 5

III. THE INADEQUATE STATE COURT HABEAS PROCESS INFORMS THE
§ 2254 ANALYSIS ........................................................................................ 10

IV. MILLWEE IS ENTITLED TO RELIEF UNDER § 2254(A) AND § 2254(D)
DOES NOT PREVENT RELIEF ..................................................................... 18

    A.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ...................... 18

NINETEENTH CLAIM FOR RELIEF FOR INEFFECTIVE ASSISTANCE OF
COUNSEL AT PENALTY PHASE ................................................................ 18

        1.    Legal Principles ....................................................................... 19

        2.    Deficient Performance ............................................................. 19

        3.    Prejudice ................................................................................. 21

        4.    The Aggravation and Mitigation Evidence Presented at
Millwee's Penalty Re-Trial ...................................................... 23

        5.    Section 2254(d) Does Not Bar Relief on the Portions of the
Claim Raised on Direct Appeal ............................................... 28

        6.    Millwee Is Entitled to Relief on the Portions of the Claim Raised
in the First State Habeas Petition ............................................. 30

            a.    Ineffective Assistance for Failure to Properly Investigate
Mitigation Evidence ..................................................... 30

                (1)    Deficient Performance .............................................. 34

                (2)    Prejudice ................................................................... 36

            b.    Ineffective Assistance for Failing to Develop a Viable
Theory of the Case and to Present Mitigating Evidence
Already Obtained by Defense Investigators ................... 40

            c.    Counsel Was Ineffective for Failing to Call Available
Witnesses and Failing to Prepare the Witnesses Who Did
Testify .......................................................................... 41

            d.    Counsel Was Prejudicially Ineffective for Failing to
Challenge the State's Evidence in Aggravation ............. 42

        7.    Millwee Is Entitled to Relief on the Claim Raised in His
Exhaustion Petition ................................................................ 43

                (1)    Deficient Performance .............................................. 49

                  (2)    Prejudice ................................................................... 51

i

# **TABLE OF CONTENTS**

Page

SECOND CLAIM FOR RELIEF FOR INEFFECTIVE ASSISTANCE OF COUNSEL DURING PRETRIAL AND GUILT PHASE PROCEEDINGS......55

      1.  Applicable Law.................................................................56

      2.  Counsel's Prejudicially Deficient Performance Regarding Forensic and Impeachment Evidence ................................57

      3.  Counsel's Prejudicially Deficient Performance in Failing to Investigate and Present Evidence of Mental State Defenses..........62

      4.  Counsel Was Ineffective in Failing to Investigate Millwee's Competence to Stand Trial ................................................64

FIRST CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN FAILING TO GRANT MILLWEE'S MOTION TO DISMISS PURSUANT TO PENAL CODE SECTION 995 FOR INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE PRELIMINARY HEARING .......................................65

    B.    REMAINING CLAIMS...............................................67

THIRD CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN FAILING TO GRANT MILLWEE'S MOTION TO RECUSE DISTRICT ATTORNEY DANIEL LOUGH .......................................................................67

FOURTH CLAIM FOR RELIEF FOR VINDICTIVE PROSECUTION AND DENIAL OF PETITIONER'S RIGHT TO A DISINTERESTED PROSECUTOR ...............................................................................69

FIFTH CLAIM FOR RELIEF FOR PETITIONER'S INCOMPETENCE TO STAND TRIAL AND FOR THE TRIAL COURT'S FAILURE TO CONDUCT A COMPETENCY HEARING........................................70

      1.  Legal Principles .............................................................71

      2.  A Reasonable Judge in the Trial Court's Position Would Have Had a Bona Fide Doubt of Millwee's Competence, and Therefore the Trial Court Violated Petitioner's Constitutional Rights By Failing to Hold a Competency Hearing........................73

      3.  The State Court Unreasonably Denied Millwee's Substantive Incompetence Claim ........................................................80

SIXTH CLAIM FOR RELIEF FOR DENIAL OF ASSISTANCE OF A COMPETENT MENTAL HEALTH PROFESSIONAL....................................82

SEVENTH CLAIM FOR RELIEF TRIAL COURT ERROR IN ALLOWING INTO EVIDENCE A STATEMENT BY MILLWEE CONTAINING A RACIAL SLUR ...............................................................................83

EIGHTH CLAIM FOR RELIEF FOR THE TRIAL COURT'S ERRONEOUS ADMISSION OF INFLAMMATORY AND IRRELEVANT EVIDENCE TO IMPEACH MILLWEE FOLLOWING HIS TESTIMONY........................85

ii

# TABLE OF CONTENTS

Page

NINTH AND ELEVENTH CLAIMS FOR RELIEF FOR INSUFFICIENT EVIDENCE TO SUPPORT THE SPECIAL CIRCUMSTANCES AND PREMEDITATED MURDER ........................................................................ 88

TENTH CLAIM FOR RELIEF FOR ACTUAL INNOCENCE OF THE UNDERLYING OFFENSES ............................................................................ 90

TWELFTH AND TWENTIETH CLAIMS FOR RELIEF FOR PROSECUTORIAL MISCONDUCT ............................................................................................. 91

FOURTEENTH CLAIM FOR RELIEF FOR VIOLATION OF PETITIONER'S RIGHT TO A FAIR AND IMPARTIAL JURY ............................................. 94

FIFTEENTH CLAIM FOR RELIEF FOR ERROR IN FAILING TO GRANT A NEW GUILT TRIAL BASED ON THE MENTAL INCOMPETENCE OF JUROR LAURIE JORDAN ......................................................................... 96

SEVENTEENTH CLAIM FOR RELIEF FOR RESTRAINING PETITIONER IN THE PRESENCE OF JURORS WITHOUT JUSTIFICATION ...................... 104

TWENTY-SECOND CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN FAILING TO INSTRUCT THE JURY ON LESSER-INCLUDED-OFFENSES ......................................................................................................... 105

TWENTY-FIFTH CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN INSTRUCTING THE JURY IN TERMS OF "MORAL CERTAINTY"AND "MORAL EVIDENCE" ....................................................................... 107

TWENTY-SEVENTH CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN INSTRUCTING THE JURY TO CONSIDER AGGRAVATING AND MITIGATING CIRCUMSTANCES WITHOUT ADEQUATELY EXPLAINING THEM ......................................................................... 108

TWENTY-NINTH CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN FAILING TO GIVE A RESIDUAL DOUBT INSTRUCTION IN THE PENALTY PHASE ......................................................................... 111

THIRTIETH CLAIM FOR RELIEF FOR UNCONSTITUTIONAL SENTENCING STATUTE AND ERRORS IN PENALTY PHASE INSTRUCTION OF THE JURY ......................................................................... 112

THIRTY-THIRD CLAIM FOR RELIEF FOR DENIAL OF PETITIONER'S CONSTITUTIONAL RIGHT TO PROPORTIONATE PUNISHMENT ......... 115

THIRTY-FOURTH CLAIM FOR RELIEF FOR CUMULATIVE ERRORS DURING THE GUILT AND PENALTY PHASES OF PETITIONER'S TRIAL ......................................................................... 116

THIRTY-FIFTH CLAIM FOR RELIEF FOR LETHAL INJECTION AS A VIOLATION OF CONSTITUTIONAL GUARANTEES AGAINST CRUEL AND UNUSUAL PUNISHMENT ................................................. 120

THIRTY-SIXTH CLAIM FOR RELIEF FOR INFLICTION OF THE DEATH PENALTY WITHOUT ANY LEGITIMATE GOVERNMENTAL PURPOSE ......................................................................... 121

# TABLE OF CONTENTS

Page

THIRTY-SEVENTH CLAIM FOR RELIEF FOR UNCONSTITUTIONAL DENIAL OF MEANINGFUL STATE COURT REVIEW AND INEFFECTIVE ASSISTANCE OF APPELLATE AND STATE HABEAS COUNSEL....................................................................................123

THIRTY-EIGHTH CLAIM FOR RELIEF FOR VIOLATION OF PETITIONER'S RIGHT TO BE COMPETENT IN HABEAS PROCEEDINGS .......................125

THIRTY-NINTH CLAIM FOR RELIEF FOR VIOLATION OF PETITIONER'S RIGHT NOT TO BE EXECUTED WHILE INCOMPETENT........................126

V. REMAINING PETITION CLAIMS .......................................................127

VI. CONCLUSION .............................................................................127

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Abdul-Kabir v. Quarterman,*
550 U.S. 233 (2007) ................................................................................... 7

*Agan v. Singletary,*
12 F.3d 1012 (11th Cir. 1994) ............................................................... 54

*Ainsworth v. Woodford,*
268 F.3d 868 (9th Cir. 2001) ................................................................. 37

*Ake v. Oklahoma,*
470 U.S. 68 (1985) ............................................................................ 82, 83

*Alcala v. Woodford,*
334 F.3d 862 (9th Cir. 2003) .......................................................... 42, 117

*Apprendiv. New Jersey,*
530 U.S. 466 (2000) ............................................................................. 111

*Atkins v. Virginia,*
536 U.S. 304 (2002) ......................................................................... 16, 17

*Banks v. Dretke,*
540 U.S. 668 (2004) ............................................................................... 37

*Baze v. Rees,*
553 U.S. 35 (2008) ............................................................................... 121

*Beam Distilling Co. v. Georgia,*
501 U.S. 529 (1991) ............................................................................... 78

*Bean v. Calderon,*
163 F.3d 1073 (9th Cir. 1998) ................................................. 22, 35, 41

*Beardslee v. Woodford,*
358 F.3d 560 (9th Cir. 2004) ................................................................. 21

*Beck v. Alabama,*
447 U.S. 625 (1980) ............................................................................. 106

*Bemore v. Chappell,*
788 F.3d 1151 (9th Cir. 2015) ....................................................... *passim*

*Benn v. Lambert,*
283 F.3d 1040 (9th Cir. 2002) ............................................................... 79

*Berger v. United States,*
295 U.S. 78 (1935) ................................................................................. 70

*Berghuis v. Thompkins,*
560 U.S. 370 (2010) ................................................................................. 6

*Bloom v. Calderon,*
132 F.3d 1267 (9th Cir. 1997) ......................................................... 63, 64

v

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Bouchillon v. Collins,*
907 F.2d 589 (5th Cir. 1990) .................................................................. 54, 55

*Boumediene v. Bush,*
553 U.S. 723 (2008) ............................................................................ 18, 125

*Boyde v. Brown,*
404 F.3d 1159 (9th Cir. 2005) ................................................. 19, 23, 42, 72

*Brecht v. Abrahamson,*
507 U.S. 619 (1993) ................................................................ 82, 83, 85, 90

*Brewer v. Quarterman,*
550 U.S. 286 (2007) ...................................................................................... 7

*Brown v. Sternes,*
304 F.3d 677 (7th Cir. 2002) ............................................................... 54, 55

*Brumfield v. Cain,*
135 S. Ct. 2269 (2015) ...................................................................... *passim*

*Cage v. Louisiana,*
498 U.S. 39 (1990) .................................................................................... 108

*Cannedy v. Adams,*
706 F.3d 1148 (9th Cir. 2013) ........................................................... *passim*

*Carella v. California,*
491 U.S. 263 (1989) .................................................................................. 108

*Caro v. Calderon,*
165 F.3d 1223 (9th Cir. 1999) .................................................................... 51

*Caro v. Woodford,*
280 F.3d 1247 (9th Cir. 2002) .................................................................... 21

*Carriger v. Stewart,*
132 F.3d 463 (9th Cir. 1997) ...................................................................... 91

*Chambers v. Mississippi,*
410 U.S. 284 (1973) .................................................................................. 116

*Chein v. Shumsky,*
373 F.3d 978 (9th Cir. 2004) ...................................................................... 88

*Clark v. Brown,*
450 F.3d 898 (9th Cir. 2006) ...................................................................... 90

*Correll,*
539 F.3d 938 ....................................................................................... 35, 41

*Correll v. Ryan,*
539 U.S. 938 (2008) .................................................................................... 35

vi

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Cudjo v. Ayers,*
698 F.3d 752 (9th Cir. 2012) ............................................................. 7

*Cullen v. Pinholster,*
131 S. Ct. 1388 (2011) ........................................................ 8, 11, 19

*Daniels v. Woodford,*
428 F.3d 1181 (9th Cir. 2005) ................................................ 57, 117

*Dawson v. Delaware,*
503 U.S. 159 (1992) ............................................................................ 85

*Deck v. Jenkins,*
768 F.3d 1015 (9th Cir. 2014) ......................................................... 93

*Deck v. Missouri,*
544 U.S. 622 (2005) .......................................................................... 105

*Deere v. Woodford,*
339 F.3d 1084 (9th Cir. 2003) ......................................................... 81

*Drope v. Missouri,*
420 U.S. 162 (1975) ................................................................. *passim*

*Duncan v. Ornoski,*
528 F.3d 1222 (9th Cir. 2008) ......................................................... 56

*Dusky v. United States,*
362 U.S. 402 (1960) .......................................................................... 71

*Dyer v. Calderon,*
151 F.3d 970 (9th Cir. 1998) ..................................................... 95, 96

*Earp v. Ornoski,*
431 F.3d 1158 (9th Cir. 2005) .................................................. passim

*Edgemon v. Lockhart,*
768 F.2d 252 (8th Cir. 1985) ..................................................... 97, 98

*Estelle v. McGuire,*
502 U.S. 62 (1991) ...................................................................... 84, 86

*Evitts v. Lucey,*
469 U.S. 387 (1985) .......................................................................... 125

*Ford v. Wainwright,*
477 U.S. 399 (1986) .......................................................................... 126

*Franklin v. Lynaugh,*
487 U.S. 164 (1988) .......................................................................... 112

*Frantz v. Hazey,*
533 F.3d 724 (9th Cir. 2008) ................................................... 5, 6, 9

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Furman v. Georgia,*
408 U.S. 238 (1972) .................................................................... *passim*

*Ganger v. Peyton,*
379 F.2d 709 (4th Cir. 1967) .......................................................... 69

*Glossip v. Gross,*
135 S. Ct. 2726 (2015)3 .................................................. 91, 121, 122

*Godfrey v. Georgia,*
446 U.S. 420 (1980) .............................................................. 109, 113

*Godinez v. Moran,*
509 U.S. 389 (1993) ........................................................................ 71

*Goldyn v. Hayes,*
444 F.3d 1062 (9th Cir. 2006) ........................................................ 88

*Gonzalez v. Duncan,*
551 F.3d 875 (9th Cir. 2008) ............................................................ 7

*Gonzalez v. Wong,*
667 F.3d 965 (9th Cir. 2011) .......................................................... 92

*Graham v. Florida,*
560 U.S. 48 (2010) ...................................................................... 116

*Green v. White,*
232 F.3d 671 (9th Cir. 2000) .................................................... 90, 95

*Gregg v. Georgia,*
428 U.S. 153 (1976) ...................................................................... 113

*Hall v. Florida,*
134 S. Ct. 1986 (2014) ................................................................. 116

*Harrington v. Richter,*
131 S. Ct. 770 (2011) ................................................................ 6, 78

*Harris v. Nelson,*
394 U.S. 286 (1969) ....................................................................... 18

*Harris v. Wood,*
64 F.3d 1432 (9th Cir. 1995) ......................................................... 117

*Hendricks v. Calderon,*
70 F.3d 1032 (9th Cir. 1995) .......................................................... 39

*Hicks v. Oklahoma,*
447 U.S. 343 (1980) .......................................................... 40, 87, 104

*Hinton v. Alabama,*
134 S. Ct. 1081 (2014) ................................................... 20, 49, 57, 59

# TABLE OF AUTHORITIES

Page(s)

1

**FEDERAL CASES**

2

*Holbrook v. Flynn,*
   475 U.S. 560 (1986) ................................................................. 105

3

4

*House v. Bell,*
   547 U.S. 518 (2006) ................................................................... 91

5

*Hovey v. Ayers,*
   458 F.3d 892 (9th Cir. 2006) ..................................................... 23

6

7

*Hurles v. Ryan,*
   752 F.3d 768 (9th Cir. 2014) ............................................. 10, 104

8

*Illinois v. Allen,*
   397 U.S. 337 (1970) ................................................................. 105

9

10

*Jackson v. Virginia,*
   443 U.S. 307 (1979) ........................................................... 88, 108

11

*Jammal v. Van de Kamp,*
   926 F.2d 918 (9th Cir. 1991) ..................................................... 86

12

13

*Jeffries v. Woods,*
   114 F.3d 1484 (9th Cir. 1996) ................................................... 95

14

*Jenning v. Woodford,*
   290 F.3d 1006 (9th Cir. 2002) ............................................. 57, 64

15

16

*Johnson v. Williams,*
   133 S. Ct. 1088 (2013) .......................................................... 6, 78

17

*Jones v. Richards,*
   776 F.2d 1244 (4th Cir. 1985) ........................................... 69, 122

18

19

*Jones v. Ryan,*
   583 F.3d 626 (9th Cir. 2009) ..................................................... 39

20

*Jordan v. Massachusetts,*
   225 U.S. 167 (1912) ................................................. 96, 101, 104

21

22

*Juan H. v. Allen,*
   408 F.3d 1262 (9th Cir. 2005) ............................................. 88, 89

23

*Kaplany v. Enomoto,*
   540 F.2d 975 (9th Cir. 1976) ..................................................... 73

24

25

*Kennedy v. Louisiana,*
   554 U.S. 407 (2008) ............................................................ 116, i

26

*Kimmelman v. Morrison,*
   477 U.S. 365 (1986) ................................................................... 56

27

28

*Lafferty v. Cook,*
   949 F.2d 1546 (9th Cir. 1991) ............................................ passim

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Lambright v. Schriro,*
490 F.3d 1103 (9th Cir.2007) ....................................................................... 35

*Lambright v. Stewart,*
241 F.3d 1201 (9th Cir. 2001) ...................................................................... 39

*Libberton v. Ryan,*
583 F.3d 1147 (9th Cir. 2009) ...................................................... 19, 45, 53, 117

*Libberton v. Ryan,*
788 F.3d 1147 (9th cir, 2009) ...................................................................... 42

*Lockett v. Ohio,*
438 U.S. 586 (1978) ................................................................................... 111

*Lockyer v. Andrade,*
538 U.S. 63 (2003) ....................................................................................... 7

*Lord v. Wood,*
184 F.3d 1083 (9th Cir. 1999) ...................................................................... 56

*Lowenfield v. Phelps,*
484 U.S. 231 (1988) ................................................................................... 113

*Machine v. Stewart,*
137 F.3d 630 (9th Cir. 1997) ........................................................................ 98

*Mak v. Blodgett,*
970 F.2d 614 (9th Cir. 1992) ................................................................... 39, 120

*Marsh v. County of San Diego,*
680 F.3d 1148 (9th Cir. 2012) ..................................................................... 104

*Marshall v. Rodgers,*
133 S. Ct. 1446 (2013) .................................................................................. 7

*Martinez v. Ryan,*
132 S. Ct. 1309 (2012) ........................................................................... 43, 125

*Maxwell v. Roe,*
606 F.3d 561 (9th Cir. 2010) ............................................................... 71, 77, 79

*Maxwell v. Roe,*
628 F.3d 486 (9th Cir. 2010) .......................................................................... 9

*Mayfield v. Woodford,*
270 F.3d 915 (9th Cir. 2001) ................................................................ 20, 21, 37

*Maynard v. Cartwright,*
486 U.S. 356 (1988) ................................................................................... 113

*McCleskey v. Kemp,*
481 U.S. 279 (1987) .................................................................................... 84

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*McGregor v. Gibson,*
248 F.3d 946 (10th Cir. 2001) ........................................................ 74

*McKinney v. Rees,*
993 F.2d 1378 (9th Cir. 1993) ........................................................ 86

*McMurtrey v. Ryan,*
539 F.3d 1112 (9th Cir. 2008) ........................................................ 77

*McQuiggin v. Perkins,*
133 S. Ct. 1924 (2013) .................................................................... 91

*Medina v. California,*
505 U.S. 437 (1992) ........................................................................ 71

*Milke v. Ryan,*
711 F.3d 998 (9th Cir. 2013) ........................................ 102, 103, 104

*Miller-El v. Cockrell,*
537 U.S. 322 (2003) .......................................................................... 8

*Miller-El v. Dretke,*
545 U.S. 231 (2005) ............................................................... 10, 103

*Miller v. Alabama,*
132 S. Ct. 2455 (2012) .................................................................. 116

*Miller v. Marr,*
141 F.3d 976 (10th Cir. 1998) ............................................... 18, 125

*Monge v. California,*
524 U.S. 721 (1998) ...................................................................... 111

*Murtishaw v. Woodford,*
255 F.3d 926 (9th Cir. 2001) ......................................................... 22

*Napue v. Illinois,*
360 U.S. 264 (1959) ........................................................................ 92

*Nguyen v. Curry,*
736 F.3d 1287 (9th Cir. 2013) ........................................... 43, 45, 125

*Nunes v. Mueller,*
350 F.3d 1045 (9th Cir. 2003) ................................................. 13, 38

*Odle v. Woodford,*
238 F.3d 1084 (9th Cir. 2001) ........................................ 73, 79, 80, 81

*Panetti v. Quarterman,*
551 U.S. 930 (2007) .......................................................... 7, 9, 71, 126

*Panzavecchia v. Wainwright,*
658 F.2d 337 (5th Cir. 1981) ......................................................... 86

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Parle v. Runnels,*
505 F.3d 922 (9th Cir. 2007) ................................................. 116, 117, 118, 120

*Parrish v. Small,*
315 F.3d 1131 (9th Cir. 2003) ................................................................. 105

*Pate v. Robinson,*
383 U.S. 375 (1966) ................................................................................ 71, 72

*Patton v. Yount,*
467 U.S. 1027 (1984) ................................................... 98, 99, 100, 101

*Pensinger v. Chappell,*
787 F.3d 1014 (9th Cir. 2015) ..................................................................... 90

*Peters v. Kiff,*
407 U.S. 493 (1972) ....................................................................................... 96

*Phillips v. Ornoski,*
673 F.3d 1168 (9th Cir. 2012) ....................................................................... 92

*Porter v. McCollum,*
558 U.S. 30 (2009) ............................................................................... *passim*

*Powell v. Collins,*
332 F.3d 376 (6th Cir. 2003) ........................................................................ 82

*Proffitt v. Florida,*
428 U.S. 242 (1976) ..................................................................................... 109

*Raley v.Ylst,*
470 F.3d 792 (9th Cir. 2006) ......................................................................... 22

*Renner v. United States,*
347 U.S. 227 (1954) .................................................................................... 104

*Reynoso v. Giurbino,*
462 F.3d 1099 (9th Cir. 2006) ........................................................... *passim*

*Ring v. Arizona,*
536 U.S. 584 (2002) .................................................................................... 111

*Roe v. Flores-Ortega,*
528 U.S. 470 (2000) ....................................................................................... 21

*Rogers v. Gibson,*
173 F.3d 1278 (10th Cir. 1999) ............................................................ 82, 83

*Rogers v. McDaniel,*
793 F.3d 1036 (9th Cir. 2015) ......................................................................... 7

*Rompilla v. Beard,*
545 U.S. 374 (2005) ............................................................................. *passim*

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ryan v. Gonzales,*
  133 S. Ct. 696 (2013) .................................................................. 5, 125, 126

*Sanders v. Ryder,*
  342 F.3d 991 (9th Cir. 2003) ...................................................... 19, 117

*Sandstrom v. Montana,*
  442 U.S. 510 (1979) .......................................................................... 108

*Sawyer v. Whitley,*
  505 U.S. 333 (1992) ............................................................................ 91

*Schlup v. Delo,*
  513 U.S. 298 (1995) ............................................................................ 91

*Silva v. Woodford,*
  279 F.3d 825 (9th Cir. 2002) ............................................................. 39

*Smith v. McCormick,*
  914 F.2d 1153 (9th Cir. 1990) ..................................................... 82, 104

*Smith v. Phillips,*
  455 U.S. 209 (1982) ..................................................................... 97, 103

*Smith v. Stewart,*
  189 F.3d 1004 (9th Cir. 1999) ....................................................... 23, 39

*Stankewitz v. Wong,*
  698 F.3d 1163 (9th Cir. 2012) ........................................................... 35

*Stankewitz v. Woodford,*
  365 F.3d 706 (9th Cir. 2004) ............................................................. 20

*Stanley v. Cullen,*
  633 F.3d 852 (9th Cir. 2011) .......................................................... 6, 54

*Strickland [v. Washington,*
  466 U.S. 668 1984)] ................................................................... *passim*

*Sullivan v. Louisiana,*
  508 U.S. 275 (1993) .......................................................................... 108

*Tanner v. United States,*
  483 U.S. 107 (1987) ..................................................... 97, 101, 103, 104

*Taylor v. Maddox,*
  366 F.3d 992 (9th Cir. 2004) ...................................................... 8, 9, 104

*Tennard v. Dretke,*
  542 U.S. 274 (2004) ........................................................................... 21

*Thomas v. Hubbard,*
  273 F.3d 1164 (9th Cir. 2002), .......................................................... 120

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Tinsley v. Borg,*
  895 F.2d 520 (9th Cir. 1990) ........................................................................ 98

*Torres v. Prunty,*
  223 F.3d 1103 (9th Cir. 2000) ...................................................................... 78

*Trevino v. Thaler,*
  133 S. Ct. 1911 (2013) ........................................................................ 43, 125

*United States v. Boigegrain,*
  155 F.3d 1181 (10th Cir. 1998) .................................................................... 55

*United States v. Cabrera,*
  222 F.3d 590 (9th Cir. 2000) ........................................................................ 84

*United States v. Goodwin,*
  457 U.S. 368 (1982) ...................................................................................... 69

*United States v. Hall,*
  989 F.2d 711 (4th Cir. 1993) ........................................................................ 98

*United States v. Hemsi,*
  901 F.2d 293 (2d Cir. 1990) .......................................................................... 81

*Vega v. Ryan,*
  757 F.3d 960 (9th Cir. 2014) .................................................................. 61, 62

*Wade v. Calderon,*
  29 F.3d 1312 (9th Cir. 1994) ...................................................................... 114

*Wharton v. Chappell,*
  765 F.3d 953 (9th Cir. 2014) ...................................................................... 105

*Wiggins v. Smith,*
  539 U.S. 510 (2003) ............................................................................. *passim*

*Williams v. Taylor,*
  529 U.S. 362 (2000) ............................................................................. *passim*

*Williams v. Woodford,*
  384 F.3d 567 (9th Cir. 2004) .................................................................. 72, 73

*Williamson v. Ward,*
  110 F.3d 1508 (10th Cir. 1997) .................................................................... 54

*In re Winship,*
  397 U.S. 358 (1970) .............................................................................. 88, 108

*Woodford v. Garceau,*
  538 U.S. 202 (2003) ........................................................................................ 5

*Ylst v. Nunnemaker,*
  501 U.S. 797 (1991) ........................................................................................ 9

# TABLE OF AUTHORITIES

Page(s)

1

**FEDERAL CASES**

2

*Zant v. Stephens,*
    462 U.S. 862 (1983) .................................................................... 113

3

**STATE CASES**

4

*Board of Prison Terms v. Superior Court,*
    130 Cal. App. 4th 1212 (2005).......................................................... 12

*In re Dixon,*
    41 Cal. 2d 756 (1953) ........................................................................ 90

*Hasson v. Ford Motor Co.,*
    32 Cal. 3d 388 (1982) ........................................................................ 97

*In re Hochberg,*
    2 Cal. 3d 870 (1970) .......................................................................... 11

*In re Visciotti,*
    14 Cal. 4th 325 (1996) ....................................................................... 39

*In re Lawler,*
    23 Cal. 3d 190 (1979) ........................................................................ 11

*In re Lucas,*
    33 Cal. 4th 682 (2004) ....................................................................... 50

*Mercer v. Commissioner of Correction,*
    644 A.2d 340 (Conn. 1994)................................................................ 13

*People v. Conner,*
    34 Cal. 3d 141 (1983) ........................................................................ 69

*People v. Duvall,*
    9 Cal. 4th 464 (1995) ................................................................. 11, 13

*People v. Green,*
    27 Cal. 3d 1 (1980) ............................................................................ 90

*People v. Hedgecock,*
    51 Cal. 3d 395 (1990)................................................................ 97, 104

*People v. Ledesma,*
    43 Cal. 3d 171 (1987) ........................................................................ 11

*People v. Millwee,*
    18 Cal. 4th 96 (1998)................................................................. *passim*

*People v. Ramirez,*
    39 Cal. 4th 398 (2006) ....................................................................... 78

*People v. Romero,*
    8 Cal. 4th 728 (1994)............................................................ 10, 11, 12, 13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page(s)

**STATE CASES**

*People v. Taylor,*
47 Cal. 4th 850 (2010)........................................................................ 78

*In re Rosenkrantz,*
29 Cal. 4th 616 (2002)........................................................................ 10

*In re Sassounian,*
9 Cal. 4th 535 (1995).......................................................................... 11

*Schmier v. Supreme Court of California,*
78 Cal. App. 4th 703 (2000)............................................................... 79

*In re Serrano,*
10 Cal. 4th 447 (1995)........................................................................ 10

*State v. McHone,*
499 S.E.2d 761 (N.C. 1998)............................................................... 13

*State v. Runningeagle,*
859 P.2d 169 (Ariz. 1993)................................................................. 13

**FEDERAL STATUTES**

28 U.S.C. § 2254..........................................................................*passim*

U.S. Const., Art. I, § 9, cl. 2 .............................................................. 17

U.S. Const., Art. I, § 9, cl. 2 ............................................................ 124

**STATE STATUTES**

Cal. Penal Code § 187...................................................................... 106

Cal. Penal Code § 189...................................................................... 106

Cal. Penal Code § 190.3(a) ............................................................*passim*

Cal. Penal Code § 192...................................................................... 106

Cal. Penal Code § 1367(a) ................................................................. 78

Cal. Penal Code § 1484....................................................................... 12

Ga. Code Ann. §§ 9-14-47, 9-14-48 .................................................. 12

Tenn. Code Ann. § 40-30-101 ........................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3

Petitioner Donald Millwee submits this opening merits brief pursuant to the Court's orders of February 18, July 27, August 31, and September 14, 2015.  Docket nos. 134, 137, 139, 141.

4

## I.  STATEMENT OF FACTS

5
6
7
8
9
10
11
12
13
14

To provide context for the arguments below, Millwee briefly describes some of the key facts of his case.  Millwee's mother died of a single gunshot wound to her head on September 8, 1986.  First Amended Petition for Writ of Habeas Corpus ("Amended Petition"), docket no. 55, at 1, 11.  She was found dead in her home in Riverside.  *Id.* at 13.  At the time of the offense, Millwee was homeless and a long-time regular of the Hi Ho Tavern in Riverside.  *Id.* at 11.  Millwee was held to answer on a charge of first-degree murder after a preliminary hearing; no special circumstances making him eligible for the death penalty had been alleged by then; the prosecutor later added robbery and burglary specials.  Muni. Ct. RT at 87-88.[1]  Judge Edward Webster presided at trial.

15
16
17
18
19
20
21
22
23

Millwee moved to recuse prosecutor Daniel Lough on the ground that he was biased against Millwee stemming from prosecuting him in two prior cases, one of which was reversed on appeal for refusing to allow Millwee to stipulate to a prior conviction.  RT 245-47, 252-53[2].  Millwee testified that he overhead Lough say to his lawyer at the preliminary hearing that he did not think there were facts sufficient to allege special circumstances but that he was "going to shoot for them anyhow."  RT 276, 279.  Lough testified that he probably told Millwee's lawyer that it would be a difficult case in which to prove a special circumstance but that he would try anyway.  RT 257-58.  He testified that he had a low opinion of Millwee but no personal

24
25
26

[1]  "Muni. Ct. RT" refers to the transcript of proceedings in Municipal Court lodged by Respondent.  Docket no. 75.  Millwee lodged his state exhaustion petition and exhibits at docket nos. 23, 26, and 29.

27
28

[2]  "RT" refers to the reporter's transcript of trial lodged by Respondent.  Docket no. 75.

1

animosity toward him and that "it is time for Mr. Millwee to pay the piper."  RT 260,
263-64.  He said he thought his opinion on whether to seek death was persuasive
among the group of prosecutors who made the capital charging decision.  RT 260-62,
273.

The court denied Millwee's motion to strike the robbery and burglary special
circumstance allegations.  RT 422-23.  The court called the case "bizarre" and "unique"
and noted that there was no evidence that Millwee had any animosity toward his
mother.  RT 416-19.  Under the law at the time, the prosecution had to prove beyond a
reasonable doubt that Millwee had the specific intent to kill in order for the special
circumstances to be found true.

Prosecution witnesses Thurley Moody,  Jeannie Callen, Don Lee Millwee
(Petitioner's father), Debra Millwee and Ronald Millwee testified that Petitioner was
not allowed in his parents' house without his father being present.  RT 2669-70, 2683,
2693, 2783, 2854-55.  Outside the presence of the jury, the judge said:  "Consen[s]ual
entry is obviously the sine qua non of this case.  And if it's not consen[s]ual, that's the
first step you have for burglary/theft . . . ."  RT 3049.  The prosecutor used this
testimony to argue that Millwee's mother did not consent to him entering the house and
that Millwee was guilty of first-degree murder because the mother died in the course of
a burglary and robbery.  RT 3762-64, 3768.

Millwee testified that there was no such rule and that his mother let him in the
house the day of the shooting.  RT  3020.  He also testified to an accident defense.  RT
3121, 3125-26.  He said that he went to his parents' house to pick up a gun his father
said he could sell.  RT 3115.  His injured leg gave out and the gun went off.  RT 3121,
3125-26.

The prosecutor argued in closing that the felony-murder theory of first-degree
murder probably applied more than a theory of willful, premeditated murder, and that
under the felony-murder rule, it did not matter if the killing was accidental.  RT 3762-
64.  The evidence showed that although Millwee took a car, a cane and a rifle from his

2

1   parents' house after the shooting, he did not take thousands of dollars in jewelry, cash

2   and other items.  The jury found Millwee guilty of first-degree murder and both special

3   circumstances true.  RT 3846-48.

4        During the penalty trial, the court dismissed juror Laurie Jordan upon finding

5   that she was mentally incompetent and could not continue to serve.  RT 4342-46.

6   Millwee moved for a mistrial at guilt based on Jordan's incompetence.  RT 4348.  The

7   court denied the motion but said Millwee could raise the issue again in a new trial

8   motion after the penalty trial concluded.  RT 4348.  The court commented, "[i]f it's not

9   one thing, it's another.  It's amazing."  RT 4340.

10       During his cross-examination of the next witness, a defense expert who opined

11  that Millwee would adjust well to prison, the prosecutor asked if sexual preference is

12  taken into account for prison placement purposes.  RT 4391.  The defense objected.  *Id*.

13  The prosecutor made an offer of proof that Millwee is gay and argued that "a person

14  with that sexual preference, with a violent history, could have a potential to cause a

15  problem."  RT 4392, 4395.  The judge called the prosecutor "irresponsible" and said

16  "this is absolutely unbelievable to me."  RT 4392.  The judge granted a mistrial.  RT

17  4411.

18       Judge Robert Macomber presided at the penalty re-trial.  Retrial RT at 1.[3]  "[T]he

19  prosecution introduced at the penalty retrial much of the same evidence that had been

20  presented at the guilt phase."  *People v. Millwee*, 18 Cal. 4th 96, 115 (1998).  Millwee

21  did not testify, RT 2268, and thus the jury did not hear his account of the offense.

22  Against the advice of defense counsel and often the prosecutor and the judge, Millwee

23  waived his presence for much of the retrial.  The defense presented three witnesses in

24  mitigation:  (1) Millwee's father, who disparaged Millwee and did not urge a life

25  verdict (RT 2333); (2) Millwee's estranged ex-wife (the defense examination lasted

26

27       [3]  "Retrial RT" refers to the reporter's transcript of the penalty retrial lodged by

28  Respondent.  District court docket no. 75.

3

1   five pages, RT 2375-80, 2382); and (3) an orthopedic specialist who discussed

2   Millwee's hip injury.  RT 2360-61.  In his closing, the prosecutor stated that the

3   defense "can present just about anything they wish" in mitigation, but "[t]he only thing

4   we found out is a few years from now he may need a complicated operation."  RT

5   2468, 2475-76.  The jury chose death.  RT 2528.

6        Judge Webster returned to preside over the new trial motion based on the

7   incompetence of juror Jordan.  RT 2533.  He denied Millwee's request to order Jordan

8   to court to testify and ordered the parties not to contact her.  RT 2619-20.  Defense

9   competency expert Craig Rath testified that Jordan was incompetent during the guilt

10  trial.  RT 2688.  He acknowledged, though, that the data was incomplete because he

11  had not interviewed Jordan but instead was relying on trial transcripts and her juror

12  notes.  RT 2696-97.  The prosecutor argued that Rath's opinion was invalid because he

13  had not interviewed Jordan.  RT 2647.  The court said that "[t]his is an important

14  hearing" (RT 2652) and indicated it was bothered by the "Catch-22" of Rath not being

15  able to interview Jordan, but stood by its decision not to bring Jordan into court or

16  allow the parties to interview her outside of court.  RT 2646-48.  Prosecution expert

17  Kausal Sharma testified:  "I am not saying she was competent, I don't know. . . . She

18  may have been."  RT 2681.  He also said that "[s]ome of her problems were certainly

19  operative before this trial started."  RT 2667, 2669.  The court denied the motion.  RT

20  2713.

21       Millwee's state habeas lawyer filed a four-claim petition—each alleging

22  ineffective assistance at penalty—past the presumptively timely deadline.  Amended

23  Petition at 5-6.  The petition contained no exhibits except for some documents from

24  defense counsel's files.  Concerned that the state petition would not toll the federal

25  limitations period, federal habeas counsel moved to amend the state petition to add

26  more claims.  *Id.* at 5-8.  The California Supreme Court denied the motion to amend,

27  filed the petition federal counsel had lodged as a separate petition with a different case

28  number, and summarily denied both petitions without giving Millwee discovery or an

4

1   evidentiary hearing.  *Id.*  Among other things, the exhaustion petition contained

2   declarations from Michael and Johnnie Millwee stating that Petitioner in fact was

3   allowed in his parents' house without his father being present.  Exhaustion Petition at

4   Exs. 198, ¶17, 199, ¶11.

5         In August 2000, Millwee suffered a debilitating stroke.  In 2008, four experts,

6   including the state's expert, Daniel Martell, opined that Millwee was incompetent to

7   assist habeas counsel.  Docket nos. 105-06, 108, 113.  The state's expert concluded that

8   "Mr. Millwee is not competent to proceed due to the brain damage from the stroke that

9   has resulted severe physical and cognitive impairments."  Docket no. 108 at 6.  This

10  Court found Millwee incompetent and stayed the case under Ninth Circuit law pending

11  the restoration of Millwee's competence.  Docket no. 115.  After the Supreme Court's

12  decision in *Ryan v. Gonzales*, 133 S. Ct. 696 (2013), the Court lifted the stay at

13  Respondent's request.  Docket nos. 122, 134.  Millwee's condition has not improved.

14  Millwee argued that he is incompetent to be executed and incompetent to be re-tried,

15  and that the Court should order settlement discussions.  Docket no. 127.  The Attorney

16  General represented that she lacked authority to settle the case.  Docket no. 128 at 5.

17  The Court lifted the stay and ordered briefing on the merits of Millwee's claims.

18  Docket no. 134.

19                        **II.  AEDPA PRINCIPLES**

20         Millwee filed his federal habeas corpus petition after the effective date of the

21  Antiterrorism and Effective Death Penalty Act ("AEDPA"), and therefore his petition is

22  governed by AEDPA.  *Woodford v. Garceau*, 538 U.S. 202, 204 (2003).  To obtain

23  habeas relief under AEDPA, a habeas petitioner must show that his constitutional rights

24  were violated under 28 U.S.C. § 2254(a) and that § 2254(d) does not bar relief on any

25  claim adjudicated on the merits in state court.  *Frantz v. Hazey*, 533 F.3d 724, 735-36

26  (9th Cir. 2008) (en banc).

27         Section 2254(a) requires Millwee to demonstrate that he is "in custody in

28  violation of the Constitution or laws or treaties of the United States."  Whether a

                                    5

1  petitioner is eligible for relief under § 2254(a) requires the federal court to engage in de

2  novo review of the alleged constitutional violation. *See Berghuis v. Thompkins*, 560

3  U.S. 370, 390 (2010) (citing § 2254(a) for the proposition that "a habeas petitioner will

4  not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo*

5  review"); *Frantz*, 533 F.3d at 736 ("the text of . . . § 2254(a) . . . refers only to the

6  substantive invalidity of the confinement under the Constitution and contains no

7  requirement of deference to state court adjudications").

8     Under § 2254(d), a habeas petition challenging a state court judgment:

9        shall not be granted with respect to any claim that was

10       adjudicated on the merits in state court proceedings unless the

11       adjudication of the claim – (1) resulted in a decision that was

12       contrary to, or involved an unreasonable application of clearly

13       established Federal law, as determined by the Supreme Court

14       of the United States; or (2) resulted in a decision that was

15       based on an unreasonable determination of the facts in light of

16       the evidence presented in the state court proceeding.

17   There is a rebuttable presumption that § 2254(d) applies to unreasoned, summary

18  denials of claims. *Harrington v. Richter*, 131 S. Ct. 770, 783-85 (2011). "When a

19  federal claim has been presented to a state court and the state court has denied relief, it

20  may be presumed that the state court adjudicated the claim on the merits in the absence

21  of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. The

22  presumption that a state court has adjudicated the merits of a federal claim also applies

23  when "a state court rules against the defendant and issues an opinion that addresses

24  some issues but does not expressly address the federal claim in question." *Johnson v.*

25  *Williams*, 133 S. Ct. 1088, 1091 (2013). "Where the state court 'reaches a decision on

26  the merits but provides no reasoning to support its conclusion,'" this Court

27  "'independently review[s] the record'" to determine whether § 2254(d) bars relief.

28  *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011) (decided after *Richter*).

6

"'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  A governing legal principle or principles may result from decisions in one or more Supreme Court opinions.  *See*, *e.g.*, *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246-56 (2007) (canvassing myriad Supreme Court opinions to discern and apply the governing rule that capital sentencing juries must be able to give meaningful consideration and effect to all mitigating evidence); *Brewer v. Quarterman*, 550 U.S. 286, 288-89 (2007) (same); *Gonzalez v. Duncan*, 551 F.3d 875, 879-80 (9th Cir. 2008) (identifying governing legal principle governing a cruel and unusual punishment (disproportionate sentence) claim by examining five Supreme Court opinions).

A "'state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent.'" *Cudjo v. Ayers*, 698 F.3d 752, 761 (9th Cir. 2012).

With regard to (d)(1)'s "unreasonable application" clause, "[t]hat the [applicable federal] standard is stated in general terms does not mean the application was reasonable.  AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'" *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) ("[A] federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'").

This Court may look to Ninth Circuit authority "as persuasive in determining when an application of Supreme Court precedent is objectively unreasonable." *Rogers v. McDaniel*, 793 F.3d 1036, 1041 (9th Cir. 2015) (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013), for the point that a "circuit court reviewing a habeas petition

7

may 'look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent'").

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim[s] on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *id.* at 1399 ("review under § 2254(d)(1) focuses on what a state court knew and did").

Section 2254(d)(2) does not contain a clearly established federal law requirement.  If the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, § 2254(d) does not bar relief even if the constitutional claim is not supported by clearly established federal law as determined by the United States Supreme Court.

A state court unreasonably determines the facts under § 2254(d)(2) when

− its finding of fact is unsupported by sufficient evidence;

− the state court should have made a finding of fact but neglected to do so;

− the state court made a finding of fact but did so under a misapprehension as to the correct legal standard; or

−the fact-finding process was itself defective, e.g., because the state court made evidentiary findings without holding a hearing and giving petitioner the opportunity to present evidence, or because the court plainly misapprehended or misstated the record in making its finding, and the misapprehension goes to a material factual issue on petitioner's claim. *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable . . . .").

28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a state court shall be presumed to be correct" and that the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Section 2254(e)(1) and its presumption of correctness do not apply to

8

claims that the state court unreasonably determined the facts under § 2254(d)(2) based entirely on the state court record. *Taylor*, 366 F.3d at 1000.  In other words, if the petitioner shows an unreasonable determination of the facts under § 2254(d)(2) based on the state court record, he need not also rebut the state court fact-finding by clear and convincing evidence. *Id.*  The presumption of correctness and clear and convincing standard come into play only when the petitioner challenges state court fact-finding based on evidence presented for the first time in federal habeas. *Id.*[4]

Federal habeas courts typically "look through" a summary denial of a claim to examine the "last reasoned decision" on the claim in the state court system. *Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013), *amended on denial of rehearing*, 733 F.3d 794 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1001 (2014); *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").  As mentioned above, when there is no reasoned state court decision on the claim at all, but only a summary denial, this Court conducts an independent review of the record to determine if § 2254(d) bars relief.

When a federal habeas court concludes that the state court decision is contrary to *or* an unreasonable application of federal law, § 2254(d)(1), *or* is based on an unreasonable determination of the facts, § 2254(d)(2), it:

> (1)  reviews the claim de novo in assessing whether the petitioner's constitutional rights were violated;[5]

---

[4]  All of the evidence Millwee has presented in federal court was also presented to the California Supreme Court.

[5]  *Panetti*, 551 U.S. at 953; *Wiggins*, 539 U.S. at 528-29; *Frantz*, 533 F.3d at 733-39; *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010) ("when a state court adjudication is based on an antecedent unreasonable determination of fact, we proceed to consider petitioner's related claim de novo"); *see also Brumfield v. Cain*, 135 S. Ct. 2269, 2276, 2283 (2015) (because § 2254(d)(2) was met, habeas petitioner "has

9

(2)     can consider evidence not presented in state court and grant
        discovery and an evidentiary hearing;[6] and

(3)     grant relief.[7]

## III.  THE INADEQUATE STATE COURT HABEAS PROCESS INFORMS THE § 2254 ANALYSIS

The lack of process in California's state capital habeas corpus regime informs the analysis of whether § 2254(d) bars relief on Millwee's extra-record claims.

California's habeas procedures deny petitioners a full and fair opportunity to develop the facts necessary to obtain meaningful review of their federal constitutional claims.  In reviewing a habeas petition, the California Supreme Court purports to accept the factual allegations as true and determine whether they establish a prima facie case for relief.  *People v. Romero*, 8 Cal. 4th 728, 737 (1994) (upon receipt of a habeas petition, the state court "must first determine whether the petition states a prima facie case for relief – that is, whether it states facts that, if true, entitle the petitioner to relief"); *In re Serrano*, 10 Cal. 4th 447, 456 (1995) (in determining prima facie sufficiency, the state court must assume the truth of the allegations in the petition); *In*

---

satisfied the requirements of § 2254(d)" and the Court need not address his
§ 2254(d)(1) argument).

[6] *Brumfield*, 135 S. Ct. at 2275-76 ("federal habeas courts may 'take new evidence in an evidentiary hearing' when § 2254(d) does not bar relief"); *Hurles v. Ryan*, 752 F.3d 768, 790-92 (9th Cir. 2014) (holding that state court denial of judicial bias claim was based on an unreasonable determination of the facts and remanding for federal evidentiary hearing on claim), *cert. denied*, 135 S. Ct. 710 (2014); *Earp v. Ornoski*, 431 F.3d 1158, 1166-72 (9th Cir. 2005) (holding that California Supreme Court's summary denial of prosecutorial misconduct claim was based on an unreasonable determination of the facts and remanding for a federal evidentiary hearing on claim).

[7] *See, e.g., Porter v. McCollum*, 558 U.S. 30 (2009) (per curiam); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Miller-El v. Dretke*, 545 U.S. 231 (2005); *Wiggins*, 539 U.S. 510; *(Terry) Williams v. Taylor*, 529 U.S. 362 (2000).

10

1  *re Rosenkrantz*, 29 Cal. 4th 616, 675 (2002) (the state court must also accept as true

2  factual allegations contained in any exhibits accompanying the petition).  A petitioner

3  is not required to prove his claims at the pleading stage.  *See In re Sassounian*, 9 Cal.

4  4th 535, 546-47 (1995) (distinguishing between the pleading burden and the burden of

5  proof); *People v. Duvall*, 9 Cal. 4th 464, 474-75 (1995) (habeas petitioner "bears

6  burden initially to *plead* sufficient grounds for relief, and then later to *prove* them")

7  (original emphasis).

8      The state court may order an informal response to assist it in determining

9  whether the petition sets forth a prima facie case.  *Romero*, 8 Cal. 4th at 737.  An

10 informal response, however, "is not a pleading, does not frame or join issues, and does

11 not establish a 'cause' in which a court may grant relief."  *Id.* at 741.

12     Following informal briefing, the court may either issue an order to show cause or

13 summarily deny the petition.  If the court finds the petition does not state a prima facie

14 case for relief, the court summarily denies it.  *Id.* at 737; *see Pinholster*, 131 S. Ct. at

15 1403 n.12.  If, however, the court makes a preliminary determination that the petitioner

16 has stated a prima facie case for relief, the court must issue an order to show cause and

17 eventually may order an evidentiary hearing.  *See* Cal. R. Ct. 8.385(d).  A petitioner

18 does not have an obligation to prove the facts in support of his claims until an order to

19 show cause issues, at which point he must prove he is entitled to relief by a

20 preponderance of the evidence.  *See People v. Ledesma*, 43 Cal. 3d 171, 243 (1987)

21 (Grodin, J., concurring); *In re Lawler*, 23 Cal. 3d 190, 195 (1979).

22     The issuance of an order to show cause is critical to full and fair fact

23 development.  An order to show cause "afford[s] the petitioner an opportunity to

24 present evidence in support of the allegations . . . [and] institute[s] a *proceeding* in

25 which issues of fact are to be framed and *decided*."  *In re Hochberg*, 2 Cal. 3d 870, 875

26 n.4 (1970) (emphasis in original).  It creates a cause of action which requires a written,

27 reasoned resolution.  *Romero*, 8 Cal. 4th at 740.  It confers the power to authorize fact

28 development, including the power to issue subpoenas and compel witness testimony.

11

1    *See* Cal. Penal Code § 1484; *Board of Prison Terms v. Superior Court*, 130 Cal. App.

2    4th 1212, 1236-42 (2005) (explaining that a court cannot order discovery before issuing

3    an order to show cause).  It triggers the filing of pleadings that frame the issues to be

4    resolved; if these pleadings demonstrate material factual disputes, the court orders an

5    evidentiary hearing.  *Romero*, 8 Cal. 4th at 739-40.  In short, the order to show cause

6    empowers the court "to do and perform all other acts and things necessary to a full and

7    fair hearing and determination of the case."  Cal. Penal Code § 1484.

8        Yet only eight percent of capital petitioners in California receive orders to show

9    cause.  *See* Arthur L. Alarcón, *Remedies for California's Death Row Deadlock*, 80 S.

10   Cal. L. Rev 697, 741, 749 (2007).  Since the California Supreme Court is the only

11   forum in which California capital petitioners may seek habeas relief, this means that

12   ninety-two percent of capital habeas petitioners are deprived of any meaningful process

13   in the adjudication of their petitions.  In contrast, as of 2008, seventy percent of

14   California capital petitioners who sought relief in federal courts were successful even

15   though the same claims were denied by the state courts.  Cal. Comm'n on the Fair

16   Admin. of Justice, Final Report 137 (2008),

17   http://www.ccfaj.org/documents/CCFAJFinalReport.pdf.  This stark contrast provides

18   objective evidence that federal claims are not receiving meaningful review in the

19   California courts.

20       California is an outlier in how rarely it grants state habeas evidentiary hearings.

21   While states have taken a variety of approaches to the granting of evidentiary hearings,

22   California imposes significantly more stringent procedural hurdles than much of the

23   rest of the country.  Only four percent of capital petitioners in California receive

24   hearings (i.e., only one-half of the cases that receive orders to show cause proceed to a

25   hearing).  Alarcón, *Remedies for California's Death Row Deadlock*, 80 S. Cal. L. Rev

26   697, 741, 749 (2007).  In contrast, some states grant evidentiary hearings in all habeas

27   capital cases.  *See*, *e.g.*, Ga. Code Ann. §§ 9-14-47, 9-14-48; S.C. Code § 17-27-

28   160(C).  In other states, evidentiary hearings are mandatory unless the record

12

demonstrates that the petitioner is not entitled to relief.  *See*, *e.g.*, Ark. R. Crim. P. 37.3 (ordering a "prompt" hearing on post-conviction claims unless the files and records of the case conclusively show that the petitioner is entitled to no relief); Fla. R. Crim. P. 3.851(5)(A)(i) (requiring the trial court to hold an evidentiary hearing "on claims listed by the defendant as requiring a factual determination"); *see also Mercer v. Comm'r of Corr.*, 644 A.2d 340, 342 (Conn. 1994).  Other states grant a hearing on all colorable claims, Ariz. R. Crim. P. 32.6(c) (requiring a hearing on "claims that present a material issue of fact or law"); *State v. Runningeagle*, 859 P.2d 169, 173 (Ariz. 1993) (en banc); *State v. McHone*, 499 S.E.2d 761, 763 (N.C. 1998); Tenn. Code Ann. § 40-30-101, et seq.; Tenn. Sup. Ct. R. 28, sec. 28(A); while in some states an evidentiary hearing is granted whenever there is a disputed issue of material fact.  *See*, *e.g.*, Ind. R. of Post-Conviction 1 Sec. 4(g); Official Revision Comment-1980 to La. C. Cr. P. art. 929; Pa. R. Crim. P. 908.  In contrast, in California evidentiary hearings are available only after (1) informal briefing; (2) an order to show cause issues finding that petitioner alleged a prima facie case for relief; (3) formal pleadings in the form of a return and a traverse are filed; and then (4) a formal finding is made that material disputed facts are at issue. *See Duvall*, 9 Cal. 4th at 476; *Romero*, 8 Cal. 4th at 740.

In state habeas, Millwee alleged with specificity the basis of his constitutional claims for relief; he supported his allegations with the evidence available to him without subpoena power; and he requested an evidentiary hearing.  Despite Millwee's diligent efforts, the state adjudicative process never progressed beyond the "limited function" of the petition.  Because the California Supreme Court did not issue an order to show cause, a cause of action was never created and the mechanisms for framing disputed legal issues and developing facts never became available to Millwee.  The only question ever reached by the California Supreme Court was whether Millwee stated prima facie claims for relief and was entitled to an evidentiary hearing, and that is the relevant state court decision for purposes of § 2254(d) review.  Ninth Circuit caselaw makes this clear.

13

*Nunes v. Mueller*, 350 F.3d 1045, 1054 (9th Cir. 2003), held that § 2254(d)(1) and (d)(2) were satisfied where the California Court of Appeal summarily denied a habeas petitioner's claim of ineffective assistance of counsel for failure to state a prima facie claim, without affording him an evidentiary hearing.  The petitioner asserted that trial counsel was ineffective because he failed to fully inform him about the actual terms of a plea offer made by the prosecution.  *Id.* at 1050.  The California Court of Appeal held that the petitioner failed to make out a prima facie case for prejudice because he did not show that but for counsel's deficient performance he would have accepted the plea deal.  *Id.*

The Ninth Circuit began its analysis of the state court's decision by observing that:

> Under the AEDPA standard of review, it is entirely appropriate—even necessary—that federal courts ask whether the state court applied correct legal principles (in this case, the *Strickland* [*v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] analysis) in an objectively unreasonable way (*Williams* [(*Terry*) *v. Taylor*, 529 U.S. 362, 404-06, (2000)]), an inquiry that requires analysis of the state court's *method* as well as its result.

*Id.* at 1054 (emphasis in original).

The Ninth Circuit concluded that the state court's failure to issue an order to show cause and hold an evidentiary hearing was based on an unreasonable application of clearly established federal law because, "[w]ith *Nunes*' claims being taken at face value as the state court claimed it had done," his assertions "certainly suffice[d] to support an ineffective assistance claim, and there was ample evidence in the record before the state court to support those assertions."  *Id.* at 1054.  "With the state court having purported to evaluate *Nunes*' claim for sufficiency alone, it should not have required *Nunes* to prove his claim without affording him an evidentiary hearing–and it

14

1   surely should not have required *Nunes* to prove his claim with absolute certainty." *Id.*

2   Analyzing the decision under § (d)(2), the Ninth Circuit held that "it was unreasonable

3   for the state court to have denied *Nunes* the opportunity for a full and fair hearing on

4   the matter—a hearing later granted by the district court, during which *Nunes* swore (just

5   has he had stated in his written declaration in the state court proceedings) that he would

6   have accepted the plea offer if it had been accurately conveyed to him, and explained

7   why that was so." *Id.* at 1055-56.

8       *Earp*, 431 F.3d 1158, is also instructive.  There a California capital habeas

9   petitioner claimed that the prosecutor committed misconduct by dissuading inmate

10  Michael Taylor from testifying that state witness Dennis Morgan testified falsely at

11  trial. *Id.* at 1167-69.  "Without conducting a hearing, the state court denied *Earp*'s

12  prosecutorial misconduct claim without opinion." *Id.* at 1169.  The district court also

13  denied the claim without a hearing. *Id.*  The Ninth Circuit reversed and remanded for

14  an evidentiary hearing. *Id.* at 1172.  The court explained:

15              Earp has never had an opportunity to present Taylor's live

16              testimony so that the trier of fact can judge his credibility, and

17              the prosecutor and sheriff's deputy have never been

18              questioned regarding their side of the story.  Thus, because

19              we conclude that Earp has not had a full and fair opportunity

20              to develop the facts to support his claim we hold that the state

21              court's decision denying him relief without an evidentiary

22              hearing to resolve the credibility dispute was based on an

23              unreasonable determination of the facts.

24  *Id.* at 1170.

25      *Brumfield*, 135 S. Ct. 2269, confirms the approach taken in *Nunes* and *Earp*;

26  affirms that when California state habeas courts summarily deny extra-record claims,

27  the relevant decision for § 2254(d) purposes is the refusal to issue an order to show

28  cause and grant an evidentiary hearing on the ground that the petition failed to state a

15

1   prima facie claim for relief (as opposed to denying relief on the merits); and that

2   § 2254(d) is satisfied when a state court denies an evidentiary hearing where the

3   petitioner's allegations and evidence on his constitutional claim are sufficient to obtain

4   a hearing under state law.

5        *Brumfield* vacated the denial of habeas relief on a claim that a capital petitioner is

6   exempt from execution because he is intellectually disabled under *Atkins v. Virginia*,

7   536 U.S. 304 (2002).  *Brumfield*, 135 S. Ct. at 2273, 2283.  Brumfield filed an *Atkins*

8   claim in a state habeas petition and asked for an evidentiary hearing on his claim.  *Id.* at

9   2274.  The state court denied the request for a hearing and dismissed the petition.  *Id.* at

10  2275.  The federal district court ruled that 28 U.S.C. § 2254(d) was satisfied based on

11  the state court record.  *Id.*  The district court held an evidentiary hearing on the *Atkins*

12  claim and concluded that Brumfield proved his claim.  *Id.* at 2275-76.  The Fifth Circuit

13  Court of Appeals reversed, holding that "'the state court did not abuse its discretion

14  when it denied Brumfield an evidentiary hearing.'"  *Id.* at 2276.  "Having found that

15  Brumfield's petition failed to clear § 2254(d)'s hurdle, the Fifth Circuit did not review

16  the District Court's conclusion that Brumfield is, in fact, intellectually disabled."  *Id.*

17  (citation omitted).

18       The Supreme Court reversed, holding that "the state court's rejection of

19  Brumfield's request for an *Atkins* hearing was premised on an 'unreasonable

20  determination of the facts' within the meaning of § 2254(d)(2)."  *Id.*  The Court did

21  "not question the propriety of the legal standard the trial court applied" and presumed it

22  is consistent with *Atkins*.  *Id.*  Under that standard, "an *Atkins* evidentiary hearing is

23  required when an inmate has put forward sufficient evidence to raise a 'reasonable

24  ground' to believe him to be intellectually disabled."  *Id.* at 2274.

25       The Court held that "[t]o conclude, as the state trial court did, that Brumfield's

26  reported IQ score of 75 somehow demonstrated that he could not possess subaverage

27  intelligence . . . reflected an unreasonable determination of the facts" because,

28  accounting for the standard error of measurement, this score "was squarely in the range

16

of potential intellectual disability." *Id.* at 2278.  The state court also unreasonably concluded "that the record failed to raise any question as to Brumfield's 'impairment in adaptive skills,'" where in fact "the state-court record provided substantial grounds to question Brumfield's adaptive functioning," including evidence of his risk of neurological trauma at birth, learning disability, and placement in special education classes. *Id.* at 2279-81.  The Court emphasized "[i]t is critical to remember . . . that in seeking an evidentiary hearing, Brumfield was not obligated to show that he was intellectually disabled," and that "Brumfield had not yet had the opportunity to develop the record for the purpose of proving an intellectual disability claim." *Id.* at 2281. Likewise here, based on the allegations and evidence before it, the California Supreme Court unreasonably denied Millwee's extra-record claims for failure to state a prima facie case without issuing an order to show cause and affording him "the opportunity to develop the record for the purpose of proving" his claims. *Id.*

*Brumfield* reaffirms that when § 2254(d) is satisfied based on the state court record, federal habeas courts "may 'take new evidence in an evidentiary hearing.'" *Id.* at 2276.  Indeed, the district court granted relief on the *Atkins* claim after considering the evidence presented at the evidentiary hearing it held. *Id.* at 2275.  The Supreme Court framed the question before it as "whether [petitioner] cleared AEDPA's procedural hurdles, and was thus entitled to a hearing." *Id.* at 2283.  The answer here, as in *Brumfield*, is "yes." *Id.*

Denying Millwee relief without at least first affording him discovery and evidentiary hearing to further prove his claims, on top of the summary denials in state court without a hearing, would result in the unconstitutional suspension of the writ of habeas corpus.  The Suspension Clause states that the privilege of the writ of habeas corpus shall not be suspended except when public safety may require it in cases of rebellion or invasion.  U.S. Const., Art. I, § 9, cl. 2.  The Supreme Court has interpreted this clause to guarantee a prisoner in post-conviction proceedings one adequate and effective opportunity to demonstrate the illegality of his detention, including a "full and

17

1  fair opportunity to develop the factual predicate of his claims." *Boumediene v. Bush*,

2  553 U.S. 723, 779, 790 (2008); *see Harris v. Nelson*, 394 U.S. 286, 300 (1969) (holding

3  that "it is the duty of the court to provide the necessary facilities and procedures for an

4  adequate inquiry" into colorable claims). The Suspension Clause therefore does not

5  permit restriction of federal habeas review in cases like this one where the state court

6  did not afford the petitioner a full and fair opportunity to factually develop his claims.

7  *Miller v. Marr*, 141 F.3d 976, 977 (10th Cir. 1998) (holding that a Suspension Clause

8  violation occurs where a restriction on habeas renders the writ "inadequate or

9  ineffective" to test the legality of detention).

## IV.  MILLWEE IS ENTITLED TO RELIEF UNDER § 2254(A) AND § 2254(D) DOES NOT PREVENT RELIEF

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### NINETEENTH CLAIM FOR RELIEF FOR INEFFECTIVE ASSISTANCE OF COUNSEL AT PENALTY PHASE

Claim 19 alleges that Millwee received ineffective assistance of counsel at the penalty phase. Amended Petition at 191-241. Part of this claim was presented to the California Supreme Court as Claim X on direct appeal (Lodgment 1 (Appellant's Opening Brief at 148-64)) and was denied in a reasoned decision. *Millwee*, 18 Cal. 4th at 147-49.

Another part of this claim was presented in Millwee's first state habeas petition (Lodgment 6) and was summarily denied on the merits with no procedural bars. Lodgment 11.

Millwee presented a more expansive claim of ineffective assistance to the California Supreme Court as Claim 12 in his exhaustion petition. Lodgment 8 (Exhaustion Petition at 183-250). The state court summarily denied the claim on the merits and as procedurally barred. Lodgment 11.

18

Millwee discusses the parts of his claim in the order in which they were presented and ruled on by the California Supreme Court. However, all the allegations of ineffective assistance should be considered collectively in assessing Millwee's claim under *Strickland v. Washington*, 466 U.S. 668 (1984). *See id.* at 695-96; *Sanders v. Ryder*, 342 F.3d 991, 1000-01 (9th Cir. 2003) ("When we examine whether trial counsel gave effective assistance, we examine all aspects of the counsel's performance at different stages, from pretrial proceedings through trial and sentencing. . . . Separate errors by counsel at trial and at sentencing should be analyzed together to see whether their cumulative effect deprived the defendant of his right to effective assistance."); *Libberton v. Ryan*, 583 F.3d 1147, 1166 (9th Cir. 2009) ("[A] common shorthand for an IAC claim is "ineffective assistance during the penalty phase." If taken literally, this shorthand is misleading. The question is whether a defendant's counsel was ineffective with respect to the penalty imposed, irrespective of when during the proceedings the counsel was ineffective"); *Boyde v. Brown*, 404 F.3d 1159, 1176 (9th Cir. 2005) ("'prejudice may result from the cumulative impact of multiple deficiencies'").

### 1.    Legal Principles

Millwee's ineffective assistance claim is based on *Strickland*, 466 U.S. 668, which under AEDPA is "clearly established Federal law, as determined by the Supreme Court . . . ." (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 391 (2000); *Pinholster*, 131 S. Ct. at 1403. "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 514, 522, 524 (2003).

### 2.    Deficient Performance

Defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. In preparation for the penalty phase of a capital trial, defense counsel must endeavor "'to discover *all reasonably available* mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" *Wiggins*,

19

1  539 U.S. at 524 (original emphasis); *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir.

2  2001) (en banc) ("[t]o perform effectively in the penalty phase of a capital case,

3  counsel must conduct sufficient investigation and engage in sufficient preparation to be

4  able to present and explain the significance of all the available mitigating evidence")

5  (internal quotation marks omitted)).

6  "The Supreme Court has conveyed a clear, and repeated, message about

7  counsel's sacrosanct duty to conduct a full and complete mitigation investigation before

8  making tactical decisions, even in cases involving . . . egregious circumstances." *Earp*,

9  431 F.3d at 1175.  "Together, *Wiggins* and *Williams* . . . emphasize counsel's duty to

10  conduct a thorough investigation, and *Williams* in particular shows that counsel's duty

11  is not discharged merely by presenting some limited evidence." *Stankewitz v.*

12  *Woodford,* 365 F.3d 706, 716 (9th Cir. 2004).  The duty to thoroughly investigate and

13  present mitigating evidence existed at the time of Millwee's trial in 1989.  *Wiggins*, 539

14  U.S. at 514, 522, 524 (1989 trial); *Williams*, 529 U.S. at 368, 396 (1986 trial).

15  "At the penalty phase, counsel's duty to follow up on indicia of mental

16  impairment is quite different from−and much broader and less contingent than−the

17  more confined guilt-phase responsibility." *Bemore v. Chappell,* 788 F.3d 1151, 1171

18  (9th Cir. 2015).  This is because at guilt, the defendant's mental state is directly

19  relevant for limited purposes, whereas at penalty, the jury has broad latitude to consider

20  amorphous human factors "to weigh the worth of one's life against his culpability." *Id.*

21  (quotation marks and citations omitted).

22  "'Criminal cases will arise where the only reasonable and available defense

23  strategy requires consultation with experts or introduction of expert evidence.'" *Hinton*

24  *v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (per curiam) (vacating judgment against

25  capital habeas petitioner and remanding for consideration of whether trial counsel's

26  deficient performance was prejudicial).  Counsel has a duty to consult appropriate

27  experts and "to provide mental health experts with information needed to develop an

28  accurate profile of the defendant's mental health," even if the experts do not request the

20

1    information.  *Caro v. Woodford*, 280 F.3d 1247, 1254 (9th Cir. 2002); *see also*

2    *Beardslee v. Woodford*, 358 F.3d 560, 583 (9th Cir. 2004) (if "counsel failed to

3    understand basic psychiatric diagnoses and thus failed to make simple tactical decisions

4    about effective defenses, such assistance might be constitutionally deficient").

5         Mitigating evidence need "not relate specifically to petitioner's culpability for

6    the crime he committed"; "the question is simply whether the evidence is of such a

7    character that it might serve 'as a basis for a sentence less than death.'"  *Tennard v.*

8    *Dretke*, 542 U.S. 274, 284-87 (2004).  Counsel has a duty to present evidence of the

9    defendant's positive attributes that might humanize him to the jury and give jurors a

10   reason to spare his life.  *Mayfield*, 270 F.3d at 932.[8]

11        When a challenged act or omission is defended as the product of a tactical

12   decision, "[t]he relevant question is not whether counsel's choices were strategic, but

13   whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

14   **3.    Prejudice**

15        To establish prejudice, a petitioner "'must show that there is a reasonable

16   probability that, but for counsel's unprofessional errors, the result of the proceeding

17   would have been different.  A reasonable probability is a probability sufficient to

18   undermine confidence in the outcome.'"  *Wiggins*, 539 U.S. at 534.  A petitioner "need

19   not show that counsel's deficient conduct more likely than not altered the outcome in

20   the case . . . .  The result of a proceeding can be rendered unreliable, and hence the

21   proceeding itself unfair, even if errors of counsel cannot be shown by a preponderance

22

23   ───────────

24        [8]  Millwee's jury was instructed that it was to consider any other circumstance
     which extenuates the gravity of the crime, even though it is not a legal excuse for the

25   crime, and any sympathetic or other aspects of the defendant's character or record that
     the defendant offers as a basis for a sentence less than death, whether or not related to

26   the offense for which he is on trial. CT 936-38.  "CT" refers to the clerk's transcript of

27   trial lodged by Respondent.  Docket no. 75.

28

                                        21

of the evidence to have determined the outcome." *Strickland*, 466 U.S. at 693-94. "The bar for establishing prejudice is set lower in death-penalty sentencing cases than in guilt-phase challenges and noncapital cases." *Raley v.Ylst*, 470 F.3d 792, 802 (9th Cir. 2006).

To assess prejudice on a claim of ineffective assistance for failure to investigate and present mitigating evidence at the penalty phase, the federal habeas court compares the evidence that "actually was presented to the jury with the evidence that might have been presented had counsel acted differently." *Murtishaw v. Woodford*, 255 F.3d 926, 940 (9th Cir. 2001). The court "reweigh[s] the evidence in aggravation against the totality of available mitigating evidence," i.e., the mitigation presented at trial and the additional mitigation presented post-conviction. *Wiggins*, 539 U.S. at 534, 536.

Prejudice exists if "the entire post-conviction record, viewed as a whole and cumulative of mitigation evidence presented originally, raise[s] 'a reasonable probability that the result of the sentencing proceeding would have been different' if competent counsel presented and explained the significance of all the available evidence." *Williams*, 529 U.S. at 398-99. When "there is a reasonable probability that at least one juror would have struck a different balance" if the omitted mitigation had been presented, prejudice is shown. *Wiggins*, 539 U.S. at 537.

The failure to present mitigating evidence can be prejudicial even when substantial mitigating evidence was presented at trial. *Bemore*, 788 F.3d at 1172 (California Supreme Court's summary denial unreasonable under §2254(d) on prejudice prong where defense presented over 40 witnesses at penalty but many knew defendant only slightly and counsel failed to present expert testimony explaining ramifications of defendant's drug and mental health problems); *Bean v. Calderon*, 163 F.3d 1073, 1081, 1088 (9th Cir. 1998) (granting relief where trial counsel presented nine penalty witnesses, including two psychiatric experts, and evidence of defendant's brain damage, because "more compelling evidence of Bean's mental impairments" was

22

1    available but not presented); *Hovey v. Ayers*, 458 F.3d 892, 924-25 (9th Cir. 2006)

2    (granting relief where defense presented 18 penalty witnesses).

3         "[T]he horrific nature of the crimes . . . does not" render counsel's errors

4    harmless.  *Smith v. Stewart*, 189 F.3d 1004, 1013 (9th Cir. 1999).  The Supreme Court

5    granted penalty relief in *Williams* despite evidence at trial of the petitioner's prior

6    convictions for armed robbery, burglary and grand larceny; two auto thefts; two

7    separate violent assaults on elderly victims; an arson; a robbery; another "brutal[]

8    assault[]" on an elderly woman, resulting in the victim being in a vegetative state; and

9    an arson in jail while awaiting trial.  529 U.S. at 368.

10        In assessing prejudice, the Court must consider the cumulative prejudice

11   resulting from trial counsel's deficiencies at all phases of the trial.  *Boyde*, 404 F.3d at

12   1176, 1180.

13        **4.      The Aggravation and Mitigation Evidence Presented at Millwee's**

14        **Penalty Re-Trial**

15        As the California Supreme Court explained in its appeal opinion, in Millwee's

16   case "the prosecution introduced at the penalty retrial much of the same evidence that

17   had been presented at the guilt phase" as evidence of circumstances of the crime under

18   Cal. Penal Code § 190.3(a).  *Millwee*, 18 Cal. 4th at 115.  Don Millwee, Petitioner's

19   father, testified that before the shooting, Petitioner lived on the streets and in a field.

20   RT 1883.  Petitioner was not allowed in his and his wife's house in 1986 unless he,

21   Don, was present.  RT 1853.  He said that his wife was concerned for her safety when

22   he wasn't home.  RT 1854.  Petitioner had robbed them many times.  *Id*.

23        On the morning of the shooting, when he saw Petitioner outside the Hi Ho

24   Tavern, Petitioner smelled of alcohol and was drunk.  RT 1860, 1899, 1927.  He did not

25   think Petitioner was threatening that morning; he thought he was just engaged in

26   "drunk talk."  RT 1897, 1899.  He had told Petitioner he could sell one of his rifles in

27   the house, a Marlin rifle.  RT 1911-12.  After the shooting, he saw that thousands of

28

23

1    dollars in jewelry, coins and office equipment was still in the house and had not been

2    taken.  RT 1914-18.

3         The prosecution presented evidence that Millwee suffered three prior

4    convictions:  for robbery in 1977, and for theft in 1984 and 1986.  The prosecution

5    presented evidence of five unadjudicated acts of violence or threatened violence:  (1) a

6    stabbing in San Diego two days after Millwee's mother's death;[9] (2) an assault at a lake

7    where "everyone" "drank alcohol" (*Millwee*, 18 Cal. 4th at 116); (3) yelling at a man in

8    a park near the Hi Ho Tavern while holding a knife (*id.*); (4) swinging his crutch at a

9    guard in the San Bernardino County Jail in 1982; (*id.*); and (5) a "fight in traffic" with a

10   drunk parolee in 1981.  *Id.*

11        According to the California Supreme Court in its appeal opinion, "[s]ubstantial

12   background evidence was offered in mitigation, primarily through defendant's father."

13   *Id.* at 118.  In fact, although Millwee's father was the lead defense witness on the topic

14   of Millwee's background, much of his testimony was false and adverse to Millwee's

15   interests.  Further, it is a gross exaggeration, contrary to the record, and an

16   unreasonable determination of the facts to conclude that "substantial background

17   evidence was offered in mitigation."

18        Defense counsel waived opening statement at penalty.  RT 2291.  The defense

19   presented just four witnesses.  (Millwee did not testify, RT 2265-68, and accordingly

20   the penalty jury did not hear his account of the offense in considering the circumstances

21   of the crime under §190.3(a).)

22        Brian Bradshaw, the owner of the Hi-Ho Tavern on the day of the shooting,

23   testified that he saw Millwee and another man, who he assumed to be Millwee's father,

24   that morning; they appeared to be arguing.  RT 2292-94, 2298-99.  Millwee's father

25

26        _____

27        [9]  "On cross-examination by the defense, one of the arresting officers testified
     that defendant may have been under the influence of alcohol."  *Millwee*, 18 Cal. 4th at
28   116.  This officer testified that she "definitely" smelled alcohol on Millwee.  RT 2029.

threw a blanket out of a truck onto the ground.  RT 2300.  Millwee then came into the bar.  RT 2300-01.  Millwee looked bewildered, not upset or angry.  *Id*.  He saw no threatening behavior by Millwee.  RT 2299-2301.

Don Millwee, Petitioner's father, provided some biographical information about Petitioner and his brothers.  He testified that Petitioner was the oldest and brightest of his four sons with Esta Millwee (they had no daughters).  RT 2304, 2306.  He had no problems with any of the children when they were under 16 years old.  RT 2306.  Petitioner was popular in high school but dropped out and became a carpenter at age 17.  RT 2308, 2312, 2314-15.  He married Nell when he was 18 and was responsible at work at ages 18-19.  RT 2310-11, 2317.

Petitioner's brother Brad died in a motorcycle accident at the age of 22.  RT 2318.  Petitioner had three children with Nell.  *Id*.  He got along with his mother.  RT 2319.

Don Millwee testified that Petitioner underwent a "drastic change" two to three years after he got married, and after two of his children were born.  RT 2319-20.  In 1975, when Petitioner was 23, he recognized Petitioner had a drug problem.  RT 2304, 2320.  Petitioner "wouldn't accept responsibility."  RT 2320-21.  He took Millwee to a detox center in Palmdale.  RT 2323.  Petitioner's brother Brad had died the year before.  RT 2324.  Millwee stayed in the center for one week and was "not cured."  RT 2324-25.  Petitioner became involved in many robberies, including one with his brother Michael.  RT 2325.  Don Millwee said that he did not visit Petitioner in prison but that he "never stopped giving him a chance."  RT 2326.  Petitioner divorced and became homeless, living in shacks and on the streets.  RT 2327.  Don Millwee testified that Petitioner started stealing from their home, not by force, but by "just sneaking it out."  RT 2329-30.  He left the question of whether his oldest son should be executed "up to the judge and jury."  RT 2333.

On cross-examination, Don Millwee testified that he always cooperated with the district attorney in this case.  RT 2333.  He said that when Petitioner was 16 to 18 years

25

old, he got picked up on warrants for failing to appear in court on traffic tickets.  RT 2334-35, 2339.  He said that Petitioner took items from his house and forged 60 to 70 checks on his account.  RT 2341-42.  He claimed that Petitioner tried to get all of his sons to take drugs, was successful with two of them, and that Michael Millwee overdosed on heroin once.  RT 2343.  He said that Petitioner's stealing from their house tapered off in the 1980s.  RT 2344.  In the four years before Esta Millwee was shot, Petitioner was not allowed in Don and Esta's house unless Don was present.  *Id.*

Don Millwee further testified that Petitioner hit him in the face with a belt buckle in 1981 and that Ronald Millwee shot Petitioner in the hip in 1981-82 after Petitioner broke into Ronald's trailer.  RT 2345-47.[10]  He said he gave Petitioner jobs when he could and that "I always try to give a person another chance, I always have."  RT 2348.  He said that among his four sons, Petitioner and Ron were the leaders, and Brad and Michael the followers.  RT 2351.

On re-direct, Don Millwee testified that after Petitioner hit him with a belt buckle, he chased Petitioner down and hit him with his belt buckle.  He testified that this was the only physical fight he ever had with Petitioner.  RT 2350-51.

Allen LeRoy, an orthopedic specialist, testified to the hip injury Millwee suffered when his brother shot him.  RT 2361.  He said the injury was non-life-threatening, causes pain, would not improve, and may require surgery.  RT 2365, 2370.  On cross, he said, "I don't know much about the patient, not having examined him."  RT 2372.  He acknowledged receiving records of Petitioner receiving psychiatric treatment.  *Id.*  There was no re-direct.  *Id.*

The fourth and final defense penalty witness was Millwee's ex-wife, Nell Huffman.  RT 2375.  She said that she and Millwee had three children together:  Marie,

---

[10]  He acknowledged later that he did not see Petitioner break into Ronald's trailer but said he learned about the break-in from Ron and from law enforcement records.  RT 2354-55.

age 18; Trisha Lee, age 15; and Tyrone Lee, age 14.  They live in Alaska.  The three children do well in school.  Photographs were shown of the children.  RT 2375-76.  The prosecutor objected to the question whether Trisha had any problems.  RT 2377. Defense counsel explained she had a cocaine problem, since controlled, and that the testimony would engender sympathy for Millwee's children.  RT 2377-78.  The court sustained the objection.  RT 2378.  In two one-word answers, Huffman affirmed that she knew the defense was trying "not to have Mr. Millwee executed" and that she was trying to help "the defense presentation for specific results."  RT 2379.

On cross, Huffman said that, aside from one visit in 1976-77, her last contact with Millwee was 11 to 12 years ago; during that time frame they spoke on the phone five times for a total of 20 minutes.  RT 2380-81.  She raised the children and Millwee did not support or contact the children in 11 to 12 years.  RT 2381-82.  The defense rested and there was no rebuttal.  RT 2382-83.

In his penalty closing, the district attorney said that although the defense "can present just about anything they wish" as evidence in mitigation, "[t]he only thing we found out is a few years from now he may need a complicated operation."  RT 2468, 2475-76.  He asked, "[w]hat can the defense present? . . .  They have to present something."  RT 2474.  He then recounted Don Millwee's damaging testimony: Petitoiner's 60-70 forged checks, "not showing up on traffic tickets," hitting his father with a belt, trying to get his brothers to use drugs.  RT 2474-75.  He said:

> The only person that can come, they can bring into ask you to spare him is someone who doesn't know him.  Nel Millwee who hasn't−hasn't seen the defendant for 11, 12 years is the only person they can find to come in and say spare him.  A person who doesn't know, doesn't know the man that's in court.

His father, the man who gave him chance after chance,
who's been abused for years, couldn't bring himself to do
that. . . .

How could you consider sparing a man when no one
who knows him would?

RT 2476.

He argued that "15 years ago he took drugs.  No evidence that drugs played any part in these cases.  None.  None.  Zero."  RT 2479.

He asked, "[w]hat you have to anticipate now is that he's going to go to prison without parole, he's going there with no hope of getting out, with nothing you can do with him. . . .  How about the doctor, the nurse, cook, guard, how about the other prisoners who don't deserve to be hurt by the likes of Donald Millwee?"  RT 2480.  "Don't let other victims pay the price."  RT 2481.

In his closing, defense counsel argued that four of the sentencing factors applied: the circumstances of the crime, prior felony convictions, prior unadjudicated acts of violence or threatened violence, and the factor (k) "catchall."  RT 2486-87.  He argued that "[t]he Millwee family was crumbling long before Esta Millwee died, and it was crumbling because of internal problems."  RT 2493.  He said that Don Millwee unfairly blamed Petitioner "for everything that happened negatively to those sons of his."  RT 2495.

During penalty deliberations, the jury sent a note asking if Millwee had been examined by a psychiatrist or psychologist and, if so, whether the jurors could see the report.  CT 907.  The answer was "no."  The jury voted for death.

## 5.     Section 2254(d) Does Not Bar Relief on the Portions of the Claim Raised on Direct Appeal

On appeal, Millwee alleged that counsel was prejudicially deficient at penalty (1) because they were on notice of a possible physiological basis for his history of substance abuse—the fact that his daughter, Trisha, had a substance abuse problem—

28

and failed to conduct any investigation in this area;[11] and (2) because they failed to conduct an adequate interview of defense witness Huffman, Millwee's ex-wife, and/or failed to adequately prepare her to testify, resulting in testimony damaging to the defense.[12]

The California Supreme Court denied these claims on the ground that they were more properly raised in habeas. The court said: "These claims lack merit on appeal for reasons stated in many prior cases. As to each claim, either a plausible tactical basis for counsel's conduct can be inferred from the appellate record, or the record provides insufficient information from which to conclude counsel's actions were inadequate or ill-advised." *Millwee*, 18 Cal. 4th at 147-48. Regarding Huffman, the court stated that "[d]efendant's assertions concerning the scope of counsel's investigation are speculative only" given the record. *Id*. at 148. The court reached a similar conclusion regarding the claim involving Millwee's daughter. *Id*. at 148-49. The court concluded: "On this record, no constitutionally deficient representation appears." *Id*. at 149 (footnote omitted).

Following the court's lead, and consistent with California state law that ineffective assistance claims are more properly asserted in habeas rather than on appeal, Millwee re-submitted these claims in habeas and supported them with extra-record evidence. Although the claims share the same label, they are based on a different record. For purposes of federal habeas review and § 2254(d) analysis, the habeas versions of these claims, and the orders denying them, are the relevant claims and state court decisions.

---

[11] Appellant's Opening Brief at 150-55.
[12] *Id*. at 155-62.

### 6.     Millwee Is Entitled to Relief on the Portions of the Claim Raised in the First State Habeas Petition

Millwee's initial state habeas petition alleged four claims of ineffective assistance of counsel at penalty.  These claims, individually and collectively, establish prejudicially deficient performance requiring relief.  At a minimum, Millwee's allegations and supporting evidence were sufficient to state a prima facie case for relief, and the state court's summary denial was contrary to and an unreasonable application of federal law, and based on an unreasonable determination of the facts.

#### a.     Ineffective Assistance for Failure to Properly Investigate Mitigation Evidence

Claim I alleged that trial counsel prejudicially failed to investigate (1) the long history of serious child abuse present in at least three generations of Millwee's family; (2) Petitioner's mental health; (3) the causes and effects of Petitioner's drug and alcohol abuse; and (4) a possible biological connection between Petitioner's and his daughter's drug problems.  Lodgment 6 (State habeas petition at 29-39; *id.* at 13-26 (alleging facts supporting all four claims)).  Millwee supported his allegations with interview memos and medical, prison, court and law enforcement records contained in his trial counsel's files.  (Exhibits 3 -37 to state habeas petition).

Millwee alleged that "[d]efense investigators discovered both direct and indirect evidence of a generational pattern of severe child abuse in the Millwee family" in witness interviews, but counsel never interviewed the witnesses, investigated further, or consulted a mental health professional about this information.  State Habeas Petition at 30.  Millwee alleged that "[n]o effort was made to explore ways in which evidence of Petitioner's troubled childhood and family background might be offered in mitigation." *Id.*

Before trial, Johnnie Millwee, Petitioner's cousin, told a defense investigator that he saw "Donnie's [Petitioner's] father str[ike] Donnie a few times in the area of the face or head with an open hand" when Petitioner was about nine years old.  State

30

1  Habeas Exhibit 10 at 2.  Johnnie also reported that Ronnie Millwee told him he lied to
2  the police when he said he did not know the identity of the intruder in his house before
3  he shot him.  Ronnie "knew that Donnie had entered his house.  Ronnie had waited
4  until Donnie was in his sights before he began shooting at him.  Ronnie also stated that
5  he intended to kill Donnie and not wound him." *Id*. at 4.[13]

6      Millwee's neighbor Dave Reader told a defense investigator before trial that a
7  "frequent occurrence in front of the Millwee residence, was their father verbally
8  attacking his sons as well as their mother."  State Habeas Exhibit 21 at 2.  Petitioner's
9  father "would chase the boys out of the house and into the street with a rifle, and Esta
10  and Don would 'fight and split up once in a while.'"

11      Petitioner reported to a defense investigator that his grandfather beat his father.
12  State Habeas Exhibit 16 at 2.

13      Millwee alleged that counsel was on notice to investigate his mental health and
14  "his mental health background and history" as mitigation.  Those triggering facts
15  included (1) the nature of the crime (matricide); (2) Millwee's long history of drug and
16  alcohol abuse; (3) his long history of serious problems with his immediate family
17  members; and (4) the physical, psychological and sexual abuse in the Millwee family
18  history.  State Habeas Petition at 32.

19      Jeannie Callan testified for the prosecution at trial that Petitioner did not get
20  along with his mother and that in the last few years before the shooting he was not
21  allowed in his parents' house unless Petitioner's father was present.  RT 2683.  Callan
22  told a defense investigator before trial that after he got married, Petitioner "began using
23  drugs, specifically heroin, and alcohol and his life fell apart.  Because of his
24  deteriorated physical and mental state, due to the drugs/alcohol, he could not work and
25  he began to steal."  State Habeas Exhibit 8 at 2.  Defense counsel could have obtained

[13]  Johnnie also said that he went to Petitioner's parents' house three times before
the shooting and does not recall the doors being locked. *Id*.

31

this testimony at trial, or impeached this prosecution witness if she denied saying this to the defense investigator.

Johnnie Millwee, Petitioner's cousin, told a defense investigator before trial that Petitioner's "drug problem began at the age of 13, which is the first time Johnnie saw Donnie taking drugs.  At the time he noted Donnie shooting up Heroin in his arm." *Id.* at 2.  He related that Petitioner's brother Michael told him that Petitioner's "drinking problem had gotten so bad that he was drinking approximately one-fifth of Jim Beam liquor a night just to get to sleep.  The reason why he had such a problems sleeping was due to the amount of Speed and Crank that Donnie was taking during the day to stay wired." *Id.* at 5.  Johnnie told the defense investigator he would sign a declaration if needed but he was "at this point afraid to testify in court." *Id.* at 6.

A Palmdale General Hospital medical record dated December 23, 1975 diagnoses Petitioner with "acute heroin addiction" and "acute heroin withdrawal syndrome."  State Habeas Exhibit 30.  Records describe Millwee as a "chronic heroin addict" "suffering acute heroin withdrawal." *Id.* (Discharge Summary, p. 2).  Doctors note Millwee's "[l]ong history of self-destructive behavior syndrome with drug dependence and use over the past 10 years with multiple drug use precipitating mental clouding and apathy." *Id.* (Discharge Summary, p. 3).

Court documents from a mid-1970s robbery conviction contain the following statement by Millwee:

> I'm here for Robbery #1.  I fell I shouldn't have done it.  but
> sence I did and im here I'll make the best of my time.  I know
> the reason I did it was because I just kinda gave up.  For
> weeks before the crime my brother and his wife who were
> living with me and my wife and working for me got killed by
> the police, both of them in a stupid way.  Well it fliped me out
> and I started fixing alot every day and kinda didn't care

32

1               anymore.  I got sick from not fixin and did the crime to buy

2               drugs to keep from thinking about my brother.

State Habeas Exhibit 32 at 2.

A parole violation report dated December 13, 1979 notes "illegal injection marks" on Millwee's arm and says "it appears Subject's narcotics problem is serious and he will need some time to get himself together."  State Habeas Exhibit 32.

Defense counsel's files show that John Millwee, the brother of Petitioner's father, told a defense investigator before trial that Esta Millwee's younger brother Jack (Petitioner's brother) had a nervous breakdown and committed suicide.  State Habeas Exhibit 5 at 8.

Millwee alleged in his state petition that "[c]ounsel was well aware of the nature and degree of petitioner's alcoholism at the time of the crime, and also of his and his family's history of serious substance abuse.  However, in spite of this knowledge, counsel completely failed to effectively analyze and develop this as a factor in mitigation."  State Habeas Petition at 36.  He further alleged that counsel never requested that he be examined by a psychiatrist or psychologist and "made no effort to investigate the possible causes for his drug and alcohol problems."  *Id*.[14]

Petitioner reported to a defense investigator before trial that his father's father "was 'drunk all his life'" and "died of alcoholism."  State Habeas Exhibit 16 at 2.  Petitioner's father drank whiskey every morning "to wake up."  *Id*.; State Habeas Exhibit 8 at 1.  Petitioner said that after he married Nell, he became involved with

---

[14]  The petition acknowledges that counsel had a representative of the local chapter of the National Council on Alcoholism meet with Millwee.  *Id*.  An exhibit filed with the petition indicates that the representative spoke with him about his drinking and concluded that he was in denial about his alcoholism.  Exhibit 36.  The purpose of this interview appears to be treatment rather than an effort to obtain mitigating evidence for a capital sentencing proceeding.  Although it is another red flag of mitigation evidence requiring further investigation, it did not result in the presentation of mitigating evidence of Millwee's addiction and its consequences.

33

drugs, specifically speed and heroin.  State Habeas Exhibit 16 at 4.  He also reported that he "did not intend for the gun to go off.  He 'got drunk' and put himself in a position that he had no control over the events."  *Id.*

In an interview with a defense investigator before trial, Larry Millwee, brother of Petitioner's father, "made it very clear that the Millwee family tree has a history of serious alcohol problems."  State Habeas Exhibit 6 at 1.  Larry and Don's father "drank excessively on a daily basis."  Larry and Don's father "physically abuse[d] [their] mother while under the influence of alcohol."  *Id.*  He described their father as a sadistic alcoholic.  *Id.* at 5.  Two of their brothers, Dwight and Lester, were alcoholics and were treated at an alcohol program.  *Id.* at 1.  Larry saw Petitioner's father give Petitioner beer at an early age, "chugs" out of a glass or can of beer.  *Id.* at 2.  Larry "also advised th[e defense] investigator that there was a lengthy history of mental instability on Esta's side of the family."  *Id.* at 3.  Larry believed that Petitioner's "bizarre behavior is hereditary from Esta's side of the family."  *Id.*

Doug Pollitt told a defense investigator before trial that "[e]xcept for Ron, the Millwee brothers [Petitioner, Michael and Brad] abused both alcohol and drugs."  State Habeas Exhibit 20 at 1.

A January 17, 1989 memo of an interview of John Millwee, the brother of Petitioner's father, recounts that John's son Dwight "had an alcohol problem, and enrolled himself into an alcohol rehab program."  State Habeas Exhibit 5 at 7.

Millwee further alleged in his state petition that Huffman's testimony showed that counsel was on notice of the cocaine problem suffered by Millwee's daughter, but that counsel failed to investigate a possible genetic or biochemical component to Millwee's drug and alcohol addiction.  State Habeas Petition at 37.

### (1)    Deficient Performance

Claim I plainly establishes counsel's deficient performance.  The limited investigation counsel conducted put them on notice to further investigate whole categories of "classic mitigation" evidence:  child abuse and neglect; mental

34

impairments; and drug and alcohol addiction.  *Correll v. Ryan*, 539 U.S. 938, 944 (2008) (capital defendant's drug use and addiction and troubled childhood history is "classic mitigation evidence" at penalty).

Here, as in *Wiggins*, the scope of counsel's investigation was "unreasonable in light of what counsel actually discovered in the [files he did obtain]. . . . [A]ny reasonably competent attorney would have realized that pursuing these leads was necessary to make an informed choice among possible defenses. . . ."  539 U.S. at 525; *id.* at 524-25 (counsel deficient because they "abandoned their investigation of [the defendant's] background after having acquired only a rudimentary knowledge of his history from a narrow set of sources"); *see also Lambright v. Schriro*, 490 F.3d 1103, 1117 (9th Cir.2007) ("when 'tantalizing' indications in the record' suggest that certain mitigating evidence may be available, those leads *must* be pursued") (emphasis added); *Stankewitz v. Wong*, 698 F.3d 1163, 1171 (9th Cir. 2012) ("The state's argument that [defense counsel's] mere possession of [files containing leads to mitigating evidence] demonstrates that [he] conducted a reasonable investigation defies logic—if anything, that [he] had this evidence at his fingertips but did not investigate or present it is further proof of his deficiency.").

*Correll*, 539 F.3d 938, also shows the deficient performance here.  In *Correll*, capital defense counsel was deficient at penalty because "[d]espite his knowledge that Correll was a drug user with an extremely troubled childhood," defense counsel failed to follow up on these leads and investigate further.  *Id.* at 944.  The Ninth Circuit explained that "[c]ompounding his errors during the investigative phase of sentencing, Correll's attorney then presented to the court virtually none of the little mitigating evidence that he had developed."  *Id.* at 946.  That reasoning applies with equal if not greater force here.  *See also Williams*, 529 U.S. at 393 (at the penalty phase, a capital defendant has a "constitutionally protected right[] to provide the jury with . . . mitigating evidence"); *Bean v. Calderon*, 163 F.3d 1073, 1079 (9th Cir. 1998)

("Failure to present mitigating evidence at the penalty phase of a capital case constitutes ineffective assistance of counsel.")

### (2)   Prejudice

The prejudice from counsel's deficient performance is clear from the record before the state court when it denied Millwee's claim.  When the aggravation and mitigation is re-weighed in light of counsel's errors, all fair-minded jurists would agree that the undiscovered "mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of [Millwee's] culpability," "and the likelihood of a different result if the evidence had gone in is 'sufficient to undermine confidence in the outcome' actually reached at sentencing. *Rompilla v. Beard*, 545 U.S. 374, 393 (2005).

At trial, the jury heard Petitioner's father Don Millwee blame Petitioner for his other sons' drug use.  But reasonable counsel could have informed the jury that the Millwee family has a multi-generational history of alcohol and substance abuse and addiction, and that Don's father and two of his brothers were alcoholics.

At trial, Don Millwee told the jury that Petitioner would not accept responsibility.  But the jury could have learned that Petitioner started shooting heroin at age 13, had become an acute heroin addict and alcoholic, and stole to feed his addiction.  This evidence would have undermined the prosecutor's argument in closing that drugs played no part in any of Millwee's crimes and provided a more sympathetic explanation for his behavior.

At trial, Don recounted an example of Petitioner striking him and said that was the only physical altercation between the two.  Reasonably competent counsel could have informed the jury of Don's physical and verbal abuse of Petitioner during Petitioner's childhood, including striking the 9-year old Millwee in the face.

At trial, the jury learned that Millwee injured his hip when his brother Ronnie shot him when Millwee supposedly broke into his house, but it was not told that Ronnie intentionally shot Millwee, knowing it was him, and hoping to kill him.

36

The omitted evidence would have supported defense counsel's argument in closing that Millwee was being unfairly blamed for bad things that happened to his brothers, and that the "Millwee family was crumbling long before Esta Millwee died" for reasons much larger than just Petitioner.  But counsel's unreasonable failure to investigate despite being on notice of powerful mitigation evidence, and their failure to present the mitigation they did uncover, made these arguments ring hollow.

Prejudice is further shown by the fact that during penalty deliberations, the jury sent a note asking if Millwee had been examined by a psychiatrist or psychologist and, if so, whether the jurors could see the report.  CT 907; State Habeas Petition at 34-35; *Mayfield*, 270 F.3d at 938 (jury note during penalty deliberations asking if all jurors must reach unanimous verdict for a life sentence shows prejudice from counsel's failure to investigate and present mitigation).  The answer was "no," because of counsel's unreasonable failure to retain and present an expert to explain how Millwee's mental disorders and child and substance abuse impaired his functioning.  State Habeas Petition at 35.

The prejudice is also shown by the prosecutor's closing argument, which, as shown above (*see supra* at 27-28), exploited defense counsel's deficient performance. *Banks v. Dretke*, 540 U.S. 668, 701 (2004); *Reynoso v. Giurbino*, 462 F.3d 1099, 1117 (9th Cir. 2006).  The prosecutor argued that "15 years ago [Millwee] took drugs.  No evidence that drugs played any part in these cases.  None.  None.  Zero." RT 2479. Defense counsel had learned of Millwee's ongoing, chronic addiction from at least the time he started shooting up heroin at age 13, but failed to present that evidence or evidence of his predisposition to substance abuse and addiction based on his family history.  As Millwee explained in his petition, in a case where the jury heard some evidence of his substance abuse, but not a mitigating explanation for it, "petitioner's drug and alcohol abuse could only serve to strengthen the jury's impression of him as a person of bad character."  State Habeas Petition at 39; *Ainsworth v. Woodford*, 268 F.3d 868, 875 (9th Cir. 2001) (capital habeas petitioner prejudiced at penalty because

37

1   omitted evidence of his drug and alcohol use "would have been extremely important to
2   the jury in its effort to decide whether to impose the death penalty").

3        In light of the allegations and evidence Millwee presented, the state court could
4   not have reasonably denied his claim, especially for failing to state a prima facie case.
5   *See Brumfield*, 135 S. Ct. at 2276, 2281; *Earp*, 431 F.3d at 1177 (remanding for
6   evidentiary hearing on penalty-phase ineffectiveness claim because "[i]f true, the facts
7   alleged may well paint a materially different picture of Earp's background and
8   culpability, the very things considered relevant and vital to a competent mitigation
9   presentation"; "[b]ecause an evidentiary hearing is needed in order to resolve these
10  factual allegations we hold that the state court's decision"—a summary denial by the
11  California Supreme Court—"was based on an unreasonable determination of the
12  facts"); *Nunes*, 350 F.3d at 1054 (California state court's failure to issue an order to
13  show cause and hold an evidentiary hearing was based on an unreasonable application
14  of clearly established federal law because, "[w]ith Nunes' claims being taken at face
15  value as the state court claimed it had done," his assertions "certainly suffice[d] to
16  support an ineffective assistance claim, and there was ample evidence in the record
17  before the state court to support those assertions.").

18       The omitted mitigation here is like the mitigation the Supreme Court has found
19  to be prejudicially omitted.  For example, in *Porter v. McCollum*, 558 U.S. 30, 33-34
20  (2009) (per curiam), the capital habeas petitioner presented evidence in state habeas of
21  his abusive childhood, "horrible family life," long-term substance abuse, impaired
22  mental health and mental capacity, and his heroic military service.  The Supreme Court
23  held that the state court unreasonably applied federal law in holding that there was no
24  prejudice because the court "either did not consider or unreasonably discounted the
25  mitigation evidence adduced in the post-conviction hearing."  *Id.* at 42.  The California
26  Supreme Court did the same thing in summarily denying Millwee's claim for failure to
27  state a prima facie case.  Relief was required in *Porter* because the omitted mitigation
28  "'might well have influenced the jury's appraisal of Porter's moral culpability.'"  *Id.* at

38

41.  This was true even though Porter had murdered two people—his former girlfriend and her boyfriend, after stalking and threatening to kill the girlfriend.  *Id*. at 31-32.

Ninth Circuit cases also show that even in cases with substantial aggravation evidence, defendants are prejudiced by the failure to present the type of classic mitigation evidence omitted here.  *See Jones v. Ryan*, 583 F.3d 626 (9th Cir. 2009) (reversing the district court and granting relief under AEDPA due to penalty-phase ineffectiveness where petitioner killed three people); *Lambright v. Stewart*, 241 F.3d 1201, 1208 (9th Cir. 2001) ("Evidence of mental disabilities or a tragic childhood can affect a sentencing determination even in the most savage case"); *Smith*, 189 F.3d at 1013 ("The horrific nature of the crimes involved here does not cause us to find an absence of prejudice.  In *Hendricks v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995), we rejected the argument that heinous crimes make mitigating evidence irrelevant, noting that the fact finder in California has broad latitude to weigh the worth of the defendant's life"); *Silva v. Woodford*, 279 F.3d 825, 828, 847-50 (9th Cir. 2002) (finding prejudice where defendant kidnaped and robbed two college students; the male student was chained to a tree while the female student was repeatedly sexually assaulted; and defendant shot and killed the male and ordered his accomplice to dismember him with an axe); *Mak v. Blodgett*, 970 F.2d 614 (9th Cir. 1992) (finding prejudice where defendant was convicted of murdering 13 people); *see also Williams*, 529 U.S. at 368.  The California Supreme Court, therefore, could not reasonably deny Millwee's claim for lack of prejudice based on the aggravating evidence presented at trial.

In his informal response to the initial state habeas petition, Respondent argued that "[t]o gain habeas relief for ineffective assistance of counsel petitioner must prove his case and must do so by a preponderance of the evidence.  (*In re Visciotti* (1996) 14 Cal.4th 325, 351.)  He has not done so here, as he has presented no evidence of ineffectiveness.  His claim must be rejected."  Lodgment 7 (Informal Response at 13).  This is an incorrect statement of law at the pleading stage in California.  *See supra* at

39

10-11.  In *Visciotti*, the California Supreme Court assessed a claim of ineffective assistance after it had concluded that the claim stated a prima facie claim for relief, issued an order to show cause, the parties filed a return and traverse, *and* a referee held an evidentiary hearing on the claim.  If the California Supreme Court denied relief on Millwee's claim based on Respondent's more onerous standard, that is an additional reason § 2254(d) is satisfied.  *See Hicks*, 447 U.S. at 346 (criminal defendants have 14th Amendment due process liberty interest in faithful application of state law).

### b.   Ineffective Assistance for Failing to Develop a Viable Theory of the Case and to Present Mitigating Evidence Already Obtained by Defense Investigators

Claim II alleged that counsel was ineffective because they "never developed a coherent theory of the case around which to direct an investigation, and from which to present the available evidence in mitigation," and because they "failed to present the mitigating evidence that had been discovered" by defense investigators.  State Habeas Petition at 39.  That evidence includes the categories of evidence discussed in the preceding section.  *Id*. at 39-43.

The claim also alleged that counsel unreasonably failed to impeach Don Millwee with his habit of drinking whiskey in the morning, his and his father's alcoholism, or his giving Petitioner beer and whiskey to drink when Petitioner was seven years old.  *Id*. at 42.  These allegations were supported by memoranda of witness interviews conducted by defense investigators before trial.  *See supra* at 30; State Habeas Exhibits 6, 8, 16.  Another memo reflects that Sue Webber, a former classmate and friend of Petitioner, did not want to see Petitioner receive the death penalty and was willing to testify on his behalf.  State Habeas Exhibit 26 at 2.  Webber's testimony would have eliminated or undermined the prosecutor's argument at closing that no one who knows Millwee wants to see him spared.

The state Supreme Court could not reasonably deny this claim, either, for the reasons stated above.  Counsel performed deficiently in failing to present the mitigation

40

1  evidence they had discovered.  *See supra* at 35-36; *Williams*, 529 U.S. at 393; *Correll*,

2  539 F.3d at 946; *Bean*, 163 F.3d at 1079.  Prejudice is also shown on this claim for the

3  reasons stated in the preceding section.

4        c.      **Counsel Was Ineffective for Failing to Call Available**

5               **Witnesses and Failing to Prepare the Witnesses Who Did**

6               **Testify**

7        Claim III alleged that defense counsel unreasonably and prejudicially failed to

8  call available witnesses or prepare the witnesses who did testify.  State Habeas Petition

9  at 43.  The petition alleged that counsel's files show that Johnnie Millwee, Larry

10  Millwee, Sue Webber, Doyle Gates, and Glen Gaines were willing to testify and had

11  valuable evidence to offer.  State Habeas Petition at 43-44.  Millwee describes above

12  what the first three of these witnesses could have testified to.  *Supra* at 31-34.  Trial

13  counsel's files show that Gaines had employed Millwee and did not believe Millwee

14  deserved the death penalty.  State Habeas Exhibit 37 at 1-2.  Gates told a defense

15  investigator that "he was like a brother to" Millwee when they were both teenagers.

16  State Habeas Exhibit 15 at 1.  He said that Millwee began using speed after Millwee

17  got married.  *Id*. at 2.  He offered to be a "character reference" for Millwee and to take

18  him into his home if Millwee was ever released from prison.  *Id*. at 3.  Other relatives,

19  friends and co-workers were available and willing to testify but were not contacted or

20  presented at trial by counsel.  State Habeas Petition at 44.

21        Millwee also alleged that counsel unreasonably failed to call conditions of

22  confinement expert Jiro Jerry Enomoto, who provided valuable testimony at the first

23  penalty trial that Millwee would not be a security risk or threat in prison but rather

24  would adjust well to a life sentence.  State Habeas Petition at 44-45.  Enomoto's

25  testimony would have rebutted and undermined the prosecutor's argument in closing

26  that Millwee posed a future danger in prison if sentenced to life-without-parole.

27        As noted above, before trial, prosecution witness Jeannie Callen told a defense

28  investigator that after he got married, Petitioner "began using drugs, specifically heroin,

and alcohol and his life fell apart.  Because of his deteriorated physical and mental state, due to the drugs/alcohol, he could not work and he began to steal."  State Habeas Petition Exhibit 8 at 2.  The defense could have obtained this testimony at trial.

The claim further alleges that counsel unreasonably failed to prepare and present the testimony of Huffman and Don Millwee, resulting in the damaging testimony that is clear from the trial record and which the prosecutor exploited in his closing.  State Habeas Petition at 46-47; *see supra* at 27-28.  As shown above, reasonable counsel could have corrected the falsely aggravating portrait of Millwee that his penalty jury received.

Millwee's allegations and evidence establish deficient performance and prejudice under the authorities cited above.  *See also Libberton v. Ryan*, 788 F.3d 1147, 1163 (9th cir, 2009) (capital defense counsel's failure to prepare key defense witness unreasonable and prejudicial and state court decision denying relief unreasonable under § 2254(d)); *Alcala v. Woodford*, 334 F.3d 862, 890 (9th Cir. 2003) (failure to prepare witness to testify "could [not] possibly 'be considered sound trial strategy'") (quoting *Strickland*, 466 U.S. at 689); *Boyde*, 404 F.3d at 1177-79 (granting penalty relief where "the jury was not presented with key evidence that could have inspired sympathy for [the capital defendant] on account of his childhood" where "[i]nstead, the jurors heard testimony that [defendant] had fallen into violence despite a normal upbringing").  The state court could not reasonably deny these claims under controlling federal law, especially for failure to state a prime facie case.

### d.    Counsel Was Prejudicially Ineffective for Failing to Challenge the State's Evidence in Aggravation

Claim IV alleged that defense counsel unreasonably failed to challenge the evidence in aggravation.  State Habeas Petition at 48-50.  The omitted mitigation alleged in the petition and summarized above would have cast the aggravation evidence in a different light.  Significantly, evidence of Millwee's longstanding, acute heroin addiction would have countered the prosecutor's argument that drugs played no part in

42

1    any of Millwee's crimes or violent behavior.  The state court could not reasonably deny
2    this claim for failure to state a prima facie case for relief under the case law
3    summarized in the preceding sections.

4        Further, viewing the petition as a whole, all fair-minded jurists would agree that
5    the petition at least states a prima facie claim for relief, and therefore the state court's
6    summary denial without discovery or an evidentiary hearing does not shut the door to
7    federal fact development and relief under § 2254(d).  *Supra* at 14-17.

8    **7.    Millwee Is Entitled to Relief on the Claim Raised in His**
9    **Exhaustion Petition**

10       Millwee presented an expanded version of a penalty-phase ineffective assistance
11   claim to the California Supreme Court as the 12th Claim of his exhaustion petition.
12   Exhaustion Petition at 183-250.  This claim includes the allegations made on appeal
13   and in the first state habeas petition but makes additional allegations and relies on 40
14   declarations and other documents that were not previously before the state court.  In
15   these ways, the 12th claim is a different claim than the penalty-phase ineffective
16   assistance claims previously submitted in state court.  Because Millwee is entitled to
17   relief on the prior versions of his claim, *a fortiori*, he is entitled to relief on this more
18   expansive claim.  The state supreme court summarily denied the 12th Claim on the
19   merits and on procedural grounds.  Lodgment 11.[15]

20       Millwee does not repeat here all the additional allegations and evidence in the
21   12th Claim (*see especially* Exhaustion Petition at 184-86, listing allegations), but

23       [15]   The Court has asked the parties not to brief the issue of procedural default.
24   Millwee briefly notes that if Respondent were to meet his burden of showing that any
     of Millwee's claims of ineffective assistance of trial counsel are procedurally defaulted;
25   the ineffective assistance of counsel in the initial state habeas proceeding would
     provide cause for the defaults.  *See* Exhaustion Exhibit 194 (Millwee's state habeas
26   counsel attests to her deficient performance); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320
27   (2012); *Trevino v. Thaler*, 133 S. Ct. 1911, 1915, 1921 (2013); *Nguyen v. Curry*, 736
     F.3d 1287, 1289-90 (9th Cir. 2013).
28

43

briefly discusses the most significant additions.  In support of his claim that counsel was prejudicially deficient in presenting the damaging testimony of his father, Don Millwee, Petitioner submitted declarations showing that key parts of Don's testimony were not just damaging but false.  Millwee alleged that "Don Sr. perjured himself by falsely testifying that his wife's wheelchair was never stored in the trunk of the car and was in the house on the morning of the shooting.  Don Sr. also testified falsely that Petitioner was never allowed in the residence unless Don Sr. was present."  Exhaustion Petition at 190.  Prosecution witness Debra Millwee stated in a declaration filed with the exhaustion petition that the wheelchair was actually stored in the trunk of the car.  Exhaustion Exhibit 190, ¶ 23 ("On the day Esta was killed, the wheel chair was definitely in the trunk of [the car].").  Debra Millwee was Esta Millwee's neighbor and caretaker.  Petitioner's brother Michael likewise stated in a declaration that his "father lied to the jury when he testified that my mother kept her wheelchair in the house and never in the trunk of the car.  That wheelchair was always in the trunk of my parent's car."  Exhaustion Exhibit 199, ¶ 10.  Petitioner's paternal cousin Johnnie Millwee gave similar testimony.  Exhaustion Petition 198, ¶ 19.  Don Millwee himself admitted to a habeas investigator that he lied at trial, but he would not sign a declaration to that effect.  He told the investigator that he "kept Esta's wheelchair in the trunk of the car" and that "it was impractical to keep the wheelchair in the house."  Exhaustion Exhibit 191, ¶ 4.

Michael Millwee also said in his declaration that "my father also lied when he testified that my mother was physically afraid of Donnie and that he was never allowed in the house when my father wasn't there. . . .  In the years preceding her death, I saw Donnie in the house several times when my father was gone and my mother was there."  Exhaustion Exhibit 199, ¶ 11.

Petitioner also presented memos from trial counsel's files showing Don Millwee's hostility to his son and the defense and putting them on notice that he would

provide testimony damaging to the defense if called as a witness.  Exhaustion Petition at 188-89 (quoting Exhaustion Exhibits 21, 22 and 66).

Petitioner also submitted a declaration by Randolph Driggs, the lawyer responsible for the penalty-phase investigation and presentation.  Exhaustion Exhibit 224, ¶ 2.  After reviewing evidence obtained by federal habeas counsel, Driggs concluded that "it is clear that Don Sr's testimony presented the Millwee family in a false light."  *Id.*, ¶ 6.

Where consensual entry is the "sine qua non" of the case, RT 3049, reasonable defense counsel would have impeached Don Millwee's testimony that Petitioner was not allowed in the house in his absence.  This testimony, and the testimony that the wheelchair was in the house and therefore Petitioner took it and loaded it into the car, was not only crucial to the prosecution's felony-murder theory at guilt, but also to the jury's consideration of the circumstances of the crime at penalty.  The record before the state Supreme Court shows that counsel was on notice not to make Petitioner's father the centerpiece of their efforts to present some biographical information on their client, since they reasonably should have known he was hostile to Petitioner and would give testimony damaging to the defense.  Indeed, defense counsel complained on the trial record that Don Millwee cooperated with the prosecutor but refused to speak to them.  RT 2774, 4306; Retrial RT 499, 612.  As a result of their deficient performance, defense counsel presented some of the worst evidence against their own client.  Even assuming reasonable counsel would decide to present Don Millwee as a witness, it was unreasonable not to rebut the false and damaging parts of his testimony.  Counsel conducting a reasonable investigation could have prevented the jury from receiving the falsely aggravating portrait of Petitioner that his father created.  *See Libberton*, 583 F.3d at 1173 (§2254(d) satisfied on claim of ineffective assistance at penalty where "the only family member whose opinion was put before the sentencing court was [defendant's] father.  The same father who abused [defendant] as a child" and said his son was responsible for the murder.)

45

1    Subclaim (b) alleges that counsel unreasonably and prejudicially "failed to

2    investigate and present available evidence regarding Petitioner's social history,

3    including trauma Petitioner suffered as a child and as an adult, and his resulting drug

4    and alcohol addiction." Exhaustion Petition at 184, 195-218.  Millwee presented

5    evidence showing that he was the product of damaged and dysfunctional family, not the

6    lone "bad seed" of an essentially healthy family—the false picture the jury received.

7    Millwee presented lay witness declarations attesting to the (1) serious and

8    repeated trauma he and his brothers suffered in childhood; (2) the debilitating substance

9    abuse and addiction that resulted; (3) the additional trauma Millwee suffered as an

10   adult; and (4) Millwee's resulting inability to function in society appropriately.

11   Exhaustion Petition at 195-96.  Much of this evidence was summarized in the social

12   history declaration of Lee Norton, a licensed clinical social worker.  Exhaustion Exhibit

13   215.[16]  Trial counsel Driggs reviewed social history declarations and documents

14   obtained by federal habeas counsel and submitted a declaration concluding that "it

15   would have been useful to call a social historian at the penalty phase of [Millwee's]

16   trial to explain the multi-generational pattern of intra-family violence, mental illness

17   and drug abuse that pervaded the Millwee family."  Exhaustion Exhibit 224 ¶ 5.  He

18   declared that he has "no explanation for why [he] did not do this, apart from the fact

19   that this was [his] first capital case." *Id*., ¶ 11.

20   Social historian Norton explained in her declaration that Millwee and his

21   brothers "came from an extremely impaired family.  Both of his parents were raised in

22   households debilitated… by chronic violence, substance abuse and mental illness…

23   which had profound effects on their development."  Amended Petition at 196; Exhibit

24   215, ¶ 7.

25

26

27          [16]  Norton submitted a revised and updated version of her declaration with
Petitioner's informal reply.  *See* Informal Reply at 14 n.5; Exhaustion Exhibit 221.

28

46

Millwee presented declarations showing that both of his parents were alcoholics with unpredictable and explosive tempers. Exhaustion Petition at 199-200; Exhaustion Exhibit 215, ¶¶ 23-28, 34-40, 49-52. Don Millwee beat Petitioner and his brothers and bragged about cheating on his wife. Exhaustion Petition at 200-01. Johnnie Millee provided a declaration attesting to the act of violence reported in trial counsel's interview memo—that when Petitioner was nine years old, his father struck him several times in the face with an open hand. *Id*.; Exhaustion Exhibit 198, ¶ 5, Petitioner's parents promoted conflict among their children and at other times neglected them, leaving them to fend for themselves. Exhaustion Petition at 203. Petitioner's brothers later engaged in violence, too, beating their wives. Exhaustion Petition at 202; Exhibit 215, ¶¶ 70-73, 77-78.

The exhaustion petition provided further allegations and evidence of substance abuse and addiction throughout the Millwee family, from Millwee's grandparents, parents and siblings, to him and his daughter Tasha**,** the next generation in the family line. Exhaustion Petition at 205-08. Johnnie Millwee's declaration describes seeing Millwee shoot up heroin at age 13. *Id*. at 205; Exhaustion Exhibit 198, ¶ 14. Michael Millwee's wife, Tami Dines, saw Petitioner shoot heroin and take speed, LSD, marijuana and mushrooms. Exhaustion Petition at 206; Exhaustion Exhibit 219, ¶ 75. All three of Petitioner's siblings became drug addicts; Brad was a heroin addict. Exhaustion Petition at 206.

Norton's social history declaration explained the causes and consequences of Millwee's addiction—compelling mitigation evidence his jury never heard. She explained that the state of anxiety Millwee and his brothers lived in as children put them at risk for clinical depression, and the drugs Millwee used "are strongly indicative of self-medication. From age 13, Donnie was injecting heroin, the drug of choice for self-medicating depression." Exhaustion Petition at 207. He also drank whiskey from age 7. *Id*. at 207-08; Exhaustion Exhibit 215, ¶¶ 130-32. Use of these substances, in turn, "truncated all of his normal developmental processes," contributed to "long-term

47

neurologic damage" and "had a profound effect upon on his ability to function appropriately and make rational decisions." Exhaustion Petition at 209, 214; Exhaustion Exhibit 215, ¶¶ 133, 137.  Millwee's functioning was further impaired as an adult by a concussion, with loss of consciousness, that he suffered the year before his mother's shooting and by his extensive alcohol consumption, which he testified to at the trial on the San Diego assault.  Exhaustion Petition at 212-13.  As the petition alleged, some of this information was discovered by defense investigators but was unreasonably not presented at trial, and other evidence was not discovered by counsel because of their inadequate investigation.  *Id*. at 214.

Subclaim (c) alleged that counsel unreasonably "failed to investigate and present evidence of Petitioner's mental impairments and disorders."  Exhaustion Petition at 184; *see also id*. at 195-227.  The claim describes Millwee's bizarre behavior during trial recounted in the declarations of a defense investigator and alternate juror–e.g., Millwee muttering to himself, looking "spaced out," etc.  *See infra* at 71-82.

The claim also presents analysis and opinions by social worker Norton and neuropsychologist Dale Watson regarding Millwee's serious mental impairments and distorted and likely delusional beliefs.  Exhaustion Petition at 221-22, 224-27; Exhauston Exhibit 215, ¶¶ 136-37; Exhaustion Exhibit 214. ¶¶ 4, 40, 44-47.  Watson examined Millwee before Millwee suffered his stroke in August 2000.  Watson concluded that Millwee "suffers from a serious long-standing mental disorder and there is a possibility his impairment of mental functions is associated with dysfunction of the right hemisphere of his brain."  Exhaustion Petition at 226; Exhaustion Exhibit 214, ¶ 49.  Watson noted Millwee's history of head trauma and substance abuse, and concluded that "the combination of these factors has had a profound adverse effect on Mr. Millwee's ability to make rational and appropriate decisions, and to function adequately in society."  Exhaustion Petition at 227; Exhaustion Exhibit 214, ¶ 49.

Millwee further supported his claim with a declaration by psychiatrist Pablo Stewart filed with his Informal Reply.  Exhaustion Exhibit 222.  Stewart concludes that

48

1  at the time of the offense and trial, Millwee had a psychotic disorder, Post-Traumatic

2  Stress Disorder, and a mood disorder.  *Id.*, ¶10.  As a result of these conditions,

3  Millwee was suffering from an extreme mental and emotional disturbance at the time of

4  shooting.  *Id.*, ¶ 63.

5        Subclaim (d) of the Exhaustion Petition alleged that counsel was prejudicially

6  deficient in failing to present evidence of lingering doubt, including evidence that the

7  gun shot that killed Esta Millwee may had struck a cabinet, deflecting from a non-fatal

8  course to a fatal one, and evidence that Millwee was, in fact, allowed in the house

9  generally and was allowed in by his mother on the day of the shooting.  Exhaustion

10 Petition at 227-28.  Such a presentation would have been consistent with the accident

11 defense at guilt, would have mitigated the circumstances of the offense under §

12 190.3(a), and would have been consistent with the mental health, substance abuse and

13 addiction, and social history mitigation evidence outlined above.

14       Subclaim (e) alleged that counsel unreasonably and prejudicially failed to present

15 evidence that Millwee would not pose a danger once incarcerated.  Exhaustion Petition

16 at 229-30.  Reasonable counsel would have presented Enomoto, the corrections expert

17 who testified at the first trial, or a similar expert.  *See Hinton*, 134 S. Ct. at 1088.

18       Subclaim (f) alleged that counsel was prejudicially deficient in failing to

19 adequately impeach prosecution witnesses, including Don, Ronnie and Debra Millwee

20 when they falsely testified that Petitioner was not allowed in his parents' house unless

21 Don was present, and Don with evidence that he threatened witnesses and turned them

22 against the defense.  *Id.* at 231-33.

23                    **(1)    Deficient Performance**

24       All fair-minded jurists would agree that the allegations and evidence of

25 ineffective assistance of counsel at penalty that Millwee put before the California

26 Supreme Court establish a prima facie case of deficient performance and prejudice.

27 Accordingly, § 2254(d) does not bar relief on this claim.

28

Here, as in *Wiggins*, the scope of counsel's investigation was "unreasonable in light of what counsel actually discovered" in the files they did obtain and the interviews their investigator conducted.  "Any reasonably competent attorney would have realized that pursuing these leads was necessary to make an informed choice among possible defenses . . . ." 539 U.S. at 524-25; *see also In re Lucas*, 33 Cal. 4th 682, 724 (2004) ("the limited investigation into potential evidence in mitigation not only was unreasonable under then-current general standards for investigation, it 'was also unreasonable in light of what counsel actually discovered' in the defendant's background").  Here, as in *Rompilla*, reasonably available records put counsel on notice of defendant's substance abuse and mental health problems and required counsel to investigate further to build a mitigation case.  545 U.S. at 391.

The Supreme Court held that the state courts unreasonably applied federal law in *Wiggins* and *Rompilla* by denying petitioners' ineffective assistance claims on the ground that counsel's performance was adequate.  *Wiggins*, 539 U.S. at 518; *Rompilla*, 545 U.S. at 388-89.  In light of these authorities, and based on the record before it, the California Supreme Court could not reasonably deny Millwee's claim for lack of deficient performance.  *See also In re Lucas*, 33 Cal. 4th at 689 ("Trial counsel's limited investigation was not consistent with prevailing norms at the time of trial [in California case involving 1986 murders] and, in abandoning their investigation, counsel unreasonably failed to recognize indications that inquiry into petitioner's social history would disclose substantial mitigating evidence").

*Bemore*, 788 F.3d at 1171-77, is also instructive.  In *Bemore*, the Ninth Circuit held that a California Supreme Court's summary denial of a penalty-phase ineffectiveness claim unreasonably applied federal law under § 2254(d)(1) where defense counsel was on notice of defendant's drug and mental health problems but failed to further investigate and present additional testimony on these topics.  The court explained that although some defense penalty witnesses mentioned defendant's "drug problems and tumultuous upbringing" at trial, "it is not enough that some of the defense

50

witnesses informed the jury of the facts that might *underlie* a mental health mitigation defense; 'expert testimony to explain the ramifications of those experiences on petitioner's behavior is necessary.'" *Id*. at 1172 (quoting *Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999).

Counsel's duty to investigate was not excused by the alleged refusal of some members of Millwee's family to cooperate with the defense pre-trial. The memos by defense investigators of their interviews of relatives, friends, and acquaintances of Millwee show that many witnesses were willing to provide information to the defense. *See* Exhibits 3-37 of Initial State Habeas Petition. Even if some witnesses would have refused to testify in court, and reasonable counsel would not try to present their testimony over their objection, the social history information they recounted could have been conveyed to the jury through defense experts and served as the basis for persuasive expert opinions.

### (2)   Prejudice

Nor could the state supreme court reasonably deny the claim for lack of prejudice. Although at trial the jury heard some limited evidence of Millwee's homelessness, that he had a drug problem after he got married, that he was drunk the morning of the shooting (all per Don Millwee's testimony), and that he smelled of alcohol during the San Diego assault two days later, the jury did not receive testimony showing the length and severity of those conditions or expert explanations of "'the ramifications of those experiences on petitioner's behavior.'" *Bemore*, 788 F.3d at 1172.

As a result of counsel's deficient performance, the prosecutor was able to argue at closing that there was "[n]o evidence that drugs played any part in these cases" and that the only thing the jury learned about Millwee from the defense penalty presentation was that in "a few years from now he may need a complicated operation." RT 2475-76, 2479; *see Bemore*, 788 F.3d at 1175 ("Had the mental health evidence been presented, [the prosecutor's] reductive argument could not have been made"). Further, defense

51

counsel conceded in closing that the sentencing factors of "extreme mental or emotional disturbance" and "impair[ment] as a result of mental disease or defect, or the effects of intoxication" were *not* relevant.  RT 2486-87; CT 987.  Although it was true, as counsel argued, that "[t]he Millwee family was crumbling long before Esta Millwee died . . . because of internal problems," and that Don Millwee unfairly blamed Petitioner "for everything that happened negatively to those sons of his," he did not present evidence supporting these arguments.  RT 2493, 2495.

Here, as in *Rompilla*, counsel's unreasonable investigation resulted in the omission of readily available evidence of the capital defendant's serious drinking problem, his parents' alcoholism, his father's vicious temper and physical and verbal abuse of him, and his father's bragging about cheating on his mother.  545 U.S. at 391-92.  Here, as in *Rompilla*, the evidence presented in habeas "adds up to a mitigation case that bears no resemblance" to the meager trial presentation and mandates relief.  *Id*. at 393.

*Porter* is also instructive.  Here, as in *Porter*, trial counsel failed to uncover and present evidence of the capital defendant's mental impairments and family background.  558 U.S. at 40.  Like *Porter*, "[t]his is not a case in which the new evidence 'would barely have altered the sentencing profile . . . .'"  *Id*. at 41.  In both cases, the penalty presentation "left the jury knowing hardly anything about [the defendant] other than the facts of his crimes."  *Id.* at 33.[17]  In both cases, the petitioner presented evidence in state habeas of his abusive childhood, "horrible family life," long-term substance abuse, and impaired mental health and mental capacity.  *Id*. at 33- 34.[18]  *Porter* held that the state court unreasonably applied federal law in holding that there was no prejudice because

_____

[17]   As noted above, in Millwee's case, some of the key facts of the crime were falsely presented by prosecution witnesses.

[18]   Porter presented evidence of heroic military service in habeas that is absent here.

1    the court "either did not consider or unreasonably discounted the mitigation evidence

2    adduced in the post-conviction hearing." *Id* at 42.  Likewise, the California Supreme

3    Court could not reasonably deny Millwee's claim for lack of prejudice based on the

4    record before it.  "'[T]here exists too much mitigating evidence that was not presented

5    to now be ignored.'"  *Id*. at 44.

6          Further, as shown above, the state court could not reasonably deny relief on the

7    ground that, after re-weighing the aggravation and mitigation in light of counsel's

8    errors, the remaining aggravating evidence precludes a showing of prejudice, especially

9    since the omitted evidence would have provided a more sympathetic explanation for

10   Millwee's behavior.  Although Millwee had three prior felony convictions and

11   unadjudicated acts of violence or threatened violence, his record is less aggravated, or

12   no more aggravated, than numerous cases where prejudice has been found, including

13   *Williams*, *Rompilla*, and *Porter*.  Section 2254(d) does not bar relief.

14          Under the caselaw and arguments above, Millwee is also entitled to relief on *de

15   novo* review.  The Court can and should grant relief on the current record.  *See, e.g.,

16   Bemore*, 788 F.3d at 1176 ("our conclusion that declarations and other evidence already

17   in the record presented to the state court support Bemore's claim [of ineffective

18   assistance at penalty] obviates any need to remand for discovery" or an  evidentiary

19   hearing a in case where no hearing was held in state habeas); *Cannedy v. Adams*, 706

20   F.3d 1148, 1156 n.2 (9th Cir. 2013) (granting ineffective assistance claim without

21   considering evidence from federal evidentiary hearing because "even on the record

22   before the state courts [which did not hold a hearing], Petitioner is entitled to relief");

23   *Libberton*, 583 F.3d at 1164-66 (granting penalty-phase ineffectiveness claim after

24   expanding record to include several depositions but where no state or federal habeas

25   hearing was held).  But if the Court is not inclined to do so, it should at least order an

26   evidentiary hearing.  *See, e.g. Earp*, 431 F.3d at 1177.

27          Subclaim (p) of the 12th Claim alleges that counsel were ineffective in failing to

28   investigate Millwee's incompetence to stand trial and to waive his presence, and in

53

1    failing to request a competency hearing.  Amended Petition at 248-49.  Millwee

2    outlined the facts indicating his incompetence in his discussion of Claim 5 below.  *See*

3    *infra* at 71-82.  Those facts put defense counsel on notice to investigate Millwee's

4    competence and to request a competency hearing.

5         Criminal defense "counsel has a duty to investigate a client's competency to

6    stand trial . . . ."  *Agan v. Singletary*, 12 F.3d 1012, 1018 (11th Cir. 1994).  Counsel

7    performs deficiently when he fails to move for a competency hearing when "there are

8    sufficient indicia of incompetence to give objectively reasonable counsel reason to

9    doubt the defendant's competency."  *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir.

10   2011).

11        To establish prejudice, a petitioner "must show that there is a reasonable

12   probability that, but for counsel's unprofessional errors, the result of the proceeding

13   would have been different.  A reasonable probability is a probability sufficient to

14   undermine confidence in the outcome."  *Strickland*, 466 at 694.  In this context,

15   prejudice is established if there is a reasonable probability the defendant would have

16   been found incompetent but for counsel's deficient performance.  *Stanley*, 633 F.3d at

17   862; *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990).

18        Defense counsel's failures to adequately investigate Millwee's competency,

19   request a competency hearing, and alert the court to information showing Petitioner

20   was incompetent to stand trial constitute ineffective assistance.  *Williamson v. Ward*,

21   110 F.3d 1508, 1518-19 (10th Cir. 1997) (defense counsel ineffective for failing to

22   investigate defendant's mental illness and request competency hearing); *Brown v.*

23   *Sternes*, 304 F.3d 677 (7th Cir. 2002) (counsel aware of defendant's history of

24   treatment for mental illness ineffective for failing to request competency hearing).

25        In *Bouchillon*, the Fifth Circuit held that counsel was ineffective when despite

26   knowing that the defendant had been hospitalized psychiatrically, counsel did not

27   request a competency hearing or arrange for defendant's competence to be evaluated by

28   an expert before defendant entered a guilty plea.  907 F.2d at 590, 595-98.  The court

54

1  explained that the trial court "relies on counsel to bring these matters [i.e., defendant's
2  mental status] to his or her attention. 'Judges must depend to some extent on counsel to
3  bring issues into focus.'"  *Id.* (quoting *Drope*, 420 U.S. at 176-77); *United States v.*
4  *Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1998) ("Defense counsel should move for
5  evaluation of the defendant's competence to stand trial whenever the defense counsel
6  has a good faith doubt as to the defendant's competence . . . . [C]ounsel should make
7  known to the court and to the prosecutor those facts known to counsel which raise the
8  good faith doubt of competence") (quoting ABA Standards for Criminal Justice,
9  Standard 7-4.2(c)).

10        The prejudice from counsel's ineffective performance is apparent; had a
11  competency hearing been held, there is a reasonable probability that Millwee would
12  have been found incompetent.  *Brown*, 304 F.3d at 696 ("[F]ailure of client's trial
13  counsel to supply the court and court-appointed psychiatrists with available
14  documentation of [client's] psychiatric illness prejudiced his defense by providing the
15  trial judge with less than reliable information, thereby contributing to the trial judge's
16  rendering a finding of law based on inaccurate conclusions regarding his competency
17  and sanity").  Millwee is entitled to a new trial.  28 U.S.C. § 2254(d) does not bar relief
18  because, based on the allegations and evidence before it, the state supreme court should
19  have granted the writ or at least issued an order to show cause and allowed him to
20  further establish his entitlement to relief at an evidentiary hearing.

21        Reasonable counsel would also have raised Millwee's competence to waive his
22  presence at the penalty re-trial.  Millwee was prejudiced by counsel's failure because
23  his absence from vast portions of the penalty re-trial gave the jury the impression that
24  he was disinterested in whether he lived or died and disrespectful of the proceeding.

25  **SECOND CLAIM FOR RELIEF FOR INEFFECTIVE ASSISTANCE OF**
26  **COUNSEL DURING PRETRIAL AND GUILT PHASE PROCEEDINGS**

27        Millwee's second claim alleges that he received prejudicially deficient
28  performance of counsel during the pre-trial and guilt phase proceedings.  Amended

1   Federal Petition at 32-68.  Millwee presented this claim to the California Supreme

2   Court in the First Claim of his exhaustion petition.  Lodgment 8 (Exhaustion Petition at

3   66-121).  The state court summarily denied the claim on the merits and as procedurally

4   barred.  Lodgment 11.

5                              **1.    Applicable Law**

6          Millwee's ineffective assistance claim is based on *Strickland*, 466 U.S. 668,

7   which under AEDPA is "clearly established Federal law, as determined by the Supreme

8   Court . . . ."  *Williams*, 529 U.S. at 391; *see also Kimmelman v. Morrison*, 477 U.S.

9   365, 373-75 (1986) (applying *Strickland* to claim of ineffective assistance at guilt trial).

10         "An ineffective assistance claim has two components:  A petitioner must show

11  that counsel's performance was deficient, and that the deficiency prejudiced the

12  defense."  *Wiggins*, 539 U.S. at 521.  Defense counsel "has a duty to make reasonable

13  investigations or to make a reasonable decision that makes particular investigations

14  unnecessary."  *Strickland*, 466 U.S. at 691.  "[D]ecisions that are made before a

15  complete investigation is conducted are reasonable only if the level of investigation was

16  also reasonable."  *Duncan v. Ornoski*, 528 F.3d 1222, 1234 (9th Cir. 2008).  "The duty

17  to investigate is especially pressing where . . . the witnesses and their credibility are

18  crucial to the State's case."  *Reynoso v. Giurbino*, 462 F.3d 1099, 1113 (9th Cir. 2006).

19  "'A lawyer who fails adequately to investigate, and to introduce into evidence,

20  information that demonstrates his client's factual innocence, or that raises sufficient

21  doubt as to that question to undermine confidence in the verdict, renders deficient

22  performance.'"  *Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir. 1999).

23         To establish prejudice, a petitioner "must show that there is a reasonable

24  probability that, but for counsel's unprofessional errors, the result of the proceeding

25  would have been different.  *Strickland*, 466 U.S. at 694.  "When a defendant challenges

26  a conviction, the question is whether there is a reasonable probability that, absent the

27  errors, the factfinder would have had a reasonable doubt regarding guilt."  *Id*. at 695.

28  Prejudice is established when "evidence regarding [a murder defendant's] mental

56

1   illness *may have demonstrated* that [defendant] was incapable of forming the requisite

2   intent to commit first degree murder," *Daniels v. Woodford*, 428 F.3d 1181, 1207 (9th

3   Cir. 2005) (emphasis added), or when evidence of "severe mental health and drug

4   problems *may well have resulted* in a second degree murder or manslaughter

5   conviction." *Jenning v. Woodford*, 290 F.3d 1006, 1011 (9th Cir. 2002)(emphasis

6   added).

7       2.      **Counsel's Prejudicially Deficient Performance Regarding**

8               **Forensic and Impeachment Evidence**

9       Millwee's claim has 14 subclaims.  Amended Federal Petition at 32-68;

10  Exhaustion Petition at 66-121.  Individually, and cumulatively, they warrant relief.

11      Subclaim (a) exhaustively details Millwee's claim that his counsel unreasonably

12  failed to investigate and present forensic evidence that the bullet that killed Esta

13  Millwee deflected from its course before striking her, which would have supported

14  Millwee's accident defense and undermined the prosecutor's claim that Millwee shot

15  her "execution style" with a gun pressed against her forehead.  Amended Federal

16  Petition at 34-39; Exhaustion Petition at 70-79.  Counsel's failure is deficient

17  performance because without it, Millwee's accident defense rose and fell on his own

18  testimony, which the jurors could discount as self-interested (as prosecutor argued they

19  should).  Counsel's performance is not rendered adequate by the fact that they

20  presented other expert witnesses to try to counter the prosecution's gun evidence.  *See*

21  *Hinton*, 134 S. Ct. at 1088-89 (capital defense counsel ineffective in not seeking

22  additional funds for expert to counter state evidence linking gun and bullets used in

23  murder to defendant where the expert he used at trial on this issue was discredited on

24  cross).

25      Subclaim (b) alleges that counsel was ineffective in failing to impeach

26  prosecution witnesses.  Amended Federal Petition at 40-50; Exhaustion Petition at 79-

27  94.  The same claim is alleged with regard to the penalty retrial, and relief is required

28  on the guilt-phase component of the claim as well.

At the guilt trial, Don Sr., Ronald and Debra Millwee testified that Petitioner was never allowed in his parents' house unless his father, Don Sr., was present, because Petitioner's mother was afraid of him. Amended Federal Petition at 42 (citing trial transcript); Exhaustion Petition at 84 (same). This testimony was crucial to the prosecutor's argument that Millwee did not have consent to enter the house on the day of the shooting, which in turn supported the state's felony-murder theory and burglary special circumstance allegation. There was no physical evidence to support the prosecutor's argument—there was no sign of forced entry. Millwee testified that there was no such rule regulating his presence at his parents' house and that his mother let him in the house the day of the shooting, as she had before. In habeas, Millwee submitted declarations showing that reasonable counsel could have presented testimony supporting Millwee's side on this issue and undermining the prosecution's account. Thus, Michael Millwee declares: "my father . . . lied when he testified that my mother was physically afraid of Donnie and that he was never allowed in the house when my father wasn't there. . . . In the years preceding her death, I saw Donnie in the house several times when my father was gone and my mother was there." Exhaustion Exhibit 199, ¶ 11.

Don Sr. could also have been impeached on his testimony that Esta Millwee's wheelchair was always kept in the house and that it was there on the morning of the shooting. Amended Petition at 44; Exhaustion Petition at 84, 86. As noted in the discussion of the penalty-phase iteration of this claim, Michael, Debra and Johnnie Millwee gave declarations in state habeas stating that the wheelchair was always kept in Don and Esta's car, not in their house, and Don Sr. told a habeas investigator the same thing. Amended Federal Petition at 44-46; Exhaustion Petition at 86-89. The location of the wheelchair was crucial for the prosecution's felony-murder theory and special circumstance allegations. Further, the charge that after killing his disabled mother, Millwee stole her wheelchair, for which he had no use other than to sell, was emotionally explosive and damaging to the defense case as a whole. Reasonable

58

counsel could have undermined this claim and supported Millwee's account that the wheelchair was in the trunk of the car and that his possession of it was an unintended byproduct of taking the car.

As also shown in the penalty claim, reasonable counsel could have impeached Don Sr.'s testimony by showing that he tried to turn others in the family against Millwee, including by threatening them and by lying about the evidence in the case. Amended Petition at 47-48; Exhaustion Petition at 89-92.  Michael Millwee's state habeas declaration recounts that Don Sr. told him after the shooting that "Donnie then took the necklace off mom's neck, the rings off mom's fingers and the cash from mom's purse."  Exhaustion Exhibit 199, ¶ 2.  At trial, Don Sr. testified that these items had not been taken.  RT 2765-66.

The declarations of Michael and Johnnie Millwee report the admission by Ronnie Millwee that he when he shot Petitioner in his trailer he knew he was shooting at Petitioner and he intended to kill him[19]–a far cry from Don Sr.'s trial testimony that Ronnie shot an unknown intruder who just later happened to turn out be Petitioner. Declarants also report that Ronnie and Michael planned to kill Petitioner to revenge their mother's death.  Exhaustion Ex. 199, ¶¶ 4-5.

Subclaim (c) alleges that defense counsel prejudicially failed to investigate and present the testimony of defense witnesses, including the testimony noted above that Michael, Debra and Johnnie Millwee could have provided to impeach prosecution witnesses.  Amended Petition at 50-51; Exhaustion Petition at 94-95.

Under clearly established federal law and Ninth Circuit caselaw, (1) counsel performed deficiently in failing to investigate and present evidence to impeach prosecution witnesses and (2) the state court's summary denial of Millwee's claim is objectively unreasonable under § 2254(d)(1) and (d)(2).  In *Reynoso*, a California

---

[19] *Id.*, ¶ 24; Exhaustion Exhibit 198, ¶ 18.

habeas petitioner convicted of first-degree murder alleged that his lawyer was ineffective for (1) failing to investigate that the two key eyewitnesses to the fatal shooting identified petitioner as the shooter only after being told of a reward in exchange for testimony leading to a conviction; and (2) for failing to cross-examine the witnesses about the reward and their expectations of receiving it for purposes of impeachment and to show bias. 462 F.3d at 1110. The state habeas court denied the claim without reasoning. *Id.* at 1008. Counsel knew of the reward offer but failed to interview the two witnesses about it or cross-examine them about their motivation for testifying. *Id.* at 1113, 1115. The Ninth Circuit held that counsel's performance was deficient and could not be considered 'sound trial strategy.'" *Id.* at 1115. The omitted evidence "would not have been inconsistent with [counsel's] defense strategy and would have exposed a strong motive for witness bias on the part of the State's only two eyewitnesses." *Id.* at 1113. The state court's unreasoned denial of the claim constituted an unreasonable application of federal law. *Id.* at 1102.

In *Cannedy*, the habeas petitioner challenged his conviction for committing lewd and lascivious acts upon his stepdaughter. *Cannedy*, 706 F.3d at 1151. In state habeas, petitioner alleged that a witness could testify that before trial the stepdaughter had retracted her allegations against him and that she had a motive to testify falsely, i.e., to move to her biological father's house, closer to her friends, and that counsel was aware of this witness. *Id.* at 1153-54, 1160-61. The Ninth Circuit held that no competent lawyer would have declined to interview such a potentially favorable witness in a trial that "was largely a 'he said, she said' case, with no physical evidence linking Petitioner to the alleged abuse," and where "Petitioner was the only witness to testify in his defense." *Id.* at 1161. The state court's denial of the claim for failure to state a prima facie case satisfied § 2254(d) because "it was objectively unreasonable to conclude that Petitioner's trial lawyer rendered effective assistance by declining to investigate or introduce that evidence." *Id.* at 1160-62.

1    Likewise in *Vega*, the Ninth Circuit held that an Arizona state court unreasonably

2    applied *Strickland* in denying a claim that counsel provided prejudicially deficient

3    performance in failing to investigate and present the testimony of a witness who could

4    have testified that a stepdaughter who had accused her stepfather of sexually abusing

5    her told him before trial that the defendant "'didn't do it.'"  *Vega v. Ryan*, 757 F.3d

6    960, 962-63, 966 (9th Cir. 2014).

7    The reasoning of *Reynoso*, *Cannedy* and *Vega* apply here.  Defense counsel

8    stated on the trial record that Don Sr. and other relatives were hostile to the defense,

9    and therefore they were on notice of their bias and potential dishonesty.  Millwee was

10   the only eyewitness to the shooting; he testified that his mother let him in the house, he

11   had no intent to steal, the gun accidentally went off, and he panicked and left.  His trial

12   was a "he said, they said" battle on what the trial judge called the *sine qua non* of the

13   case, consensual entry, and on Millwee's intent on entering the house.  The omitted

14   testimony would have directly contradicted the prosecution witnesses' testimony on the

15   key facts necessary for the state's felony-murder theory and special circumstance

16   allegations.  And by showing the lengths Don Sr. went to ensure Millwee was

17   convicted–threatening witnesses, lying about the state of the evidence, etc.–the omitted

18   testimony was strong evidence of his bias and would have shown the jury he could not

19   be trusted.  *See Reynoso*, 462 F.3d at 1113 ("'A colorable showing of bias can be

20   important because, unlike evidence of prior inconsistent statements–which might

21   indicate that the witness is lying–evidence of bias suggests why the witness might be

22   lying.'").

23   Further, here, as in *Reynoso*, *Cannedy* and *Vega*, the state court's denial of relief

24   on prejudice grounds is unreasonable under § 2254(d)(1) and (d)(2).  *Reynoso*, 462 F.3d

25   at 1120; *Cannedy*, 706 F.3d at 1165-66; *Vega*, 757 F.3d at 974-75 ((d)(1) and (d)(2)

26   met).  The omitted testimony "'would have added an entirely new dimension to the

27   jury's assessment" of the testimony of the prosecution witnesses and at least raised a

28   reasonable doubt that Millwee had the intent required for the prosecutor's felony-

murder theory and the burglary and robbery special circumstances.  *Vega*, 757 F.3d at 974.  The omitted testimony would have supported Millwee's testimony and prevented, or at least undermined, the prosecutor's argument in closing that Millwee gave the jury an "incredible story that that simply doesn't jive [sic] with the facts at all."  RT 3819; *see also* RT 3802; *see Reynoso*, 462 F.3d at 1118 (omitted impeachment evidence prejudicial because it "would have answered directly the open question that the prosecution's closing argument posed for the jury−what was the witnesses' motive to lie?").

Under the caselaw and arguments above, Millwee is also entitled to relief on *de novo* review.  The Court can and should grant relief on the current record.  *See, e.g., Cannedy,* 706 F.3d at 1156 n.2 (granting ineffective assistance claim without considering evidence from federal evidentiary hearing because "even on the record before the state courts [which did not hold a hearing], Petitioner is entitled to relief").  But if the Court is not inclined to do so, it should at least order an evidentiary hearing.  *See, e.g. Earp*, 431 F.3d at 1177.

### 3.     Counsel's Prejudicially Deficient Performance in Failing to Investigate and Present Evidence of Mental State Defenses

Subclaim (j) alleges that counsel prejudicially failed to investigate and present a mental state defense at guilt despite being on notice of Petitioner's mental illness, substance abuse and addiction, and bizarre behavior.  Amended Federal Petition at 57-64; Exhaustion Petition at 106-13.  The mental health evidence that reasonable counsel would have investigated and presented at penalty to seek a life sentence also would have supported a mental state defense at guilt and obviated a penalty trial.  Millwee summarized that evidence in his discussion of the penalty-phase ineffectiveness claim above.

Millwee told defense investigators before trial that he was drunk the day of the shooting.  Millwee's father testified at penalty that Petitioner was drunk the morning of the shooting.  RT 1860, 1899.  Defense counsel had also obtained information from

records and witnesses before trial attesting to Millwee's longstanding substance abuse and addiction (heroin, methamphetamine, alcohol) and impaired functioning. Counsel was thus on notice to investigate a mental state defense at guilt. Further, presenting a mental state defense would have been consistent with the accident theory presented at guilt. Indeed, evidence of Petitioner's mental impairments would have bolstered the defense by making an accidental shooting more, not less, likely. The state court could not reasonably deny this claim for lack of deficient performance.

Moreover, evidence that at the time of the offense Millwee's history of physical and emotional trauma, substance abuse and addiction, and head trauma had a profound adverse effect on his ability to function appropriately and make rational decisions, would have raised a reasonable doubt that he had the mental state required for first degree murder and a finding of true on the special circumstance allegations. The evidence of specific intent to kill and to rob and commit burglary is weaker here than in cases where the Ninth Circuit has granted relief.

For example, in *Bloom v. Calderon*, 132 F.3d 1267, 1267-70 (9th Cir. 1997), the Ninth Court held that counsel's failure to present evidence of the petitioner's mental impairments as a defense to three charges of first degree murder was prejudicial even though there was significant evidence of premeditation, deliberation and intent to kill– much more evidence than is present here. The failure was prejudicial even though at trial one witness testified that a week before the murders, petitioner "asked him if he could buy a gun because he was going to kill someone"; another witness testified that two days before the murders, petitioner told one of the victims, "'You are running my life now but you won't be for long'"; a third witness testified that two days before the murders, she saw petitioner carrying the rifle that was later used to kill the victims; petitioner "appeared to reload the rifle before he reentered the house" after he had shot one victim and before he shot another; and petitioner shot the victims in the head. *Bloom*, 132 F.3d at 1269-70. The court found that there was a reasonable probability that the verdicts would have been different had the jury received evidence of the effects

63

1    of petitioner's abuse and victimization by his father, his "intermittent altered mental

2    state" and mental disorganization during the crimes, and his brain damage.  *Id*. at 1275-

3    76, 1278.

4          In *Jennings*, the Ninth Circuit found prejudice where defense counsel failed to

5    present evidence that on the night of the crimes−first degree murder, forcible rape, first

6    degree burglary, and robbery petitioner had consumed methamphetamine and alcohol,

7    and at the time of the crimes was psychotic.  290 F.3d at 1009, 1015, 1017.  At the

8    federal habeas evidentiary hearing, petitioner presented expert testimony that because

9    of his mental impairments, he could not form the intent to kill, rape, rob or burglarize,

10   or premeditate or deliberate.  *Id*. at 1017.  The State presented an expert who did not

11   examine petitioner, but who questioned the conclusions of petitioner's expert and

12   disputed the determination that petitioner suffered from schizoaffective disorder and

13   methamphetamine psychosis on the night of the crimes.  In granting relief, the Court

14   noted that "[w]hether or not [the State expert's] detailed testimony is persuasive,

15   neither his testimony nor [that of petitioner's experts] was ever presented to a jury that

16   could have weighed the evidence and made its own determination as to [petitioner's]

17   mental state."  *Id*. at 1018.  Relief was required even though at trial evidence was

18   presented that the victim was found with "ligature marks suggesting she was bound

19   with rope by her neck and ankles," and that petitioner had raped and robbed the victim.

20   Millwee is similarly entitled to relief, or at least to an evidentiary hearing on his claim.

21   *earp*, 431 F. 3d at 1169.

22         **4.    Counsel Was Ineffective in Failing to Investigate Millwee's**

23              **Competence to Stand Trial**

24         Subclaim (k) alleges that trial counsel were ineffective because they failed to

25   investigate and present evidence that Millwee was incompetent to stand trial.  Amended

26   Federal Petition at 63-64; Exhaution Petition at 113.  The same subclaim is raised in the

27   penalty-phase ineffectiveness claim.  For the reasons stated there, and in the stand alone

28   incompetence to stand trial claim, counsel was ineffective in failing to investigate

64

1   Millwee's incompetence and raise a doubt of his competence to the court during the

2   guilt trial.  Had counsel done so, there is a reasonable probability that Millwee would

3   have been found incompetent to stand trial.  Accordingly, Millwee is entitled to a new

4   guilt trial.

5   **FIRST CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN FAILING TO**

6   **GRANT MILLWEE'S MOTION TO DISMISS PURSUANT TO PENAL CODE**

7   **SECTION 995 FOR INEFFECTIVE ASSISTANCE OF COUNSEL DURING**

8   **THE PRELIMINARY HEARING**

9   Millwee's 1st claim alleges that his constitutional rights were violated by the trial

10  court's failure to grant his motion to dismiss the information based upon ineffective

11  assistance of counsel during the preliminary hearing.  Amended Petition at 23-31.

12  Millwee presented this claim to the California Supreme Court as the 25th Claim in his

13  direct appeal.  Lodgment 1 (Appellant's Opening Brief at 352-54).  The state court

14  denied the claim on the merits in a reasoned opinion.  *Millwee*, 18 Cal. 4th at 120-23.

15  Millwee alleged that he received ineffective assistance at the preliminary hearing as

16  part of the First Claim in his exhaustion petition.  Lodgment 8 (Exhaustion Petition at

17  66-121; *see especially* page 66 (alleging that "Petitioner's trial counsel, Frank

18  Peasley . . . rendered ineffective assistance at the preliminary hearing")).  The First

19  Claim was supported by numerous declarations and other documents not presented on

20  appeal.  The state court denied the claim on the merits and as procedurally barred.

21  Lodgment 11.

22  On appeal, the state court applied the rule that "[w]here the case involves an

23  ineffective assistance claim of the sort at issue here, no prejudice typically appears

24  unless counsel's pretrial performance resulted in the loss of material evidence and

25  caused tangible harm to the defense at trial."  *Millwee*, 18 Cal. 4th at 121.  The court

26  concluded that "[n]o such showing has been made here."  The state court's rule is

27  contrary to *Strickland* in imposing a higher prejudice standard than *Strickland* allows.

28  *See Williams*, 529 U.S. at 391-95.  Accordingly, this Court reviews the claim *de novo*.

The state court also based its decision on the conclusion that "defendant's father served as the main witness for the defense in describing defendant's personal history and attempting to generate sympathy with jurors at the penalty phase." *Millwee*, 18 Cal. 4th at 122. This is an unreasonable determination of the facts, another basis for *de novo* review. It is true that defense counsel called Petitioner's father as their main witness at penalty to testify on Millwee's personal history, but the record refutes the conclusion that Petitioner's father "attempt[ed] to generate sympathy with jurors at the penalty phase," at least as far as sympathy for Petitioner goes, or that his testimony generated sympathy for Petitioner. The record shows that Petitioner's father argued with defense counsel, falsely and knowingly presented Petitioner in a bad light, and refused to even ask the jury to return a life verdict–the very purpose of "attempting to generate sympathy with jurors at the penalty phase." The prosecutor exploited this testimony to argue at closing that the jury should not spare Millwee because no one who knows him wants to spare him. Petitioner's father may have attempted to generate sympathy for himself, but he did not for his son.

The information Millwee has presented in habeas in support of his guilt- and penalty-phase ineffective assistance claims shows the prejudice from the deficient performance he received at the preliminary hearing. Reasonable counsel at the hearing would have tried to obtain more family history facts from Petitioner's father and sister-in-law, as well as their accounts of the crime, Millwee's behavior leading up to the crime, and whether Millwee was generally allowed in his parents' house. Counsel could have boxed these witnesses in under oath on these topics and then, after conducting a reasonable investigation, impeached them as necessary and appropriate at trial. This was a lost opportunity that prejudiced Millwee throughout the rest of his death penalty trial.

Even if the Court is unwilling to grant relief on the claim that the state court violated Millwee's constitutional rights by failing to grant the motion to dismiss, the state court's reasoned decision on that claim on appeal imposes no impediment to

granting relief on Millwee's claim of receiving ineffective assistance at the preliminary hearing, either alone, or in combination with Millwee's other ineffective assistance claims. *See* discussion of Claims 7, 19 and 34. The appellate decision was based on the trial record, whereas the later habeas denial was based on a much more expansive record that is the relevant record in assessing whether Millwee received prejudicially deficient performance at the preliminary hearing separate and apart from the trial court's refusal to dismiss the information.

## B.   REMAINING CLAIMS

**THIRD CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN FAILING TO GRANT MILLWEE'S MOTION TO RECUSE DISTRICT ATTORNEY DANIEL LOUGH**

Millwee's Third Claim alleges that his constitutional rights were violated because the trial court denied his motion to recuse prosecutor Daniel Lough. Amended Petition at 68-81. Millwee presented this claim to the California Supreme Court as the Second Claim in his direct appeal. Lodgment 1 (Appellant's Opening Brief at 32-48). The state court denied the claim on the merits in a reasoned opinion. *Millwee*, 18 Cal. 4th at 122-25.

Pre-trial, Millwee moved to recuse prosecutor Daniel Lough on the ground that he was biased against Millwee stemming from prosecuting him in two prior cases, one of which was reversed on appeal for refusing to allow Millwee to stipulate to a prior conviction. RT 245-47, 252-53. At a hearing on the motion, Millwee testified that he overhead Lough say to his lawyer at the preliminary hearing that he did not think there were facts sufficient to allege special circumstances but that he was "going to shoot for them anyhow." RT 276, 279. Lough testified that he probably told Millwee's lawyer that it would be a difficult case in which to prove a special circumstance but that he would try anyway. RT 257-58. He testified that he had a low opinion of Millwee but no personality animosity toward him and that "it is time for Mr. Millwee to pay the

piper." RT 260, 263-64. He said he thought his opinion on whether to seek death was persuasive among the group of prosecutors who made the capital charging decision. RT 260-62, 273. The court denied the motion.

The state supreme court affirmed on appeal. Its decision is based on an unreasonable determination of the facts. The court stated that "[n]o witness corroborated defendant's account at the recusal hearing" that the prosecutor said at the preliminary hearing to defense counsel Peasley, "I don't think there's facts for a special circumstances [sic] by the evidence presented in that case as he knows them, but he's going to shoot for them anyhow." *Millwee*, 18 Cal. 4th at 124. But the record shows that the prosecutor essentially corroborated this account, albeit in less colorful language. At the recusal hearing, he gave the following testimony:

> Q.    Do you recall making a statement to Mr. Peasleythat this was going to be a difficult case for you to handle in terms of proving the special circumstance?
>
> A.    I probably did.
>
> Q.    And, concomitant to that statement, that you were going to go ahead and try to establish the special circumstance allegation anyway?
>
> A.    I may well have said that.

Pretrial RT 257.

The court also said that "defendant presented no evidence that District Attorney Lough had formed strong negative feelings towards defendant for any reason." *Millwee*, 18 Cal. 4th at 125. Again, the record shows otherwise. He testified, "I do have a low opinion of Mr. Millwee," RT 264, and that "it is time for Mr. Millwee to pay the piper." RT 260. The court's unreasonable determination of facts that are central to Petitioner's claim satisfied § 2254(d) and requires the Court to review Millwee's claim *de novo*.

On *de novo* review, the Court should grant relief.  The facts on the record established a reasonable possibility that the district attorney would not exercise his discretionary power in an evenhanded manner.  *People v. Conner*, 34 Cal. 3d 141, 148 (1983).  In violation of Millwee's due process rights, the prosecutor punished him for successfully exercising his right to appeal his prior convictions by seeking the death penalty for the death of Esta Millwee.  *United States v. Goodwin*, 457 U.S. 368, 384 (1982).

The exercise of prosecutorial discretion must not be "consciously or unconsciously" affected by the District Attorney's personal feelings.  This is especially so in the critical areas of "plea bargaining or sentencing recommendations."  *Conner*, 34 Cal. 3d at 149; *also Ganger v. Peyton*, 379 F.2d 709, 712-13 (4th Cir. 1967).  It is essential to basic rights of due process that "the criminal defendant is entitled to an impartial prosecutor, who can make an unbiased use of all the options available to the prosecutor's office."  *Jones v. Richards,* 776 F.2d 1244, 1247 (4th Cir. 1985).  In making this determination the court must consider the "aggregate effect" of all of the circumstances, and bear in mind that "[t]he district attorney's office is obligated not only to prosecute with vigor but also to seek justice."  *Conner*, 34 Cal. 3d at 148.  Millwee is entitled to relief.

**FOURTH CLAIM FOR RELIEF FOR VINDICTIVE PROSECUTION AND DENIAL OF PETITIONER'S RIGHT TO A DISINTERESTED PROSECUTOR**

Millwee's 4th claim alleges that his constitutional rights were violated because prosecutor Daniel Lough sought the death penalty against him to penalize him for his successful appeal of prior theft convictions Lough had obtained against him.  The claim further alleges that the prosecutor's personal stake in the outcome of Millwee's case deprived Millwee of his due process right to be tried by a disinterested prosecutor.  Amended Petition at 81-84.  Millwee presented this claim to the California Supreme Court as Claim Five of his exhaustion petition.  Exhaustion Petition at 149-54.  The state court denied the claim on the merits and as procedurally barred.  Lodgment 11.

69

This claim relies on the evidence from the trial record that forms the basis of the preceding claim challenging the denial of the recusal motion, *and* on additional evidence presented in habeas. A letter by a defense investigator written before trial shows that the prosecutor was a personal friend of Millwee's paternal aunt, Terri Millwee, and that the two spoke a great deal about Millwee's case. Exhaustion Petition Ex. 58. In a post-trial declaration, Petitioner's brother Michael recounts that after the shooting, "Dad told me that the prosecutor was a family friend who would do what we wanted. Dad and Ronnie both wanted Donnie to get the death penalty and they both told me that they were happy that the prosecutor would go along with them on this." Exhaustion Petition Ex. 199, ¶ 6.

In light of this record, and the evidence presented at the recusal hearing, the California Supreme Court could not reasonably deny this claim for failure to state a prima facie case. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). Given the conflict between the prosecutor's claim at the recusal hearing that he had no animus toward Millwee and the evidence of his interest and bias presented in habeas, and the credibility issues they raise, at a minimum Millwee is entitled to an evidentiary hearing on his claim. Since the state court failed to hold a hearing when confronted with a prima facie claim for relief, this Court should order a hearing. *Earp*, 431 F.3d at 1169.

**FIFTH CLAIM FOR RELIEF FOR PETITIONER'S INCOMPETENCE TO STAND TRIAL AND FOR THE TRIAL COURT'S FAILURE TO CONDUCT A COMPETENCY HEARING**

Claim 5 alleges that Millwee was incompetent to stand trial and that the trial court violated Millwee's due process rights by failing to hold a competency hearing when a reasonable judge in his position would have had a bona fide doubt of Millwee's

70

competence.  Amended Petition at 85-87.  Millwee presented this claim to the California Supreme Court as the Second Claim in his exhaustion petition.  Exhaustion Petition at 121-25.  He alleged the federal nature of his claim and cited two leading United States Supreme Court competency cases in support of his claim:  *Pate v. Robinson*, 383 U.S. 375 (1966), and *Drope v. Missouri*, 420 U.S. 162 (1975).  The state court denied the claim on the merits and on procedural grounds.  Lodgment 11.  As shown below, the court's denial of this claim is both contrary to and an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), and is based on an unreasonable determination of the facts.  *Id.* § 2254(d)(2).  Because § 2254(d) is satisfied, this Court reviews the claim de novo.  *Panetti*, 551 U.S. at 953.  Under *de novo* review, Millwee is entitled to relief.

### 1.   Legal Principles

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992).  Under clearly established federal law, a criminal defendant is incompetent to stand trial when he lacks "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam)); *see also Drope*, 420 U.S. at 171; *Pate*, 383 U.S. at 385.  Being tried while incompetent is a structural error that requires the grant of a new trial. *Pate*, 383 U.S. at 386.[20]

---

[20]  The Ninth Circuit has recognized these legal principles as clearly established federal law under § 2254(d)(1).  *Maxwell v. Roe*, 606 F.3d 561, 568-69 (9th Cir. 2010) (citing *Pate* and *Drope* specifically as clearly established federal law for claims of incompetence to stand trial).

1    Millwee asserts both procedural and substantive incompetency claims.  In
2    evaluating a procedural incompetency claim, the issue is not whether the defendant was
3    in fact incompetent at the time of trial, but whether the trial judge had evidence before
4    him that should reasonably have caused him to doubt the defendant's competence; if so,
5    the failure to hold a competency hearing violated due process.  *Pate*, 383 U.S. at 385-
6    86; *Williams v. Woodford*, 384 F.3d 567, 604 (9th Cir. 2004) ("In reviewing whether a
7    state trial judge should have *sua sponte* conducted a competency hearing, a federal
8    court may consider only the evidence that was before the trial judge."); *Boyde v.*
9    *Brown*, 404 F.3d 1159, 1165 n.6 (9th Cir. 2005) (explaining difference between
10   procedural and substantive incompetency claims).  If, in light of the record before him,
11   the trial judge should have held a competency hearing but did not, Petitioner is entitled
12   to a new trial.  *Pate*, 383 U.S. at 386 ("Having determined that Robinson's
13   constitutional rights were abridged by his failure to receive an adequate hearing on his
14   competence to stand trial, we direct that the writ of habeas corpus must issue and
15   Robinson be discharged, unless the State gives him a new trial within a reasonable
16   time.").  As shown below, the trial judge should have had a bona fide doubt of
17   Millwee's competence in light of the evidence before him and § 2254(d) does not bar
18   relief.

19       A substantive incompetency claim alleges that the defendant was, in fact,
20   incompetent at trial and therefore his due process rights were violated regardless of
21   whether a competency hearing was held; this claim may be based on post-trial
22   evidence.  *Drope*, 420 U.S. at 172; *Boyde*, 404 F.3d at 1165 & n.6 ("'Even if the
23   evidence before the trial judge was insufficient to raise a good faith doubt with respect
24   to defendant's competency, he would still be entitled to relief if it now appears that he
25   was in fact incompetent.'").  "On federal habeas, a petitioner is 'entitled to an
26   evidentiary hearing on the issue of competency to stand trial if he presents sufficient
27   facts to create a real and substantial doubt as to his competency.'"  *Boyde*, 404 F.3d at
28   1166.  As also shown below, Millwee was in fact incompetent at the time of trial, as

1   demonstrated by the evidence in the trial record and by post-trial declarations and other

2   documents submitted in habeas, and § 2254(d) does not bar relief.  At a minimum, he

3   presented sufficient evidence for the state court to issue an order to show cause and

4   grant an evidentiary hearing on the claim.

5   **2.     A Reasonable Judge in the Trial Court's Position Would Have**

6   **Had a Bona Fide Doubt of Millwee's Competence, and Therefore**

7   **the Trial Court Violated Petitioner's Constitutional Rights By**

8   **Failing to Hold a Competency Hearing**

9   A "trial judge must conduct a competency hearing whenever the evidence before

10  him raises a bona fide doubt about the defendant's competence to stand trial, even if

11  defense counsel does not ask for one."  *Odle v. Woodford*, 238 F.3d 1084, 1087 (9th

12  Cir. 2001).  Federal habeas courts "review the record to determine whether evidence

13  before the state trial court raised a 'bona fide doubt' that [Petitioner] was competent to

14  stand trial."  *Id.*  "If a reasonable judge would have had such a doubt, [Petitioner] was

15  entitled to a competency hearing at the time of trial and the failure to hold such a

16  hearing violated his right to due process."  *Id.*; *de Kaplany v. Enomoto*, 540 F.2d 975,

17  983 (9th Cir. 1976) ("The question to be asked by the reviewing court is whether a

18  reasonable judge, situated as was the trial court judge whose failure to conduct an

19  evidentiary hearing is being reviewed, should have experienced doubt with respect to

20  competency to stand trial.").

21  "[A] defendant lacks the requisite rational understanding if his mental condition

22  precludes him from perceiving accurately, interpreting, and/or responding appropriately

23  to the world around him."  *Lafferty v. Cook*, 949 F.2d 1546, 1551 (9th Cir. 1991).

24  "Although no particular facts signal a defendant's incompetence, suggestive evidence

25  includes the defendant's demeanor before the trial judge, irrational behavior of the

26  defendant, and available medical evaluations of the defendant's competence to stand

27  trial."  *Williams*, 384 F.3d at 604.  One of these factors standing alone may be sufficient

28  to establish incompetence.  *Drope*, 420 U.S. at 180.

"Even when a defendant is competent at the commencement of trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope*, 420 U.S. at 181; *McGregor v. Gibson*, 248 F.3d 946, 952 (10th Cir. 2001); *Lafferty*, 949 F.2d at 1555 n.10 ("the state court's duty to inquire as to competency continues through trial").

A reasonable judge in the judge's position at Millwee's trial would have had a bona fide doubt of Millwee's competence based on the information before him.  It is true, as Respondent stated in his informal response to Millwee's exhaustion petition, that Millwee testified at the guilt trial and interacted with the judge throughout guilt and penalty.  Informal Response at 53.  But the trial record as a whole raises doubts about Millwee's competence rather than dispels them.  The trial record shows that as trial progressed, Millwee engaged in an escalating pattern of self-defeating, irrational and confused behavior that would have raised a doubt of his competency to a reasonable judge.

The trial transcript shows that Millwee's mental state was sufficiently unsettled that jail officials prescribed Xanax, Elavil, and Sinequan for him to take during trial.  The prescriptions are noted on the record during the guilt trial.  RT 3004.[21]

During the first penalty trial, Millwee asked to waive his presence.  The judge told him:  "It seems to me this is an important part of the case, because we are discussing evidence to be introduced at the penalties phase [sic] in mitigation.  And that's probably as important a phase of the trial as we have.  And Mr. Millwee has the right to be here, and I would strongly encourage him being here."  RT 4091.  Millwee replied:  "I would just as soon get a waiver and let him [defense counsel] go about the technical stuff.  I can't understand it anyway."  *Id.*  The court granted Millwee's request even though it was "a little concerned."  RT 4092.

---

[21]  These are anti-anxiety and anti-depressant medications.  Ex. 79 at 2203, 2294, 2296, 3163-64.

1    The next day, Millwee refused to join in a stipulation recommended by his

2  lawyers, the prosecutor, and the judge regarding aggravating evidence sought to be

3  introduced by the prosecutor.  RT 4168-70.  The proposed stipulation was that Millwee

4  had pled guilty to petty theft with a prior theft conviction, a felony.  RT 4168.  The

5  stipulation would obviate the introduction of an abstract of judgment showing other

6  convictions for Millwee being reversed on appeal.  RT 4168-71.  Millwee said he

7  wanted the document introduced unedited.  RT 4170.  Defense counsel Driggs

8  explained:  "It is over my advice to have the jury know there was any overturning of

9  any other convictions or charges by way of appeal, or that it was credit for time served,

10  or whatever the sentence was."  RT 4171.  The judge responded:

11              That scares you to death on your argument, because that is the

12              concern defense counsel always expressed to me in capital

13              cases, and the Court of Appeals has been concerned, the

14              jurors start worrying about having the sentence commuted,

15              him getting out, having it reversed on appeal, they take their

16              job less seriously.   Number two, they might try to do

17              something with the defendant so that could not happen.

18              Your concern is they hear about the reversal and the

19              case is heard by somebody else.   They may take their

20              responsibility seriously.  Secondly, they may feel a threat the

21              defendant may get out.

22  *Id.*

23    Defense counsel responded that he "can only assume a negative reaction."  *Id.*

24  The judge said:  "If they learn the two cases were reversed on appeal, have some

25  questions about that, death of another human being, they wouldn't have a very high

26  opinion of the criminal justice system, or anything else connected with it.  It might hurt

27  your client.  Is that your concern?"  *Id.*  Defense counsel replied, "In essence, yes."  *Id.*

28  The court described defense counsel's reasons for the stipulation as "compelling" and

75

1   "logical" and said "that at some point in time you have the responsibility of maintaining

2   the integrity of the process, even if *your client is self-destructive* in the penalty phase, I

3   think you can make the decision about the stipulation." RT 4173. Millwee repeated his

4   objection to the stipulation. RT 4176.

5        Before the defense penalty presentation began, Millwee objected to his lawyers

6   presenting the testimony of his ex-wife and his 18-year old daughter. RT 4304.

7   Defense counsel told the court he believed "that the testimony of these witnesses would

8   be advantageous to the defense" and that he had an ethical responsibility to present it.

9   *Id.* Counsel claimed that he had received no meaningful cooperation from Millwee's

10  relatives aside from Debbie Millwee, Petitioner's sister-in-law. RT 4306. Upon

11  questioning from the judge, counsel affirmed the importance of the proposed testimony.

12  RT 4307. The judge said that the overriding policy concern was the reliability of the

13  sentencing proceeding and the decision of which witnesses to present was counsel's to

14  make under state law. RT 4308-11. Millwee maintained his objection to the testimony;

15  he also said that he had been fighting for life without parole and did not seek death. RT

16  4308.

17       After the first penalty trial ended in mistrial, Millwee, purportedly fighting for

18  his life, opposed his lawyers' request for a continuance and refused to waive time. RT

19  4457-58. He insisted on a peremptory challenge being filed against the new judge

20  under Cal. Code of Civil Procedure § 170.6. RT 4481. He sua sponte requested a

21  change of venue. Retrial RT 5. Defense counsel explained that "our client wants to

22  push forward" but a survey for a change of venue takes time. Retrial RT 5-6.

23       Against the advice of counsel, Millwee sought, and was granted, permission to

24  waive his presence at voir dire for the penalty retrial. Retrial RT 17-22; 174. During

25  the prosecution's case-in-chief, Millwee again asked to waive his presence. Retrial RT

26  2060. Defense counsel and the prosecutor said they wanted Millwee present, but the

27  judge granted the request. Retrial RT 2063-66. At the next court session, Millwee

28  again waived his presence over the advice of counsel. Retrial RT 2128-34. He

76

stipulated that prosecution witnesses called to testify to prior bad acts would identify him, but added: "I am not on trial here for those accusations in any way, shape or form." Retrial RT 2131.

Although he had testified to his accident defense at the guilt trial, he waived his right to testify at the penalty retrial, and therefore the jurors who would decide whether he lived or died did not hear his account of the offense. Retrial RT 2265-68.

Millwee waived his presence during the defense penalty case, again over the wishes of defense counsel and the prosecutor. Retrial RT 2270-72. Against the advice of counsel, he asked to waive his presence at closing argument. RT 2464. This time his request was denied. RT 2465.

Millwee's increasingly erratic, self-defeating behavior would have raised a bona fide doubt of his competence in a reasonable judge. In state court, Respondent argued that Millwee's guilt-phase testimony did not raise red flags of incompetence. Informal Response at 53. Even if that is so, Millwee's behavior deteriorated as the trial continued and a reasonable court exercising its ongoing duty to assess defendant's competence would have ordered a hearing. At the first penalty trial, Millwee tried to prevent his lawyers from presenting mitigation evidence and tried to scotch a stipulation that would have avoided the introduction of harmful aggravating evidence, all the while proclaiming to seek a life verdict. After the mistrial, he then refused to waive time for a penalty retrial, time his lawyers may have been able to use to obtain more evidence in support of his purported goal. Over the advice of his lawyers, the prosecutor, and the judge, he stopped showing up to the penalty retrial. Watching this unfold, the judge at the first trial aptly labeled Millwee "self-destructive in the penalty phase." The trial judge should have ordered a competency hearing and the state supreme court decision denying Millwee's competence claim runs afoul of § (d)(1) and (d)(2). *See Maxwell v. Roe*, 606 F.3d 561, 576 (9th Cir. 2010); *McMurtrey v. Ryan*, 539 F.3d 1112, 1119-25 (9th Cir. 2008) (affirming grant of habeas relief for failure to hold competency hearing where trial court had before it evidence of defendant's fragile

1   mental state, anxiety and suicidal ideation); *Torres v. Prunty*, 223 F.3d 1103, 1109 (9th

2   Cir. 2000) (granting procedural competency claim under AEDPA where "defendant's

3   unusual and self-defeating behavior in the courtroom suggested that an inquiry into

4   competence was required").

5          Although the California Supreme Court denied the competence claim summarily,

6   without a reasoned opinion, it is nevertheless reasonable to conclude that it applied a

7   standard contrary to federal law in denying the claim, another basis for *de novo* review.

8   When addressing whether a silent state-court denial meets the standards of § 2254(d),

9   this Court must consider whether "any reasonable argument" could have supported the

10  denial.  *Richter*, 131 S. Ct. at 788.  A "reasonable argument" is one that accords with

11  the state court's precedent.  *See Johnson v. Williams*, 133 S. Ct. 1088 (2013) (reviewing

12  a silent denial by the state court of a claim premised on federal law, the Supreme Court

13  held that it was "unlikely"—and thus not "reasonable," per *Richter*—that the state court

14  deviated from state supreme court precedent in adjudicating petitioner's claim); *cf.*

15  *Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534 (1991) ("Courts are as a general

16  matter in the business of applying settled principles and precedents of law to the

17  disputes that come to bar.")

18         Here, California precedent indicates that the state supreme court applied its

19  usual, and contrary to federal law, competency standard to Millwee's claim.  The

20  California Supreme Court often states the competency test as whether, "*as a result of*

21  *mental disorder or developmental disability*, the defendant is unable to understand the

22  nature of the criminal proceedings or to assist counsel in the conduct of a defense in a

23  rational manner."  *See*, *e.g.*, *People v. Ramirez*, 39 Cal. 4th 398, 430 (2006) (quoting

24  Cal. Penal Code § 1367(a)) (opinion issued less than three months before California

25  Supreme Court summarily denied Millwee's competence claim); *see also People v.*

26  *Taylor*, 47 Cal. 4th 850, 861 (2010) (applying same standard).  Indeed, this is the

27  competency standard the California Supreme Court applied in its direct appeal opinion

28  in Millwee's case in denying the claim that Juror Jordan was incompetent during the

1   guilt trial. *Infra* at 100. The state rule is more restrictive than and contrary to the

2   federal rule, which does not require that the defendant's incompetence be the result of a

3   mental disorder or developmental disability. *See Benn v. Lambert*, 283 F.3d 1040,

4   1051 n.5 (9th Cir. 2002) ("The addition, deletion, or alteration of a factor in a test

5   established by the Supreme Court . . . constitutes a failure to apply controlling Supreme

6   Court law under the 'contrary to' clause of AEDPA.") (citing *Williams*, 529 U.S. at

7   405-06, and *Brown v. Mayle*, 283 F.3d 1019, 1039 (9th Cir. 2002)).

8       Absent any intervening opinions clarifying or correcting its standard, the only

9   reasonable conclusion is that the court followed its precedent as set forth in its prior

10   opinions. Indeed, pursuant to its own rules, the California Supreme Court must correct

11   previous misapplications of the law or modifications of an existing rule by issuing an

12   opinion saying so. *Schmier v. Supreme Court of California*, 78 Cal. App. 4th 703, 710-

13   11 (2000) ("The [California court] rules protect against selective prospectivity by

14   providing a uniform and reasonable procedure to assure that actual changes to existing

15   precedential decisions are applicable to all litigants. They require that *all* opinions of

16   the state's highest court be published.") It did not do so here. Thus, by its own rules,

17   the California Supreme Court must have silently applied the same contrary competency

18   standard in denying Millwee's claim.

19       Contrary to Respondent's suggestion in his Informal Response in state court, it

20   was not reasonable to deny the claim on the ground that defense counsel did not raise a

21   doubt of Millwee's competence. *See* Informal Response at 53-54. In *Maxwell*, the

22   Ninth Circuit explained that the state appellate court "inappropriately attributes great

23   weight to the fact that Maxwell's counsel did not request a competency hearing." 606

24   F.3d at 574. The court explained attorneys are not trained mental health professionals

25   and defense counsel's failure to raise a doubt does not establish that the defendant was

26   competent. *Id.* (citing *Odle*, 238 F.3d at 1089).

27

28

### 3.     The State Court Unreasonably Denied Millwee's Substantive Incompetence Claim

Millwee presented substantial, and uncontradicted, evidence in state habeas showing that he was in fact incompetent to stand trial.  He submitted evidence explaining the possible side-effects of the medications he was given during trial (drowsiness, confusion, disorientation) and the illnesses they were meant to treat (depression, anxiety).  Exhaustion Petition at 107-08, 123; Ex. 146 (Ex. 79 in federal habeas).

He presented a declaration from trial investigator Joe Vasquez describing Millwee's behavior during trial—picking calluses and dead skin off his feet at counsel's table, seeming "spaced out and oblivious to what was going on." Exhaustion Petition at 108-09; Ex. 211, ¶¶ 3-5.  Investigator Vasquez states that he did not "think Donnie understood was go[i]ing on at the trial; that his life was at stake and that he was facing a possible death sentence." Exhaustion Petition at 108.  He said Millwee "was paranoid and untrusting of everyone. . . .  Donnie was one of the most obviously mentally ill clients who I have spoken to." *Id.* at 109.

Millwee presented declaration by an alternate juror describing "his unusual and unsettling behavior"—muttering to himself, muttering to people who were not there, appearing uninterested "and simply not all there." Exhaustion Petition at 109-10; Ex. 204, para. 2).  Another juror similarly described the muttering in his declaration. Exhaustion Petition at 110; Ex. 186, ¶ 2.

Millwee also presented declarations by mental health experts attesting to serious mental impairments and disorders that existed before and during the trial.  Amended Petition at 123.  Lee Norton noted that "consistent descriptions of Donnie's extremely disorganized behavior around the time of the offense and the trial strongly suggest the possibility of psychotic decompensation, which could account for Donnie's seeming lack of contact with reality." Amended Petition at 111; Ex. 215, ¶¶ 136-37.  She also noted "[t]he serious and repeated trauma . . . Millwee suffered in his childhood and as

80

1   an adult, the long term use of drugs and alcohol that stemmed from this trauma, and his

2   serious mental impairments had a profound effect upon his ability to function

3   appropriately and make rational decisions." *Id.*

4          Dale Watson, Ph.D., described the "serious long-standing mental disorders and

5   meaningful impairment of mental functions associated with the right hemisphere of

6   [the] brain" that his testing picked up before Millwee suffered his stroke in 2000.

7   Exhaustion Petition at 112; Ex. 214, ¶ 49.

8          In another declaration filed an the exhaustion action, Pablo Stewart, M.D.,

9   concludes that "[g]iven the severity of Mr. Millwee's mental disorders, it is likely that

10  his mental impairments would have adversely affected his ability to communicate with

11  his attorneys with a reasonable degree of rational understanding, to fully understand his

12  legal positions and the options open to him, and to make rational choices among those

13  options." Ex. 222 (Fed. Ex. 143), ¶ 63.

14         In light of Millwee's allegations and evidence, the state court's summary denial

15  of his claim without issuing an order to show cause was contrary to and an

16  unreasonable application of federal law, and also based on an unreasonable

17  determination of the facts. *See, e.g.*, *Lafferty*, 949 F.2d at 1555 (granting competency

18  claim where petitioner was "unable to make decisions on the basis of a realistic

19  evaluation of his own best interests"); *United States v. Hemsi*, 901 F.2d 293, 296 (2d

20  Cir. 1990) (defendant incompetent where "his impaired sense of reality prevented him

21  from focusing on his legal needs and from acting effectively on his intellectual

22  understanding"); *Deere v. Woodford*, 339 F.3d 1084, 1086 (9th Cir. 2003) (remanding

23  capital habeas case for evidentiary hearing on competence to stand trial claim where

24  petitioner presented expert testimony in habeas that his multiple impairments and

25  pressure from his conditions of confinement rendered him incompetent to rationally

26  comprehend his trial proceedings or to aid and assist counsel).

27

28

1  **SIXTH CLAIM FOR RELIEF FOR DENIAL OF ASSISTANCE OF A**
2  **COMPETENT MENTAL HEALTH PROFESSIONAL**

3        The Sixth Claim alleges that Millwee's constitutional rights were violated
4  because he was denied his right to the assistance of a competent mental health expert
5  under *Ake v. Oklahoma*, 470 U.S. 68 (1985).  Amended Petition at 87-90.  Millwee
6  presented this claim to the California Supreme Court as Claim Three of his exhaustion
7  petition.  Exhaustion Petition at 125-30.  The state court denied the claim on the merits
8  and as procedurally barred.  Lodgment 11.

9        Under *Ake*, "when an indigent defendant places his mental state at issue, 'the
10  State must, at a minimum, assure the defendant access to a competent psychiatrist who
11  will conduct an appropriate examination and assist in evaluation, preparation, and
12  presentation of the defense.'"  *Smith v. McCormick*, 914 F.2d 1153, 1157 (9th Cir.
13  1990) (quoting *Ake*, 470 U.S. at 83).  This right applies at the guilt and penalty phases
14  of a capital trial.  *Id*.; *Ake*, 470 U.S. at 83-84.

15        The trial court never appointed a mental health expert to assist in the evaluation,
16  preparation and presentation of Millwee's defense.  Counsel did have a representative
17  of the local chapter of the National Council on Alcoholism meet with Millwee.  An
18  exhibit filed with the exhaustion petition indicates that the representative spoke with
19  him about his drinking and concluded that he was in denial about his alcoholism.
20  Initial State Petition Exhibit 36.  The purpose of this interview appears to be treatment
21  rather than an effort to obtain evidence for trial.

22        Because Millwee's rights under *Ake* were violated, he is entitled to a new trial.
23  *Smith*, 914 F. 2d at 1170.  In *Smith*, the Ninth Circuit appeared to treat *Ake* claims as a
24  structural error not subject to harmless error analysis.  *Id*.  Other federal appellate
25  courts have applied the *Brecht* harmless error test to *Ake* claims.  *See, e.g., Powell v.*
26  *Collins*, 332 F.3d 376, 396 (6th Cir. 2003); *Rogers v. Gibson*, 173 F.3d 1278, 1286
27  (10th Cir. 1999).  Even assuming that *Brecht* applies, Millwee has shown the prejudice
28  from the *Ake* violation through the declarations of habeas experts Norton, Watson and

Stewart.  Exhaustion Petition Exhibits at 214 (Watson), 215 (Norton), 221 (Norton's revised declaration), and 222 (Stewart).  These declarations show that the *Ake* violation "had substantial and injurious effect or influence" at guilt and penalty, and they also show the prejudice on Millwee's competence to stand trial claims.  *Brecht*, 507 U.S. at 637; *see also supra* at 83 (describing declarations in competency and ineffective assistance claims).

Respondent may argue that defense counsel's failure to request a mental health expert means the court was not obligated to appoint one.  But as noted in the discussion of the incompetence claim, the court witnessed Millwee's increasingly erratic, self-defeating behavior first-hand, and should have recognized that a defense expert was necessary.  *Compare Rogers*, 173 F.3d at 1284-85 (no *Ake* violation where defense counsel told trial judge he would not raise and insanity defense; "the trial court had nothing before it that suggested that Petitioner's sanity at the time of the offense would be significant factor at trial").  Further, to the extent that the failure to appoint an expert was due to trial counsel's acts or omissions, counsel provided prejudicially deficient performance, as shown in the Watson, Norton and Stewart declarations.

**SEVENTH CLAIM FOR RELIEF TRIAL COURT ERROR IN ALLOWING INTO EVIDENCE A STATEMENT BY MILLWEE CONTAINING A RACIAL SLUR**

Millwee's seventh claim alleges that his right to due process was violated by the admission at the guilt trial of a racial slur he made to his father on the morning of the shooting.  Amended Petition at 90-95.  Millwee presented this claim to the California Supreme Court as Claim III in his direct appeal.  Lodgment 1 (Appellant's Opening Brief at 48-53.  The state court denied the claim in a reasoned opinion on the ground that it was not cognizable under the facts of the case.  *Millwee*, 18 Cal. 4th at 126.

Don Millwee, Sr. testified at the preliminary hearing that when he and Petitioner argued that morning outside the Hi-Ho Tavern, Petitioner said to him, "I'm tired of

being your nigger." Amended Petition at 91. Before trial, Millwee moved to prevent the prosecution from introducing evidence of the racial slur. RT 676. The prosecutor argued that the statement should be admitted because it showed Millwee's hostility toward his parents. He objected to any attempt to sanitize the statement. RT 677-78. The trial court denied the defense request, ruling that the statement was relevant to motive and intent and was more probative than prejudicial. The judge said that the choice of words used "cannot be changed." RT 679-80. When Millwee testified at guilt, he recounted on direct examination that after his father told him, "I can't take you to work looking like that with no shoes and smelling like booze," he replied, "I'm sick of being your nigger." RT 3011. The state supreme court ruled that "no cognizable [due process] claim is raised." *Id*. at 126. The court said that "a claim of error does not arise where no evidence was introduced as a result of a ruling allowing its admission. . . . [T]he court's exercise of discretion had no effect on defendant's trial. Any unfavorable inferences drawn from defendant's use of a racial slur are attributable solely to his own testimony, and cannot be challenged here." *Id*. The state court decision is contrary to and an unreasonable application of federal law, and is also based on an unreasonable determination of the facts. Millwee is entitled to relief on *de novo* review.

The improper admission of evidence violates due process when it results in a fundamentally unfair trial. *Estelle v. McGuire*, 502 U.S. 62, 70 (1991). It is settled law that "[a]ppeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's . . . right to a fair trial." *United States v. Cabrera*, 222 F.3d 590, 594 (9th Cir. 2000); *McCleskey v. Kemp*, 481 U.S. 279, 309 n.30 (1987) ("[t]he Constitution prohibits racially biased prosecutorial arguments"). If the admission of irrelevant evidence about a defendant's race is prejudicial because of the danger that it will play to jurors' possible bias against that particular group, *cf. Cabrera*, 222 F.3d at 595-97, then the admission of an irrelevant racist statement by the defendant is prejudicial

because of jurors' likely hostile reaction to such a loathsome and socially unacceptable comment.

This claim is reviewed *de novo* because the state court ruled it was not even cognizable. Assuming, however, that the state court adjudicated the merits of the federal claim and § 2254(d) applies, it is satisfied because the state court decision fails to take into account the harm to defendants at a death penalty trial when racist statements are attributed to them. It is also unreasonable because it fails to take into account that under the trial court's ruling, the prosecutor could have elicited Millwee's statement on cross-examination if Millwee did not recount it on direct. Given the prosecutor's fight to defeat the defense motion, it is unreasonable to conclude he would not have elicited the slur from Millwee on cross if Millwee had not already testified to it. The denial of the defense motion to exclude the statement was the dispositive act that let the statement in; it was the but-for cause of the jury hearing Millwee's racial slur.

In *Dawson v. Delaware*, 503 U.S. 159, 160, 162 (1992), the Supreme Court held that the admission of evidence at a capital penalty trial that the defendant was a member of the Aryan Brotherhood gang violated his First and Fourteenth Amendment rights. In *Dawson*, as here, the evidence was "totally without relevance" to the proceeding. *Id*. at 165. In *Dawson*, as here, "one is left with the feeling that the . . . evidence was employed simply because the jury would find these beliefs morally reprehensible." *Id*. at 167. Given the reprehensible nature of Millwee's slur, he has shown prejudice under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

**EIGHTH CLAIM FOR RELIEF FOR THE TRIAL COURT'S ERRONEOUS ADMISSION OF INFLAMMATORY AND IRRELEVANT EVIDENCE TO IMPEACH MILLWEE FOLLOWING HIS TESTIMONY**

Millwee's 8th claim alleges that his constitutional rights, including his rights to due process, to present a defense, and to cross-examine and confront witnesses, were violated by the trial court's erroneous rulings admitting (1) evidence of past thefts

Millwee allegedly committed against his family; (2) hearsay statements that his mother was afraid of him; and (3) evidence of crimes Millwee allegedly committed in San Diego two days after the shooting.  Amended Petition at 95-112.  Millwee presented this claim to the California Supreme Court as the 5th Claim in his direct appeal. Lodgment 1 (Appellant's Opening Brief at 54-75).  The state court denied the claim on the merits in a reasoned opinion, although it also ruled that Millwee's confrontation clause challenge to Jeannie Callan's testimony that the victim was afraid of Petitioner was also waived for failure to raise it in trial court.  *Millwee*, 18 Cal. 4th at 126-32.

The state supreme court held that the trial court did not abuse its discretion in admitting the evidence in rebuttal after Millwee "admitted the shooting but denied it was intentional or committed during a robbery or burglary" in his testimony.  *Id*. at 127-28.  The court did not address the federal constitutional bases of Millwee's claims, except for his confrontation clause claim involving Callan's testimony.  Accordingly, the Court reviews the claim *de novo*, except for Callan-confrontation clause claim.

Even if § 2254(d) applies, the state court's rejection of Millwee's claim was unreasonable under § 2254(d)(1).  By the time the California Supreme Court decided Millwee's claims, the United States Supreme Court had clearly established that presentation of evidence that is irrelevant, and designed to inflame and appeal to the passions, prejudices, or emotions of the jury may result in a fundamentally unfair trial that violates due process.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also McKinney v. Rees*, 993 F.2d 1378, 1385 (9th Cir. 1993) (admission of other crimes evidence to prove criminal propensity violates due process); *accord Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991); *Panzavecchia v. Wainwright*, 658 F.2d 337, 341 (5th Cir. 1981).

Thus, although a trial court's "failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief," *Jammal*, 926 F.2d at 919, such a failure may amount to a due process violation when the evidence is not probative to any issue in the case.  *See Estelle*, 502 U.S. at 62, 72.  Further, the trial

86

court's failure to comply with the procedures set forth by state law may amount to a violation of due process by arbitrarily depriving the defendant of a state-created liberty interest. *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

Here, the challenged evidence was classic propensity and character evidence that was admitted in violation of state evidentiary standards and which also rose to the level of a due process violation. Based on the record, fair-minded jurists would agree that Millwee's constitutional rights were violated by the introduction of this evidence. Because the state-court decision denying this claim cannot be harmonized with the relevant Supreme Court precedent, it is therefore unreasonable under § 2254(d)(1).

Further, in denying relief, the court said that the record "does not support defendant's claim of undue prejudice. Although three different witnesses described Esta's fear and mistrust, their testimony was relatively brief and mild." 18 Cal. 4th at 128. The court unreasonably ignored the prejudice from the prosecutor's closing argument, which exploited the challenged evidence to brand Millwee a liar. In doing so, the court unreasonably applied federal law and unreasonably determined the facts.

The prosecuted emphasized in his closing the rebuttal testimony that Esta was afraid of Millwee and that he did not have consent to enter her house. RT 3768. He argued that to side with the defense, "you have to believe the defendant. If you don't believe the defendant, I would suggest there is little other conclusion as to what ought to happen in this case." RT 3801-02. He said that Millwee testified to an "incredible story" and lied about his relationship with his family. RT 3802, 3819. These arguments carried the day because the prosecutor was able to get into evidence propensity and character evidence that had no place in a capital trial. This evidence prejudiced Millwee at guilt and penalty. He is entitled to relief.

**NINTH AND ELEVENTH CLAIMS FOR RELIEF FOR INSUFFICIENT EVIDENCE TO SUPPORT THE SPECIAL CIRCUMSTANCES AND PREMEDITATED MURDER**

The Ninth Claim alleges that there was insufficient evidence to support the special circumstances of burglary and robbery. Amended Petition at 112-24. Millwee presented this claim to the California Supreme Court as Claim V in his direct appeal. Lodgment 1 (Appellant's Opening Brief at 76-91). The Eleventh Claim alleges that there was insufficient evidence of killing with premeditation. Amended Petition at 126-35. Millwee presented this claim to the California Supreme Court as Claim VI in his direct appeal. Lodgment 1 (Appellant's Opening Brief at 92-108). The state court analyzed these claims together and denied them on the merits in a reasoned opinion. *Millwee*, 18 Cal. 4th at 131-36.

*Jackson v. Virginia*, 443 U.S. 307 (1979), is clearly established federal law for insufficiency claims. *Goldyn v. Hayes*, 444 F.3d 1062, 1068 (9th Cir. 2006). On an insufficiency claim, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (quoting *Jackson*, 443 U.S. at 319). "Put another way, the dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982-83 (9th Cir. 2004). "The quintessence of a *Jackson* claim−the very meaning of *In re Winship*,[22]−'is that every element of a crime must be proven beyond a reasonable doubt." *Goldyn*, 444 F.3d at 1070. In Millwee's case, the state court unreasonably applied *Jackson* and unreasonably determined the facts in denying relief.

---

[22] 397 U.S. 358, 364 (1970).

1    In support of its decision, the state court said that "[i]t was undisputed that

2 shortly before the crime, defendant became frustrated and angry when his father

3 refused to take him to work and to replace the cane and shoes that had been destroyed

4 in the campfire the night before." *Millwee*, 18 Cal. 4th at 132.  The record is to the

5 contrary.  Petitioner's father testified that Millwee did not threaten him or his wife

6 during the argument.  RT 2749-50.  He said he didn't think much of the argument.  If

7 he had felt differently he would have gone home rather than to work, but he did not

8 think Millwee would harm anyone.  RT 2751-52, 2776.  Loretta Dumas, who worked at

9 the Hi-Ho Tavern, testified that when Millwee entered the bar after the argument, he

10 seemed somewhat upset but he was not angry or cursing.  RT 2972.  Brian Bradshaw,

11 the owner of the bar, said that Millwee did not look mad when he entered the bar after

12 the argument.  Nor did he curse.  RT 2988.

13    The court speculated that the jury could infer that Millwee "was able to enter the

14 house uninvited and, perhaps, undetected, because the sliding glass door was unlocked"

15 and "Esta had not been warned by her daughter-in-law that defendant was nearby."

16 *Millwee*, 18 Cal. 4th at 133.  The inference here goes the other way and exposes the

17 canard that Debra Millwee in fact had a practice of calling Esta to make sure the back

18 door was locked if she saw Millwee in the area.  *See Juan H. v. Allen*, 408 F.3d 1262,

19 1279 (9th Cir. 2005) ("[s]peculation and conjecture cannot take the place of reasonable

20 inferences and evidence").

21    The court said that the "intent to steal sufficient to support the burglary charge

22 could readily be inferred by evidence that defendant had an immediate need for money

23 and a cane" and "that there was no other reason for defendant to visit his mother after

24 arguing with his father."  *Id*. at 134.  The uncontradicted evidence at trial was that

25 Millwee was homeless at and before the time of the shooting and was living on the

26 streets.  RT 2690.  The court's statement proves too much:  By definition, homeless

27 people always have "an immediate need for money."

28

89

The court acknowledged Millwee's argument that "valuable property remain[ed] in the house" but unreasonably discounted that fact in its analysis. Further, the court cited *People v. Green*, 27 Cal. 3d 1 (1980), but did not address Millwee's argument that any robbery or burglary was merely incidental to the killing under *Green* and therefore the special circumstances could not be found true. *See* Lodgment 1 (Appellant's Opening Brief at 87-90). The trial court said that *Green* would be a major issue in the case, RT 293-95, although it ultimately denied a defense motion to dismiss the special circumstances. RT 422-23. Here, as in *Pensinger v. Chappell*, 787 F.3d 1014 (9th Cir. 2015), and *Clark v. Brown*, 450 F.3d 898 (9th Cir. 2006), habeas relief is required because Petitioner did not have an "independent felonious purpose" to commit robbery or burglary. The killing was not to advance a robbery or burglary; the few items that were taken were an afterthought. The Eighth Amendment's narrowing requirement was not met in this case and prejudice is shown under *Brecht* because Millwee could not be found death-eligible under any remaining special circumstance allegations. *Pensinger*, 787 F.3d at 1030.

The court also found "sufficient evidence that the killing occurred as the result of 'preexisting reflection,' rather than accident and mistake as claimed by defendant at trial." *Millwee*, 18 Cal. 4th at 134. But the prosecutor emphasized his felony-murder theory in closing, and that under it, it did not matter if the killing was accidental. RT 3762-64.

**TENTH CLAIM FOR RELIEF FOR ACTUAL INNOCENCE OF THE UNDERLYING OFFENSES**

Millwee's Tenth Claim alleges that he is actually innocent of the underlying crimes for which he was convicted and sentenced to death. Amended Petition at 124-25. Millwee presented this claim to the California Supreme Court as the 7th Claim in his exhaustion petition. Exhaustion Petition at 170-73. The state court summarily denied the claim on the merits; as untimely, successive and not cognizable on habeas to the extent it asserts the guilt evidence was legally insufficient; and as barred under *In re*

90

1  *Dixon*, 41 Cal. 2d 756 (1953), insofar as it "raises challenges to the legal sufficiency of

2  the guilt evidence that that could and should have been, but were not, raised on direct

3  appeal." Lodgment 11.

4       Under Supreme Court and Ninth Circuit law, the Court should grant relief

5  because Millwee is actually innocent of the crimes he was convicted of and is actually

6  innocent of the death penalty. *See Glossip v. Gross*, 135 S. Ct. 2726, 2757 (2015)

7  (Breyer, J., dissenting; joined by Ginsburg, J.) ("Last year, in 2014, death row inmates

8  were exonerated on actual innocence. All had been imprisoned for more than

9  30 years . . . ."); *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *House v. Bell*,

10  547 U.S. 518, 522 (2006); *Schlup v. Delo*, 513 U.S. 298 (1995); *Sawyer v. Whitley*, 505

11  U.S. 333 (1992); *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997). Millwee has

12  discussed the facts supporting this claim elsewhere in this brief. *See* discussion of

13  Claims 2, 9, *supra*.

14  **TWELFTH AND TWENTIETH CLAIMS FOR RELIEF FOR**

15  **PROSECUTORIAL MISCONDUCT**

16       Millwee's 12th claim alleges that his constitutional rights were violated because

17  of prosecutorial misconduct. The claim alleges that the prosecutor committed

18  misconduct (a) in presenting false testimony; (b) by refusing to provide the defense

19  with discovery; (c) by suppressing and/or destroying exculpatory evidence; (d) by

20  improperly describing the victim's illness, recovery and subsequent disability; (e) by

21  improperly attacking the credibility of defense expert Richard Fox during the testimony

22  of Dr. Irving Root; (f) by using the political power of the district attorney's office to

23  intimidate the judges presiding over Petitioner's trial; and (g) in closing argument at the

24  penalty retrial. Amended Petition at 136-53. Millwee presented subclaims (b), (d) and

25  (e) to the California Supreme Court in Claim 8 of his direct appeal. Lodgment 1

26  (Appellant's Opening Brief at 127-36). Subclaim (g) was presented to the California

27  Supreme Court in Claim 11 of his direct appeal. Lodgment 1 (Appellant's Opening

28  Brief at 164-87). The state court denied subclaims (b), (d), (e) and (g) on the merits in

91

a reasoned decision.  *Millwee*, 18 Cal. 4th at 135-41.  Subclaims (a), (c) and (f) were presented to the California Supreme Court as the Sixth Claim of his exhaustion petition. Exhaustion Petition at 154-70.  The state court denied these subclaims on the merits and as procedurally barred.  Lodgment 11.

Like Claim 12, Claim 20 alleges that the prosecutor committed misconduct in his penalty closing by arguing that the absence of mitigating evidence was itself an aggravating factor.  Claim 20 was presented to the California Supreme Court on direct appeal in the same claim as other allegations in Claim 12 and was denied in a reasoned opinion.

Regarding subclaim (a), Millwee details in his petition, and has described in the ineffective assistance claims above, the false prosecution evidence presented at trial going to the key issue of whether Millwee entered the house consensually, whether his mother was afraid of him, etc.  That testimony has been shown false by declarations submitted by Millwee in habeas.  Even Petitioner's father admitted after trial to committing perjury.

The prosecutor's knowing presentation of false evidence violated Petitioner's rights under the clearly established federal law of *Napue v. Illinois*, 360 U.S. 264 (1959).  *See Gonzalez v. Wong*, 667 F.3d 965, 994 (9th Cir. 2011) (citing *Napue* for the proposition that "[i]t is clearly established law that 'a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction'").  The false testimony went to the "sine qua non" of the case, consensual entry, and without this testimony the prosecution could not have obtained a conviction of first degree murder or a finding of true on the burglary and robbery special circumstances.  The prosecution played unfair on the most important and contested issues in the case.

Millwee was prejudiced by the misconduct because there is a "reasonable likelihood that the false testimony *could* have affected the judgment of the jury,'" *Phillips v. Ornoski*, 673 F.3d 1168, 1189 (9th Cir. 2012) (original emphasis), particularly given the prosecution's weak and circumstantial case.  *Millwee*, 18 Cal. 4th

92

1   at 136 (in denying prosecutorial misconduct claim for discovery violations, state

2   supreme court describes this as "a highly nuanced, circumstantial case").  If the Court is

3   not inclined to grant relief on this claim, at a minimum it should order an evidentiary

4   hearing.  *Earp*, 431 F.3d at 1169.

5          The state supreme court denied subclaim (e) solely for lack of prejudice, and thus

6   this Court reviews the substance of the claim *de novo*.  The state supreme court soft-

7   pedaled the trial judge's comment that the prosecutor took a "cheap shot" in asking

8   Root if he knew Fox had resigned from a professional organization while an

9   incompetence investigation was pending, rather than asking Fox himself when he

10   testified earlier.  *Millwee* 18 Cal. 4th at 139-40.  According to the state supreme court:

11   "The court made clear, however, that the offending question was, at most, a 'cheap

12   shot' that could not have damaged the defense . . . ."  *Id*. at 139.  But the trial transcript

13   shows that the judge said in response to the prosecutor's question:  "I think that

14   question is highly objectionable, quite prejudicial, and I suspect that this witness will

15   say no.  And I suspect that that is just a way to get it in."  RT 3387.  The court

16   continued:  "So, I mean this really is in the definition of a cheap shot.  I mean, there is

17   no other way to describe it, in this Court's opinion."  RT 3390-91.  The trial judge's use

18   of the term "cheap shot" was damning, and rightly so.  Millwee was prejudiced because

19   Fox's testimony went to the heart of his accident defense by explaining that the telltale

20   signs of a close or contact wound were absent, RT 3274, 3302, 3304, 3280, which

21   rebutted the prosecutor's claim that Millwee placed the gun to his mother's head and

22   pulled the trigger execution-style.

23          *Deck v.Jenkins*, 768 F.3d 1015 (9th Cir. 2014), shows that Millwee is entitled to

24   relief, and § 2254(d) does not prevent relief, on subclaim (g) for prosecutorial

25   misconduct in closing argument at the penalty retrial.  Here, as in *Deck*, the

26   prosecutor's argument "'so infected the trial with unfairness as to make the resulting

27   conviction a denial of due process.'"  *Id*. at 1022.  The prosecutor argued that Millwee,

28   like the "Adolf Hitlers or the Charles Mansons of the world," were "beyond the line"

and deserved the death penalty.  RT 2469.  He argued that Millwee "doesn't care [and] has no feelings for anyone else" and that "[w]hile his mother died at the house, he went to the beach."  RT 2473-74, 2476, 2478-80.  He also improperly argued future dangerousness and that the absence of mitigations was itself an aggravating factor. Millwee was prejudiced by the misconduct, even more so when considered with the other acts of prosecutorial misconduct.  The Court should grant a new penalty trial.

**FOURTEENTH CLAIM FOR RELIEF FOR VIOLATION OF PETITIONER'S RIGHT TO A FAIR AND IMPARTIAL JURY**

Claim 14 alleges that during his guilt trial and his penalty phase re-trial, Millwee was denied his right to trial by a fair and impartial jury drawn from a fair cross-section of the community based upon the evidence presented at trial, because (1) the trial court empaneled jurors who held strong and unreasonable biases against criminal defendants that rendered them incapable of giving Millwee a fair trial and who were unduly prone to find in favor of death; (2) the trial court excluded for cause prospective jurors with moral scruples whose views did not prevent or substantially impair their ability to consider the evidence at the penalty phase offered in support of the death penalty; (3) the trial court empaneled jurors who willfully misrepresented their life experiences and their willingness to be fair and impartial; (4) the trial court empaneled jurors who considered extrinsic evidence, engaged in premature deliberations, and refused to deliberate; and (5) the trial court empaneled a mentally incompetent juror, Laura Jordan.  The 14th Claim was presented to the California Supreme Court as the Fourth Claim of the exhaustion petition.  Exhaustion Petition at 130-49.  The state court denied the claim on the merits and as procedurally barred.  Lodgment 11.

Millwee explains his claim in detail in his federal petition, as he did in state court, and here focuses on several aspects of his claim.  Two jurors, Mary Jane Johnston and Louis Yessin, made material misrepresentations in voir dire.  Johnston failed to disclose she had been was the victim of an attempted rape at age 19. Exhaustion Petition at 141-42.  And although she disclosed in voir dire that she lived

across the street from Arlington Park, one of the locations Millwee had resided in, and had promised not visit the crime scene, during trial she traveled to the Hi Ho Tavern, where Petitioner and his father argued the morning of the shooting. She described the area around the bar to other jurors. Exhaustion Exhibit 218, ¶ 7.

Petitioner is entitled to a new guilt phase trial, because Ms. Johnston's violation of her oath and her material misrepresentations introduced "destructive uncertainties into the fact finding process." *Green v. White*, 232 F.3d 671, 676 (9th Cir. 2000). Because this misconduct deprived Petitioner of a fair and impartial jury, Petitioner's conviction must be reversed. *Dyer v. Calderon*, 151 F.3d 970, 67 (9th Cir. 1998). The jury's use of extrinsic evidence in the form of Ms. Johnston's observations merit a new trial, because it deprived Petitioner of his Sixth Amendment right to be tried by an impartial jury on the evidence presented at trial and to confront the evidence presented against him. *Jeffries v. Woods*, 114 F.3d 1484, 1490 (9th Cir. 1996), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).

Juror Yessian stated in voir dire that he would consider mitigating evidence at penalty. But he submitted a declaration in habeas stating that "[i]f you kill someone, that's it, mental illness or not." Exhaustion Exhibit 213, ¶ 4. For this additional reason, Millwee was denied the right to an impartial jury.

Finally, additional declarations in habeas support the claim that Laurie Jordan was incompetent during the guilt trial. Juror Sharon Mejia describes Jordan as "high strung, nervous, fidgety and [espousing] weird ideas." Exhaustion Exhibit 218, para. 8. Jordan submitted a declaration further indicating that her attention wandered during the guilt trial. Exhaustion Exhibit 192, ¶ 5.

Millwee is entitled to relief because he did not have a competent and impartial jury at guilt and penalty. At a minimum, he is entitled to a hearing on his claim. *Dyer*, 151 F.3d 970. The state court unreasonably denied relief without a hearing on this record.

95

1
2
3

**FIFTEENTH CLAIM FOR RELIEF FOR ERROR IN FAILING TO GRANT A NEW GUILT TRIAL BASED ON THE MENTAL INCOMPETENCE OF JUROR LAURIE JORDAN**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Claim 15 alleges that Millwee was denied due process and the right to trial by jury because the trial court failed to grant his motion for a new trial based on the mental incompetency of juror Laurie Jordan. Amended Petition at 174. During the first penalty trial, the trial judge found Jordan incompetent to continue to serve as a juror but ruled that she had been competent during the guilt trial. RT 4344-46. Millwee argues that his constitutional rights were violated because of the presence of an incompetent juror at guilt and also because the trial court did not hold an adequate hearing to evaluate whether Jordan was in fact incompetent at guilt. Millwee presented this claim to the California Supreme Court as Claim VII in his appeal. AOB at 108-26; *see especially id.* at 115 (stating that Millwee had federal and state "constitutional rights to be tried by mentally competent jurors" and that he "relies on both the Sixth and Fourteenth Amendments to the U.S. Constitution") (initial capital letters deleted). The state court denied the claim in a reasoned opinion. *Millwee*, 18 Cal. 4th at 140-45. The state court decision is contrary to and an unreasonable application of clearly established federal law, and is also based on an unreasonable determination of the facts. On *de novo* review, this Court should grant guilt relief.

20
21
22
23
24
25
26
27

In 1912, the United States Supreme Court held that state criminal defendants have a 14th Amendment due process right to mentally competent jurors. *Jordan v. Massachusetts*, 225 U.S. 167, 176 (1912) ("[d]ue process implies a tribunal both impartial and mentally competent to afford a hearing"); *see also Peters v. Kiff*, 407 U.S. 493, 501 (1972) ("Long before this Court held that the Constitution imposes the requirement of jury trial on the States, it was well established that the Due Process Clause protects a defendant from jurors who are actually incapable of rendering an impartial verdict, based on the evidence and the law.") (citing *Jordan*).

28

96

1    Criminal defendants also have a 6th Amendment right "an unimpaired jury."

2    *Tanner v. United States*, 483 U.S. 107, 127 (1987); *Smith v. Phillips*, 455 U.S. 209, 217

3    (1982) (stating in § 2254 case that due process guarantees "a jury capable and willing

4    to decide the case solely on the evidence before it").

5    California state law also guarantees criminal defendants the right to competent

6    jurors. *People v. Hedgecock*, 51 Cal. 3d 395, 420 (1990) (reversing denial of defense

7    new trial motion where affidavits indicated that alcohol use made a juror "unable to

8    competently perform her duties"); *Hasson v. Ford Motor Co.*, 32 Cal. 3d 388, 411

9    (1982) ("a jury's failure to pay attention to the evidence presented at trial is a form of

10   misconduct which will justify the granting of a new trial"). California Penal Code §

11   1089 states that "[i]f at any time . . . a juror . . . becomes ill, or upon other good cause

12   shown to the court is found to be unable to perform his or her duty . . . the court may

13   order the juror to be discharged." "[I]f during a trial, the court becomes aware of

14   possible juror misconduct, it must make whatever inquiry is reasonably necessary to

15   determine if the juror discharged." *Hedgecock*, 51 Cal. 3d at 417. However, "when the

16   defense has come forward with evidence demonstrating a strong possibility that

17   prejudicial misconduct has occurred," the trial court must "conduct an evidentiary

18   hearing to determine the truth or falsity of [the] allegations of juror misconduct,

19   and . . . permit the parties to call jurors to testify at such a hearing." *Id.* at 419 (footnote

20   omitted). When jury misconduct is found, prejudice is presumed. *Id.* at 420.

21   Federal "due process means a jury capable and willing to decide the case solely

22   on the evidence before it" and can require a hearing on allegations of juror partiality,

23   incapacity or incompetence. *Smith*, 455 U.S. at 215, 217 (2254 case); *Edgemon v.*

24   *Lockhart*, 768 F.2d 252, 256-57 (8th Cir. 1985) (in 2254 case, ordering evidentiary

25   hearing on claim of ineffective assistance of counsel for failure to challenge

26   incompetent juror; "[o]n remand, [petitioner] should be given a chance to show by

27   evidence exactly what the juror's mental condition was"). Federal courts have required

28   a "high standard of proof" to trigger a hearing into allegations of juror incompetence,

97

*Edgemon*, 768 F.2d at 256, and have said that "the jury's verdict must be set aside if the defendant presents 'clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service.'" *United States v. Hall*, 989 F.2d 711, 714 (4th Cir. 1993) (cited by the California Supreme Court in denying Millwee's claim on appeal). Under the federal constitution, it is structural error for a criminal defendant to be convicted by a panel containing an incompetent juror; the petitioner need not establish prejudice to obtain a new trial. *Mach v.* Stewart, 137 F.3d 630, 633 (9th Cir. 1997); Tinsley *v. Borg*, 895 F.2d 520, 523-24 (9th Cir. 1990). A state court's decision that a juror is competent appears to be a finding of fact for purposes of federal habeas review. *See Patton v. Yount*, 467 U.S. 1027, 1036-37 & n.12 (1984).

On June 6, 1989, Jordan missed court. CT 751. The judge called a recess until the next scheduled court day, June 8. *Id.* That day, the bailiff advised the judge that Jordan wanted to speak to him. CT 755. The bailiff also advised the court that other jurors had complained about Jordan's habitual tardiness and that one said Jordan admitted she had purposely been late. RT 4327.

The judge spoke to Jordan at an in camera session with the parties present. Jordan was not placed under oath. Jordan asked to be relieved from service. RT 4329. She explained she had been in a "confused state" such that she had to write "very large notes" and "put them on [her] door" to try to remember her appointments and obligations. *Id.* The judge said, "[y]ou sound like you are almost ready to cry at this point." RT 4330. Jordan said she did not "really want to make the decision" and that it was "a combination of [her] family situation and this trial." *Id.* She affirmed that she was "having tremendous emotional problems at home." RT 4332. She said her sister periodically had threatened to throw her out of the house. RT 4331.

Jordan said she had trouble arriving on time in court "all the time." RT 4332. She was having a hard time facing her juror obligations and psychologically was probably trying to avoid the situation by arriving late to court. *Id.* She added that her father lived in the same park Millwee had lived in. RT 4334.

98

1    The court asked if these problems existed during the first part of the trial or "is

2    this something that has just developed recently?" Jordan replied: "No, it was already

3    there, and accelerates and decelerates the situation [sic]." RT 4335. She said that she

4    was functioning during the guilt trial but did not really feel free to make a decision. RT

5    4336.

6        In the midst of questioning her about her mental state during the guilt trial, the

7    judge asked her to "stop and think before you speak at this point" and not "rambl[e]."

8    *Id.* The court asked if she felt she made the correct decision on the issue of guilt. RT

9    4337. She replied, "Yes." *Id.* She said "yes" to the question whether she was satisfied

10   that she individually applied the law to the facts. *Id.* She added that she did not know

11   that she would be voting on penalty; she thought the penalty decision was up to the

12   judge. *Id.* The judge again commented that Jordan seemed "almost on the verge of

13   tears" and added later that "she was barely holding herself in check." RT 4339, 4344.

14       The prosecutor argued that Jordan should be excused. He said disqualification

15   was warranted based on "at least three instances in which she has apparently suffered a

16   lack of concentration," starting at voir dire. RT 4341. He said that Jordan "indicated to

17   us that she didn't realize that she was going to be having to decide a penalty issue.

18   That was something that was−should have been clear, I would think, from the

19   beginning of this case." RT 4341-42. He added that "she is visibly upset and

20   distraught over her family situation." RT 4342. Defense counsel Griggs said he

21   wanted "[m]erely to indicate to the court that [he] would like this juror to remain on for

22   tactical reasons with respect to her defection [sic]." RT 4341.

23       The court ruled there was good cause to excuse Jordan. RT 4344. The court said

24   there is good cause for removal "when a juror become[s] ill. It strikes me that this juror

25   is emotionally ill and it is manifesting itself in her inability to remember certain things,

26   even when she makes notes." RT 4342. He explained "that clearly has to have an

27   impact on her ability to hear, remember, evaluate, concentrate, and so forth. So, I think

28   her illness, and that's what it is, an emotional illness, is affecting her capacity to be a

99

juror.  And I would think that, for that reason, she should be excused alone."  RT 4342-43.

The court said a second reason for dismissal was that Jordan "indicated personal knowledge about facts relating to this case," i.e., that she knew of the park where Millwee had lived at some point.  RT 4343.  The court gave as a third reason that the impact of the evidence is causing Jordan to "almost stop functioning as a human being."  *Id*.  The court cited personal hardship as a fourth reason.  *Id*.

The court said that Jordan "was able to assure us that she was still able to perform her function in the guilt phase."  RT 4344.  Nevertheless, the court said:

> I am surprised that she did not realize that the jury would be deciding the penalty phase after our voir dire, which causes me to question how much attention she was paying during voir dire.  Because, as I recall, that question was asked of each juror by myself, by each attorney, at least two or three times, and yet she says that she thought they would only decide guilt and the judge would decide penalty.
>
> Her inability to even recognize something so basic causes me some question about how she came to that.  Maybe what's going on is she just was blocking it out of her mind, because she didn't want to do it, and she is saying that she has problems getting to court on time, and this penalty phase is starting to psychologically affect her.

RT 4345-46.

Despite these concerns, the court said it "was satisfied that at guilt she did decide the case on the facts and she did apply the law . . . ."  RT 4346.

The defense moved for a mistrial at guilt based on Jordan's incompetence during that phase of the trial.  RT 4348.  Defense counsel said that such a motion perhaps "would be run" and heard "at another time."  *Id*.  The court said "[i]t really wouldn't be

100

1    very productive if we went into it at this point in time" but that he expected a new trial

2    motion on the issue after the conclusion of penalty trial. *Id.* The court added: "I think

3    we have got a full explication from the juror. And if you need to go any further than

4    that, you can ask her or inquire by way of affidavit." RT 4349.

5        After the death verdict, Judge Webster returned to preside over the new trial

6    motion based on the incompetence of Juror Jordan. He denied Millwee's request to

7    order Jordan to court to testify and also ordered the parties not to contact her outside of

8    court. Retrial RT 2619-20. Defense mental health expert Craig Rath testified that

9    Jordan was incompetent during the guilt trial. Retrial RT 2688. He acknowledged,

10   though, that the data were incomplete because he had not interviewed Jordan but

11   instead was relying on trial transcripts and her juror notes. Retrial RT 2638. The

12   prosecutor argued that Rath's opinion was invalid because he had not interviewed

13   Jordan. Retrial RT 2647. The court said that "[t]his is an important hearing" and that it

14   was bothered by Rath not being able to interview Jordan, but nevertheless stood by its

15   decision not to bring Jordan to court or allow the parties to interview her outside of

16   court. Retrial RT 2646-48. Prosecution expert Sharma testified that he was "not saying

17   she was competent, I don't know. . . . She may have been." Retrial RT 2681. He

18   acknowledged that "[s]ome of her problems were certainly operative before this trial

19   started." Retrial RT 2667, 2669. The court denied the motion. Retrial RT 2713.

20       Citing *Jordan*, the California Supreme Court held that it did not "find a violation

21   of defendant's due process right to a mentally sound tribunal." *Millwee*, 18 Cal. 4th at

22   144. The court also rejected the "claim that the hearing on the new trial motion was

23   'inadequate' because the court denied the defendant's request to subpoena Juror Jordan

24   and subject her to examination under oath." *Id.* at 448 n.23. The court's decision does

25   not pass muster under § 2254(d).

26       Although the court cited the federal due process right to competent jurors and

27   *Tanner*, it then held that "[n]othing in the record establishes that, *by reason of mental*

28   *disorder or developmental disability*, Jordan was unable to understand the nature of the

101

1  proceedings or to deliberate rationally." *Millwee*, 18 Cal. 4th at 144. (emphasis added).

2  This is the California state standard for competency to stand trial, a standard that is

3  contrary to the federal competency standard by requiring that incompetence be caused

4  by a "mental disorder or developmental disability." 1068.  The federal competence rule

5  has no such requirement; the only question is whether the relevant subject is

6  incompetent. *See supra* at 71.  Because the state supreme court applied a rule contrary

7  to federal law, § 2254(d)(1) is satisfied and this Court reviews Millwee's claim *de*

8  *novo*.

9          Section 2254(d)(2) is also met because the state court's determination that Jordan

10 was competent at guilt (1) is unsupported by the record and failed to consider all

11 relevant evidence that was before it; and (2) is the result of a flawed fact-finding

12 process. *Milke v. Ryan*, 711 F.3d 998, 1007 (9th Cir. 2013).  In other words, it was

13 unreasonable for the trial judge to conclude that Jordan was competent based on the

14 evidence before him.  Further, the trial judge could not reasonably find that Jordan was

15 competent without holding a more expansive hearing that was sufficient to obtain the

16 information necessary to reach such a conclusion.

17         When the trial judge first inquired into Jordan's competence during the first

18 penalty trial, he questioned Jordan in camera, but not under oath, and he took no expert

19 testimony or reviewed her juror notes or the transcript of her voir dire.  He concluded

20 she was competent at guilt based on several "yes" or "no" questions asked after

21 encouraging Jordan to stop "rambling."  The questions were also conclusory–e.g., did

22 she think her guilty verdict was correct–and were not designed to obtain more

23 information about her mental functioning during the guilt trial.  The evidence that did

24 exist on this topic was alarming:  that her problems were "already there" during the

25 guilt trial; that she was sufficiently confused or inattentive during voir dire not to learn

26 that jurors would decide penalty, although that was emphasized to them repeatedly (a

27 fact the judge found concerning); that she had been late to court "all the time," probably

28 to avoid the pressure of jury service; and that she did not really feel free to make a

102

1   decision at guilt.  Based on this record, a reasonable judge would have found Jordan

2   incompetent or at least conducted a full and fair hearing into the question.  Instead, the

3   trial judge, and later the state supreme court, unreasonably ignored or discounted this

4   evidence in assessing Jordan's competence.  *See Miller-El II*, 545 U.S. at 254 (state

5   court unreasonably determined fact that prosecutor did not discriminate in jury

6   selection when it had before it, and apparently ignored, testimony demonstrating

7   district attorney office's use of process to manipulate the racial composition of the jury

8   in the past); *Milke*, 711 F.3d at 1008 ("we can't accord AEDPA deference when the

9   state court 'has before it, yet apparently ignores,' evidence that is 'highly probative and

10  central to petitioner's claim'").

11       The trial court also failed to hold a hearing adequate to develop the facts

12  necessary to reliably conclude that Jordan was competent during the guilt trial.  The

13  court's first inquiry involved some questions to Jordan in camera, not under oath.

14  When Millwee moved for a mistrial, the court said he could raise his motion after the

15  penalty verdict and that "if you need to go any further . . . you can ask her or inquire by

16  way of affidavit."  RT 4349.  But at the second hearing, after the penalty verdict, when

17  Millwee asked the court to order Jordan to court to testify, the court denied the request

18  and also ordered the parties not to contact her.  Thus, the defense was left to present

19  expert testimony based on a review of Jordan's statements in court and her jury notes,

20  information the prosecutor argued was inadequate to support an opinion that Jordan

21  was incompetent.  The state's expert acknowledged the record was inadequate to

22  conclude that Jordan was competent at guilt.  He said he didn't know if she was.

23       Millwee was not at fault for any failure of proof; the court denied his request to

24  bring Jordan to court to question her under oath and to allow his mental health expert to

25  interview her.  Under federal and state law, Millwee was entitled to a full and fair

26  hearing on his claim that Jordan was incompetent at the guilt trial, a hearing where he

27  could question her and other jurors and witnesses under oath.  *Tanner*, 483 U.S. at 114-

28  15; *Smith v. Phillips*, 455 U.S. 209, 215, 217; *id.* at 222 (O'Connor, J., concurring) ("A

103

1   hearing permits counsel to probe the juror's memory, his reasons for acting as he did,

2   and his understanding of the consequences of his actions.  A hearing also permits the

3   trial judge to observe the juror's demeanor under cross-examination and to evaluate his

4   answers in light of the particular circumstances of the case."); *Renner v. United States*,

5   347 U.S. 227, 229-30 (1954); *Hedgecock*, 51 Cal. 3d at 419.  The failure to hold such a

6   hearing is contrary to and an unreasonable application of *Jordan*, *Tanner* and *Smith*.  It

7   also is contrary to and an unreasonable application of the rule that criminal defendants

8   have a due process right to the faithful application of state laws.  *Hicks v. Oklahoma*,

9   447 U.S. 343, 346 (1980) (criminal defendants have 14th Amendment due process

10  liberty interest in faithful application of state criminal laws); *Marsh v. County of San*

11  *Diego*, 680 F.3d 1148, 1157 (9th Cir. 2012) ("statutory laws of general applicability

12  *can* create a liberty interest that is constitutionally protected") (original emphasis).

13       The failure to hold an adequate hearing also resulted in a decision based on an on

14  an unreasonable determination of the facts, because the trial judge made his finding "on

15  an unconstitutionally incomplete record," *Milke*, 711 F.3d at 1007, and without giving

16  Millwee an opportunity to present the testimony of Jordan or other witnesses.  *Taylor*,

17  366 F.3d at 1000-01.

18       Under *de novo* review, the Court should grant relief on the ground that the record

19  shows that Jordan was incompetent or because the state court failed to give Millwee the

20  constitutionally mandated hearing into his juror incompetence claim.  If the Court is not

21  inclined to grant relief on the current record, it should at a minimum order an

22  evidentiary hearing on the claim.  *See Hurles v. Ryan*, 752 F.3d 768, 791-92 (9th Cir.

23  2014) (holding that state court unreasonably determined facts in denying judicial bias

24  claim and remanding for federal evidentiary hearing on claim).

25  **SEVENTEENTH CLAIM FOR RELIEF FOR RESTRAINING PETITIONER IN**

26  **THE PRESENCE OF JURORS WITHOUT JUSTIFICATION**

27       The 17th Claim alleges that Millwee appeared before the jury in court in shackles

28  in violation of his constitutional rights.  Amended Petition at 189-90.  Millwee

104

1    presented this claim to the state supreme court as the Tenth Claim of his exhaustion

2    petition.  Exhaustion Petition at 179-81.  The state court summarily denied the claim on

3    the merits and as untimely and successive.  Lodgment 11.

4         *Illinois v. Allen*, 397 U.S. 337 (1970), and *Holbrook v. Flynn*, 475 U.S. 560

5    (1986), are clearly established federal law for Millwee's shackling claim.  *See generally*

6    *Deck v. Missouri*, 544 U.S. 622 (2005).  "The considerations that militate against the

7    routine use of visible shackles during the guilt phase of a criminal trial apply with like

8    force to penalty proceedings in capital cases."  *Deck*, 544 U.S. at 632.

9         With his state exhaustion petition, Millwee filed declarations by a seated juror

10   and an alternate juror stating that they saw Millwee shackled in court.  Exhaustion

11   Exhibit 186, ¶ 2; Exhaustion Exhibit 204, ¶ 5.  Although distinctions may be made

12   between shackling a defendant in the courtroom versus outside the courtroom on the

13   way to court, *Wharton v. Chappell*, 765 F. 3d 953, 964-65 (9th Cir. 2014), here the

14   jurors say they saw Millwee shackled, at least for a while, in open court while the jury

15   was seated.  The trial court did not conduct a hearing on the propriety of shackling

16   Millwee, nor did it make any findings that shackling was necessary.  These declarations

17   are sufficient to establish prejudice on the claim, or at the very least the need for an

18   evidentiary hearing on the claim.  *See id*. at 965; *Parrish v. Small*, 315 F.3d 1131, 1133

19   (9th Cir. 2003).

20

21   **TWENTY-SECOND CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN**

22   **FAILING TO INSTRUCT THE JURY ON LESSER-INCLUDED-OFFENSES**

23        Millwee's 22nd claim alleges that his constitutional rights were violated because

24   the trial court failed to instruct *sua sponte* on lesser included offenses, including

25   involuntary manslaughter and second degree murder based on evidence of an

26   unintended killing.  Amended Petition at 257-80.  Millwee presented this claim to the

27   California Supreme Court as the 15th Claim in his direct appeal.  Lodgment 1

28

105

1    (Appellant's Opening Brief at 208-40).  The state court denied the claim in a reasoned

2    opinion.  *Millwee*, 18 Cal. 4th at 155-58.

3         *Beck v. Alabama,* 447 U.S. 625, 635-37 (1980), clearly establishes the rule that a

4    capital defendant is entitled an instruction on a lesser-included offense if the evidence

5    would permit a jury rationally to find him guilty of the lesser offense and acquit him of

6    the greater.  The Court explained that "when the evidence unquestionably establishes

7    that the defendant is guilty of a serious, violent offense-but leaves some doubt with

8    respect to an element that would justify conviction of a capital offense-the failure to

9    give the jury the "third option" of convicting on a lesser included offense would seem

10   inevitably to enhance the risk of an unwarranted conviction.  Such a risk cannot be

11   tolerated in a case in which the defendant's life is at stake."  *Id.* at 637.

12        Although Millwee testified that the killing of his mother was accidental, the court

13   offered no instruction on involuntary manslaughter–thus improperly framing the jury's

14   homicide decision exclusively in terms of murder.  Cal. Penal Code §§ 187, 189, 192.

15   The trial court also failed to offer instructions on those categories of second-degree

16   murder involving no intent to kill–i.e., where the defendant either intended to inflict

17   great bodily harm short of death, or engaged in conduct creating an extremely high risk

18   of death, or killed in the commission of a non-enumerated inherently dangerous felony.

19   Although a second degree murder instruction based on unpremeditated intent was

20   given, the trial court should have given all instructions warranted by the evidence, thus

21   maximizing the number of noncapital murder options available to the jury.

22        Because of the trial court's failure to instruct on lesser included offenses, the

23   jury's deliberations were forced into an exclusively homicide as murder framework.

24   Without adequate instructions reflecting the evidence in the record that the killing was

25   accidental, the guilt phase jury was likely to reject the option of acquitting Millwee of

26   all homicide charges, particularly if they believed he was culpable in some way.

27        The California Supreme Court's decision denying relief was unreasonable under

28   § 2254(d).  First, the decision is contrary to and an unreasonable application of *Beck*.

106

Second, the court assumed that the jury would not have found Millwee guilty of a lesser crime because it found him guilty of first-degree murder.  But the jury, because of the absence of the lesser-included instructions, did not have the opportunity to apply the facts to the defense's theory; if presented with a full picture of the defense evidence and given proper instructions, there is a reasonable probability that the jury would not have credited the prosecution's theory of murder.  The California Supreme Court thus assumed too much.  And where a state court bases its decision on incorrect assumptions, as was done here, the state court decision is unreasonable.  *See Wiggins,* 539 U.S. at 528-30.  Millwee is entitled to relief on *de novo* review.

**TWENTY-FIFTH CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN INSTRUCTING THE JURY IN TERMS OF "MORAL CERTAINTY"AND "MORAL EVIDENCE"**

The 25th Claim alleges that Millwee's constitutional rights were violated because the trial court wrongly instructed that the finding of a reasonable doubt depended upon "moral evidence" and a lack of "moral certainty" in the truth of the charges against Millwee.  Amended Petition at 288-297.  Millwee presented this claim to the California Supreme Court as Claim XVII in his direct appeal.  Lodgment 1 (Appellant's Opening Brief ) at 246-60.  The state court denied the claim on the merits in a reasoned opinion.  *Millwee*, 18 Cal. 4th at 161.

The instruction at issue is CALJIC 2.90, which specifies that a criminal defendant is entitled to a not guilty verdict "in case of a reasonable doubt."  CT 637, 728-29.  The instruction was requested by both parties and was given at guilt and penalty.  The instruction states that "reasonable doubt":

> is not a mere possible doubt, because everything relating to human affairs and depending on moral evidence, is open to some possible doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.

107

1    RT 2511, Retrial RT 2511.

2         The United States Supreme Court has held that jury instructions may not,

3    however subtly, compromise the key constitutional concept of proof beyond a

4    reasonable doubt. *Cage v. Louisiana*, 498 U.S. 39, 42 (1990), *overruled on other*

5    *grounds in Estelle v. McGuire*, 502 U.S. 62 (1991). *Cage* involved an instruction that

6    defined reasonable doubt as "such doubt as would give rise to a grave uncertainty" and

7    "an actual substantial doubt," and stated that "[w]hat is required is not an absolute or

8    mathematical certainty, but a moral certainty." *Cage*, 498 U.S. at 40. The Supreme

9    Court held that such an instruction suggested a requirement of too high a degree of

10   doubt to comport with constitutional requirements. *Id.*

11        For similar reasons, the instruction given at Millwee's trial is constitutionally

12   inadequate. California's reasonable doubt instruction, standing alone, is defective

13   because it defined reasonable doubt by reference to "moral certainty" rather than legal

14   and evidentiary certainty. *Cage*, 498 U.S. at 41. The instruction impermissibly

15   lowered the prosecutor's burden and allowed Millwee to be convicted on proof less

16   than beyond a reasonable doubt. *Carella v. California*, 491 U.S. 263 (1989);

17   *Sandstrom v. Montana*, 442 U.S. 510 (1979); *Jackson v. Virginia*, 443 U.S. 307 (1979);

18   *In re Winship*, 397 U.S. 358 (1970). For these reasons, the California Supreme Court's

19   denial of this claim is contrary to and an unreasonable application of federal law.

20        Constitutionally deficient instructions on reasonable doubt create structural error;

21   they are not reviewed for harmless error, but rather require reversal. *Sullivan v.*

22   *Louisiana*, 508 U.S. 275 (1993). Accordingly, Millwee is entitled to a new guilt trial.

23   **TWENTY-SEVENTH CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN**

24   **INSTRUCTING THE JURY TO CONSIDER AGGRAVATING AND**

25   **MITIGATING CIRCUMSTANCES WITHOUT ADEQUATELY EXPLAINING**

26   **THEM**

27        Millwee's 27th claim alleges that his constitutional rights were violated by the

28   court's erroneous instructions to the penalty jury to consider aggravating and mitigating

108

1   circumstances without adequately explaining them or indicating that the jury must find

2   any aggravating circumstances unanimously and beyond a reasonable doubt.  Amended

3   Petition at 305-28.  Millwee presented this claim to the California Supreme Court as the

4   19th Claim in his direct appeal.  Lodgment 1 (Appellant's Opening Brief at 270-301).

5   The state court denied the claim on the merits in a reasoned opinion.  *Millwee*, 18 Cal.

6   4th at 161-65.

7          Death penalty cases are complex and require the jury to make decisions that are

8   far different from the typical juror decision of "guilt beyond a reasonable doubt."  It can

9   be very difficult for ordinary citizens to understand the abstruse legal framework that a

10  legislature has constructed around the death penalty.  For this reason, the Constitution

11  demands that "specific and detailed guidance" be provided to juries.  *Godfrey v.*

12  *Georgia*, 446 U.S. 420, 428 (1980) (citing *Proffitt v. Florida*, 428 U.S. 242, 253 (1976)

13  (opinion of Stewart, Powell, and Stevens, JJ)  The failure to do so creates an

14  unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing

15  process prohibited by *Furman v. Georgia*, 408 U.S. 238 (1972).

16         The jury instructions in this case were unconstitutional because they did not

17  provide the jury with specific and detailed guidance.  The judge instructed the jury that

18  in deciding on the appropriate sentence, it had to consider the "aggravating" and

19  "mitigating" circumstances presented during the case:

20         After having heard all the evidence and after having heard and considered the

21  arguments of counsel, you shall consider, take into account and be guided by the

22  applicable factors of *aggravating and mitigating circumstances* upon which you've

23  been instructed.

24         . . .

25         To return a judgment of death, each of you must be persuaded that the

26  *aggravating factors* are so substantial in comparison with the *mitigating circumstances*

27  that it warrants death instead of life without parole.

28

                                        109

1       This instruction was substantially similar to the legal standard articulated in the

2  California Penal Code and California's standard jury instructions.  *See* Cal. Penal Code

3  § 190.3; 1-500 CALCRIM 766.

4       But aggravating and mitigating circumstances are not self-defining terms.

5  Perhaps this is why California's Judicial Council advises trial judges to provide to

6  juries the following precise definitions for these terms:

7          *An aggravating circumstance or factor* is any fact, condition,

8          or event relating to the commission of a crime, above and

9          beyond the elements of the crime itself, that increases the

10         wrongfulness of the defendant's conduct, the enormity of the

11         offense, or the harmful impact of the crime.  An aggravating

12         circumstance may support a decision to impose the death

13         penalty.

14         *A mitigating circumstance or factor* is any fact, condition, or

15         event that makes the death penalty less appropriate as a

16         punishment, even though it does not legally justify or excuse

17         the crime.  A mitigating circumstance is something that

18         reduces the defendant's blameworthiness or otherwise

19         supports a less severe punishment.  A mitigating circumstance

20         may support a decision not to impose the death penalty.

21 1-500 CALCRIM 763 (emphasis in original).

22      The trial judge in this case did not, however, provide definitions like these to the

23 jury.  Instead he defined the terms in a confusing way, thus failing to provide the jury

24 with the "specific and detailed guidance" that is constitutionally-mandated.  The state

25 supreme court's denial of the claim is unreasonable.

26      In addition to not requiring juries to make certain findings in the penalty phase

27 using the reasonable doubt standard, California also does not require the jury to

28 unanimously agree on the existence of aggravating factors.  While the California

1  Supreme Court in its opinion stated its belief that it had adequately addressed this claim
2  in many past decisions, this belief was mistaken.

3       The Supreme Court has made clear that no greater interest is ever at stake than in
4  the penalty phase of a capital case. *Monge v. California*, 524 U.S. 721, 732 (1998)
5  ("the death penalty is unique in both its finality and severity"). Because of this, there is
6  a special need for reliability in death penalty proceedings. *Id.*; *see also Lockett v. Ohio*,
7  438 U.S. 586, 604 (1978) (opinion of Burger, C.J.) ("this qualitative difference between
8  death and other penalties calls for a greater degree of reliability when the death
9  sentence is imposed").

10      To impose a death sentence in California, a jury must find that (1) at least one
11 aggravating factor exists and (2) the aggravating factors substantially outweigh the
12 mitigating factors. In light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v.*
13 *Arizona*, 536 U.S. 584 (2002), these findings must be made beyond a reasonable doubt.
14 Because of the heightened reliability necessary for capital punishments, they also
15 should be made unanimously. Like the reasonable doubt standard, unanimity is an
16 effective way to ensure that defendants' constitutional rights are being respected, and
17 that convictions and sentences are being constitutionally obtained.

18      In denying the claim, the California Supreme Court didn't address *Apprendi* or
19 *Ring* or their principles. Its denial is inconsistent with them and with other controlling
20 Supreme Court authority. Accordingly, § 2254(d) does not bar relief and Millwee is
21 entitled to a new penalty trial on *de novo* review.

22 **TWENTY-NINTH CLAIM FOR RELIEF FOR TRIAL COURT ERROR IN**
23 **FAILING TO GIVE A RESIDUAL DOUBT INSTRUCTION IN THE PENALTY**
24 **PHASE**

25      Millwee's 29th claim alleges that the trial court violated his constitutional rights
26 by failing to *sua sponte* give an instruction on residual or lingering doubt at penalty.
27 Amended Petition at 333-35. Millwee presented this claim to the California Supreme
28 Court as the 22nd Claim in his direct appeal. Lodgment 1 (Appellant's Opening Brief

111

1   at 322-25.)  The state court denied the claim on the merits in a reasoned opinion.

2   *MIllwee*, 18 Cal. 4th at 165-66.

3         Millwee recognizes that *Franklin v. Lynaugh*, 487 U.S. 164 (1988), rejected a

4   claim that a capital defendant has a right to a lingering doubt instruction at penalty.

5   Millwee asserts this claim to preserve it for future review.  Millwee has shown in his

6   discussion of his insufficiency of the evidence, ineffective assistance and other claims

7   that the prosecution's case was weak at guilt, special circumstances and penalty and

8   that he could have made a compelling lingering doubt presentation  In these

9   circumstances, a lingering doubt instruction was necessary to safeguard Millwee's

10  rights to heightened reliability in capital sentencing, due process and a fair trial.  *See*

11  *Furman*, 408 U.S. 238.  It is anomalous that capital sentencing juries view lingering

12  doubt as powerful mitigation yet are not instructed to consider it in a weak case like this

13  with an overzealous prosecutor, false testimony by prosecution witnesses, and

14  inadequate defense counsel.  The failure to give the instruction was not harmless given

15  the thin prosecution case for intentional murder and felony-murder—a case built on false

16  testimony by prosecution witnesses that reasonable counsel would have countered—and

17  the powerful defense case for an accidental shooting and theft.  Defense counsel's

18  failure to request a lingering doubt instruction is just one more example of their

19  ineffective assistance.

20  **THIRTIETH CLAIM FOR RELIEF FOR UNCONSTITUTIONAL**

21  **SENTENCING STATUTE AND ERRORS IN PENALTY PHASE**

22  **INSTRUCTION OF THE JURY**

23        The 30th claim alleges that the California death penalty scheme under which

24  Millwee was sentenced fails to perform the constitutionally mandated narrowing

25  function, contains unconstitutionally vague aggravating circumstances, precludes

26  meaningful review of death sentences (because of the lack of written findings),

27  provides unfettered prosecutorial charging discretion, and fails to require jury findings

28  of the truth of aggravating circumstances and the appropriateness of the death penalty

1   unanimously and beyond a reasonable doubt.  Amended Petition at 336-48.  Millwee

2   presented these claims to the California Supreme Court as his Thirteenth Claim in his

3   Exhaustion Petition.  Exhaustion Petition at 250-70.  The state court summarily denied

4   this claim on the merits.  Lodgment 11.

5          California's death penalty scheme fails to comply with the Eighth Amendment's

6   clearly established requirement that a state statute must genuinely narrow the subclass

7   of offenders upon whom a sentence of death may be imposed.  The narrowing

8   requirement derives from the Eighth Amendment rule of *Furman v. Georgia*, 408 U.S.

9   238 (1972), that a death-sentencing procedure is unconstitutional if it provides "no

10  meaningful basis for distinguishing the few cases in which [death] is imposed from the

11  many cases in which it is not." *Id.* at 313 (White, J., concurring); *see also*, *e.g.*,

12  *Maynard v. Cartwright*, 486 U.S. 356, 362 (1988); *Godfrey v. Georgia*, 446 U.S. 420,

13  427-28 (1980) (plurality opinion).  "*Furman* mandates that where discretion is afforded

14  a sentencing body on a matter so grave as the determination of whether a human life

15  should be taken or spared, that discretion must be suitably directed and limited so as to

16  minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428

17  U.S. 153, 189 (1976) (plurality opinion).  The requisite direction and limitation must be

18  provided by statute, so that the selection of the persons eligible to be sentenced to death

19  is "circumscribed by . . . legislative guidelines." *Id.* at 207.  "To pass constitutional

20  muster, a capital sentencing scheme must 'genuinely narrow the class of persons

21  eligible for the death penalty and must reasonably justify the imposition of a more

22  severe sentence on the defendant compared to others found guilty of murder.'"

23  *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) (quoting *Zant v. Stephens*, 462 U.S.

24  862, 877 (1983)).

25         As Millwee argued to the state court, California's death penalty scheme operates

26  in the precise manner the Supreme Court found to violate the Eighth Amendment in

27  *Furman*.  Rather than providing a "meaningful basis for distinguishing the few cases in

28  which [the death penalty] is imposed from the many cases in which it is not," *Furman*,

113

408 U.S. at 313 (White, J., concurring), California's statute multiplies the "few" into the many and is therefore unconstitutional.  *See* Exhaustion Petition at 250-57; Exhaustion Petition Exhibit 149 (Supplemental Declaration of Steven R. Shatz re Death Penalty Study); Shatz & Rivkind, "The California Death Penalty Scheme: Requiem for *Furman*?" ("Shatz & Rivkind, *The California Death Penalty Scheme*"), 72 N.Y.U. L. Rev. 1283, 1286 (1997); *see also Wade v. Calderon*, 29 F.3d 1312, 1319 (9th Cir. 1994) (Eighth Amendment requires a death penalty statute to create a "principled distinction between the subset of murders for which the sentence of death may be imposed and the majority of murders which are not subject to the death penalty").

Millwee's case is a paradigmatic example of the unconstitutional failure to narrow in California and of prosecutors' unbridled capital charging discretion.  Before trial, Millwee moved to recuse prosecutor Daniel Lough on the ground that he was biased against Millwee stemming from prosecuting him in two prior cases, one of which was reversed on appeal for refusing to allow Millwee to stipulate to a prior conviction.  RT 245-47, 252-53.  Millwee testified that he overhead Lough say to his lawyer at the preliminary hearing that he did not think there were facts sufficient to allege special circumstances but that he was "going to shoot for them anyhow."  RT 276, 279.  Lough testified that he probably told Millwee's lawyer that it would be a difficult case in which to prove a special circumstance but that he would try anyway.  RT 257-58.  He said "it is time for Mr. Millwee to pay the piper" and that he thought his opinion on whether to seek death was persuasive among the group of prosecutors who made the capital charging decision.  RT 260-64, 273.

The trial judge commented that there was no evidence that Millwee was hostile to his mother, the shooting victim, and that consensual entry into his parents' house was the main issue in the case.  Prosecution witnesses, including the victim's husband (Petitioner's father), testified that Millwee was not allowed to enter the house unless the father was present.  Millwee disputed this in his guilt phase testimony and said his mother let him in the day of the shooting, as she had before.  In habeas, several

114

1  witnesses declared under oath that there was no such rule banning Millwee from the

2  house unless his father was there.

3       In his closing argument at guilt, the prosecutor argued that a felony-murder

4  theory was a stronger ground for a first-degree murder conviction than intentional

5  murder, and that under a felony-murder theory, it did not matter if the shooting was

6  accidental, as Millwee claimed, as long as the victim died in the course of a burglary or

7  robbery.  Further, the evidence showed that thousands of dollars in jewelry, cash, and

8  office equipment was left in the house, i.e., not stolen by Millwee.  In California, this is

9  a death penalty case.  Under the federal Constitution, it is not.

10  **THIRTY-THIRD CLAIM FOR RELIEF FOR DENIAL OF  PETITIONER'S**

11  **CONSTITUTIONAL RIGHT TO PROPORTIONATE PUNISHMENT**

12       Millwee's 33rd claim alleges that his constitutional rights were violated because

13  the death sentenced imposed on him is disproportionate to his culpability and the

14  crimes for which he was convicted and because the California Supreme Court fails to

15  engage in intercase or comparative proportionality review.  Amended Petition at 353-

16  69.  Millwee presented this claim to the California Supreme Court as the 24th Claim in

17  his direct appeal.  Lodgment 1 (Appellant's Opening Brief at 330-52).  The state court

18  denied the claim on the merits in a reasoned opinion, rejecting the claim that a death

19  sentence is disproportionate to Millwee's individual culpability and "adhering to [its]

20  position stated many times before that" intercase proportionality review "is not

21  constitutionally compelled."  *Millwee*, 18 Cal. 4th at 168.

22       Millwee shows above in his discussion of his ineffective assistance, insufficiency

23  of the evidence and other claims that the prosecution's case was weak at guilt, special

24  circumstances and penalty and that his case is not one of the "worst of the worst"

25  deserving of the death penalty.  During trial, the judge noted that there was no evidence

26  of hostility toward the victim and that there were real questions whether the prosecution

27  could prove that Millwee had the intent required for first degree murder under a theory

28  of intentional murder or felony-murder and whether the prosecution could prove the

1    special circumstances of robbery and burglary (consensual entry into the house being

2    the "sine qua non" of the case).  Further, at the time of the offense, Millwee was

3    homeless, had been drinking, had suffered decades of substance abuse and addiction

4    and had long-standing mental impairments.  His sentence is disproportionate with

5    regard to his culpability and when compared to similarly situated criminal defendants.

6    *See* Amended Petition at 363-65 (giving examples).  The California Supreme Court's

7    decision is based on an unreasonable determination of the facts given this record, and

8    therefore the Court reviews this claim *de novo*.

9           The California Supreme Court's failure to engage in intercase proportionality

10   review is contrary to the practice in other states (*see* Amended Petition at 362-63) and

11   contrary to the evolving standards of decency embodied by the Eighth Amendment.

12   *See, e.g,. Brumfield*, 135 S. Ct. 2269; *Hall v. Florida*, 134 S. Ct. 1986 (2014); *Miller v.*

13   *Alabama*, 132 S. Ct. 2455 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Kennedy v.*

14   *Louisiana*, 554 U.S. 407 (2008).  Millwee is entitled to relief.

15   **THIRTY-FOURTH CLAIM FOR RELIEF FOR CUMULATIVE ERRORS**

16   **DURING THE GUILT AND PENALTY PHASES OF PETITIONER'S TRIAL**

17          Millwee's 34th claim alleges that his constitutional rights were violated by a

18   combination of errors at guilt and penalty.  Amended Petition at 369-70.  Millwee

19   presented this claim to the California Supreme Court as the 25th Claim in his direct

20   appeal and as the 15th Claim of his exhaustion petition.  Lodgment 1 (Appellant's

21   Opening Brief at 352-54); Lodgment 1 (Exhaustion Petition at 273-74).  On appeal, the

22   state court denied the claim on the merits in a reasoned opinion (*Millwee*, 18 Cal. 4th at

23   168); in habeas, the state court summarily denied the claim on the merits.  Lodgment

24   11.

25          *Chambers v. Mississippi*, 410 U.S. 284 (1973), is "the seminal cumulative error

26   case" and constitutes clearly established federal law under AEDPA for the cumulative

27   error doctrine.  *Parle v. Runnels*, 505 F.3d 922, 927 & n.5, 934 (9th Cir. 2007).  "The

28   Supreme Court has clearly established that the combined effect of multiple trial court

116

errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Id.* at 927. "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Id.* "Furthermore, the cumulative nature of the challenged evidence does not necessarily render its inclusion (or exclusion) harmless." *Id.* at 928.

When cumulative error claims are based solely on claims of ineffective assistance of counsel, habeas petitioners must merely meet the *Strickland* test of prejudicially deficient performance to show a constitutional violation. *Strickland*, 466 U.S. at 695-96, requires courts to assess the aggregate impact of counsel's deficient actions when evaluating prejudice, and thus ineffective assistance claims have their own internal cumulative error component. *See also Sanders v. Ryder*, 342 F.3d 991, 1000-01 (9th Cir. 2003) ("When we examine whether trial counsel gave effective assistance, we examine all aspects of the counsel's performance at different stages, from pretrial proceedings through trial and sentencing. . . . Separate errors by counsel at trial and at sentencing should be analyzed together to see whether their cumulative effect deprived the defendant of his right to effective assistance."); *Libberton*, 583 F.3d at 1166; *Harris v. Wood*, 64 F.3d 1432, 1438-39 (9th Cir. 1995) (affirming grant of habeas relief on *Strickland* claim based on cumulative prejudice from trial counsel's numerous deficiencies); *Daniels v. Woodford*, 428 F.3d 1181, 1210, 1214 (9th Cir. 2005) (reversing denial of guilt relief and affirming grant of penalty relief where combination of counsel's guilt and penalty deficiencies cumulatively prejudiced petitioner).

When cumulative error claims are not based solely on *Strickland* claims, habeas relief is required when the combined prejudice of multiple constitutional errors "that might not be so prejudicial as to amount to a deprivation of due process when considered alone . . . cumulatively produce a trial setting that is fundamentally unfair." *Alcala v. Woodford*, 334 F.3d 862, 883 (9th Cir. 2003). Cumulative errors require

117

relief "where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parle*, 505 F.3d at 927. "Such 'infection' occurs where the combined effect of the errors had a 'substantial and injurious effect of influence on the jury's verdict.'" *Id.* "In simpler terms, where the combined effect of individually harmless errors renders a criminal defense 'far less persuasive than it might otherwise have been,' the resulting conviction violates due process." *Id*

In Millwee's case, individual errors combined to have a negative synergistic effect, prejudicing him at guilt and penalty. Millwee is entitled to relief based solely on the cumulative effect of his counsel's deficient performance. As Millwee shows in the ineffective assistance claims discussed above, had counsel conducted a reasonable investigation into prosecution witnesses, the facts of the crime, their client's life history, and retained necessary experts, they could have raised a reasonable doubt that Millwee was guilty of murder and that the special circumstances were true. They could have impeached prosecution witnesses on the crucial issue of consensual entry into the house and corroborated Millwee's testimony that he did not enter the house with the intent to steal and that the gun accidentally went off. Counsel could have undermined the credibility of the key prosecution witness, Don Millwee, by showing the lengths he went to try to secure a conviction—threatening witnesses, lying to them about the state of the evidence, etc.

The prejudice carried over to penalty, where the failure to investigate and impeach prosecution witnesses resulted in the jury receiving a falsely aggravated account of the circumstances of the crime and about Millwee's role in his family and his responsibility for his actions. On the other side of the ledger, counsel failed to investigate and present whole categories of mitigating evidence necessary to give the jury the information required to reach a reliable verdict and a reason to exercise mercy. Although the jury received snippets of evidence about Millwee's use of drugs and alcohol and his homelessness, counsel failed to present evidence of the length and

118

severity of Millwee's substance abuse and addiction; the fact that he was predisposed to substance abuse and addiction based on his family history, and therefore drinking alcohol and taking drugs were not simply or solely a matter of choice; and expert testimony of how Millwee's history of addiction, trauma (including physical and verbal abuse by his father), and head injuries and mental disorders severely impaired his daily functioning.  Millwee's bizarre in-court behavior−muttering to himself, picking at his feet−was apparent to jurors, and interviews by defense investigators put counsel on further notice to investigate Millwee's mental health and substance abuse history.  But they failed to do so, resulting in the penalty jury receiving a false portrait of Millwee at sentencing, the picture presented by Don Millwee, Sr. that Petitioner was the bad seed in an otherwise happy and healthy family, rather than the product of a dysfunctional and damaged family.  Defense counsel argued this latter theory in closing but had no facts to support it because of their inadequate investigation and failure to present the evidence they had obtained.  Thus, when the penalty jury asked if Millwee had been evaluated by a mental health professional, the answer was "no."  Penalty jurors are supposed to receive this type of information, and the declarations of Lee Norton, Pablo Stewart and Dale Watson show the prejudice from failing to give it to them.

The other errors noted in the arguments above enhance the prejudice from counsel's errors.  The prosecution presented false evidence on key issues in the case−whether Millwee was allowed into the house, whether the wheelchair was kept in the house or in the trunk of the car, etc.−and fought to ensure that Millwee's racial slur came into evidence.  The prosecutor's personal relationships with Millwee's relatives and his bias from prior prosecutions of Millwee led him to charge special circumstances even though he acknowledged they were a long shot given the facts of the case as he knew them−this case never should have been capitally-charged.  The trial court's errors in admitting into evidence the racial slur and other irrelevant, inflammatory evidence adds to the prejudice.

1    Under clearly established federal law and Ninth Circuit cases applying it, the

2    state court could not reasonably deny Millwee's cumulative error claim.  For example,

3    in *Thomas v. Hubbard*, 273 F.3d 1164, 1180 (9th Cir. 2002), *overruled in part by*

4    *Payton v. Woodford*, 346 F. 3d 1204 (9th Cir. 2003), the Ninth Circuit granted relief on

5    a cumulative error claim in case governed by AEDPA because several errors "adversely

6    affected [defendant's] ability to undermine the credibility of the prosecution's principal

7    witness" and "offer his own defense," where the strongest evidence against him "was

8    the uncorroborated testimony of a person who himself had both a motive and an

9    opportunity to commit the crime."

10    In *Mak v. Blodgett*, 970 F.2d 614, 617, 622 (9th Cir. 1992), the Ninth Circuit

11    granted penalty relief on a cumulative error claim because of "the refusal of the trial

12    court to admit at the penalty phase circumstantial evidence from which it might be

13    inferred that [the capital habeas petitioner's] co-defendant . . . and a third party . . .

14    rather than Mak, may have planned the massacre" and because "[d]efense counsel

15    failed to present any mitigating evidence regarding Mak's background."[23]  The Court

16    found the errors prejudicial even though Mak had been convicted of killing 13 people.

17    *Id*. at 616.  The case against Millwee was weaker at guilt and less aggravating at

18    penalty than the evidence against Mak.  Here, "the combined effect of individually

19    harmless errors render[ed]" Millwee's "defense 'far less persuasive than it might

20    otherwise have been . . . .'"  *Parle*, 505 F.3d at 927.  Accordingly, relief is required.

21    **THIRTY-FIFTH CLAIM FOR RELIEF FOR LETHAL INJECTION AS A**

22    **VIOLATION OF CONSTITUTIONAL GUARANTEES AGAINST CRUEL AND**

23    **UNUSUAL PUNISHMENT**

24    Millwee's 35th claim alleges that execution by lethal injection, the method by

25    which California plans to execute him, violates the Eighth Amendment ban on cruel

26

27    _____

     [23]  The Court also considered the impact of a faulty jury instruction.  *Mak*, 970

28    F.2d at 625.

and unusual punishment.  Amended Petition at 370-77.  Millwee presented this claim to the California Supreme Court as the 16th Claim of his exhaustion petition.  Exhaustion Petition at 275-86.  The state court summarily denied the claim on the merits. Lodgment 11.

California presently does not have a lethal injection protocol.  It has promised to present a new protocol in the fall of 2015 pursuant to a settlement agreement in state court litigation.  Millwee will brief this claim once a protocol is in place.  *See generally Glossip*, 135 S. Ct. 2726 (2015); *Baze v. Rees*, 553 U.S. 35 (2008).

## THIRTY-SIXTH CLAIM FOR RELIEF FOR INFLICTION OF THE DEATH PENALTY WITHOUT ANY LEGITIMATE GOVERNMENTAL PURPOSE

Claim 36 alleges that Millwee "has been denied his right to be free from cruel and unusual punishment . . . by the State's efforts to impose the death penalty upon Petitioner without any legitimate governmental purpose."  Amended Petition at 377. Millwee presented this claim to the California Supreme Court as Claim 17 of his exhaustion petition.  Exhaustion petition at 286-92.  The state court summarily denied the claim on the merits with no procedural bars.  Lodgment 11.

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015).  *Furman v. Georgia*, 408 U.S. 238 (1972), cited at page 380 of the exhaustion petition, prohibits arbitrariness in the selection of those eligible for the death penalty among the class of all murderers and arbitrariness in the selection for execution among those already sentenced to death.

Millwee's claim, in state court and here, is two-fold.  First, Millwee claims that his lengthy period of incarceration on death row awaiting execution is cruel and unusual because the long delay robs the death sentence of any legitimate retributive and deterrence value and is psychologically damaging, degrading and cruel to the inmate. Exhaustion petition at 288-89 (describing effect of lengthy delays in execution on death

1  row inmates); *Glossip*, 135 S. Ct. at 2769 (Breyer, J., dissenting) ("lengthy delays both

2  aggravate the cruelty of the death penalty and undermine its jurisprudential rationale").

3      Second, Millwee claims that the absence of legitimate state interests and "the

4  haphazard and arbitrary methods that the State has employed to implement the death

5  penalty upon Petitioner renders the imposition of the death penalty upon him cruel and

6  unusual punishment." *Id.* at 286-87.  Although also based on long post-conviction

7  delay, the crux of this claim is that the systemic delays in implementing the death

8  penalty in California render its implementation arbitrary.  Millwee thus noted in his

9  exhaustion petition that at the time he filed the petition in 2000, "only eight individuals

10 have been put to death since the reinstatement of the death penalty in California more

11 than two decades ago.  Under these circumstances, the death penalty serves no

12 retributive function." *Id.* at 291.[24]  This Court, per the Honorable Cormac J. Carney,

13 granted relief on this claim in *Jones*, 31 F. Supp. 3d 1050, and in *Alfaro v. Johnson*,

14 C.D. Cal. case no. CV 07-07072-CJC (Feb. 5, 2015), docket no. 89,[25] and vacated the

15 capital petitioners' death judgments.  This Court should do the same.

16     Millwee's death judgment was entered in 1990.  Amended Petition at 10.  He's

17 been incarcerated on death row for over 25 years, longer than the petitioners in *Jones*

18 and *Alfaro*.  Executing Millwee under California's dysfunctional death penalty scheme

19 where "so many are sentenced to death but only a random few are actually executed,

20 would offend the most fundamental of constitutional guarantees—that the government

21 shall not be permitted to arbitrarily inflict the ultimate punishment of death." *Jones*, 31

22 F. Supp. 3d at 1063.

23

24 _____

25     [24] In the past 15 years, the number of persons executed on California's death row
   has risen by five, to thirteen total.  *Jones v. Chappell*, 31 F. Supp. 3d 1050, 1064
26 (2014).

27     [25] The State has appealed the grants of relief in *Jones* and *Alfaro*; the Ninth
   Circuit has yet to rule in either case.
28

1    Executing Millwee would be unconstitutional for the additional reason that he is

2    incompetent to be executed.  *See* Claim 39.  In 2008, all four experts who examined the

3    question, including the State's expert, Daniel Martell, concluded that Millwee was

4    incompetent to assist federal habeas counsel.  Docket no. 115.  This Court entered a

5    stay based due to Millwee's incompetence.  *Id.*  In California's dysfunctional, delay-

6    ridden death penalty regime, selecting any one death row inmate for execution is

7    unconstitutionally arbitrary and cruel.  This is all the more so with respect to Donald

8    Millwee.

9    **THIRTY-SEVENTH CLAIM FOR RELIEF FOR UNCONSTITUTIONAL**

10   **DENIAL OF MEANINGFUL STATE COURT REVIEW AND INEFFECTIVE**

11   **ASSISTANCE OF APPELLATE AND STATE HABEAS COUNSEL**

12   Claim 37 alleges that Millwee's rights under the Eighth and Fourteenth

13   Amendments were violated when appellate and habeas review by the California

14   Supreme Court were not carried out in a full, fair and adequate manner.  Amended

15   Petition at 381-83.  These violations also violated his rights to equal protection, due

16   process, and the assistance of counsel.  *Id.*  The claim also alleges ineffective assistance

17   of appellate and state habeas counsel.  *Id.*  This claim was presented to the California

18   Supreme Court as the Eighteenth Claim in the exhaustion petition.  Exhaustion Petition

19   at 292-96.  The court summarily denied the claim on the merits and further ruled that

20   the claim was barred as untimely and successive "to the extent it alleges that evidence

21   was lost, or not preserved, because of delays in certifying the record for appeal."

22   Lodgment 11.

23   As noted above, California's defective capital post-conviction process does not

24   afford death row inmates meaningful review of their convictions and sentences.

25   Evidentiary hearings and other court-sponsored fact development are important because

26   they enable petitioners to obtain evidence from adverse parties to further prove their

27   claims; e.g., law enforcement personnel on prosecutorial misconduct claims, defense

28   counsel, often, on ineffective assistance claims.  But just four percent of capital

123

1  petitioners in California receive evidentiary hearings in state habeas.  *See* Arthur L.

2  Alarcón, *Remedies for California's Death Row Deadlock*, 80 S. Cal. L. Rev 697, 741,

3  749 (2007).  This means that over 90% of California capital habeas petitioners are

4  deprived of any meaningful process in the adjudication of their petitions in state court.

5  Millwee is one of them.

6       In contrast, some states grant evidentiary hearings in all habeas capital cases; in

7  other states, evidentiary hearings are mandatory unless the record demonstrates that the

8  petitioner is not entitled to relief; other states grant a hearing on all colorable claims;

9  and in other states an evidentiary hearing is granted whenever there is a disputed issue

10  of material fact.  *See supra* at 12-13 (providing citations).  It is no mere happenstance

11  that in each of the penalty-phase ineffective assistance cases where the United States

12  Supreme Court has granted relief, the petitioner was able to develop the record at an

13  evidentiary hearing in state court.  (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 370

14  (2000); *Wiggins v. Smith*, 539 U.S. 510, 539 (2003); *Rompilla v. Beard*, 545 U.S. 374,

15  378, 385 (2005); *Porter v. McCollum*, 558 U.S. 30, 32 (2009) (*per curiam*).  Although

16  each petitioner lost in state court and AEDPA applied to their case, they were able to

17  win relief in the High Court based on that record.  *See also* Randy Hertz & James S.

18  Liebman, *Federal Habeas Corpus Practice and Procedure*, § 20.1[a], at 1008

19  (likelihood of relief in habeas is related to whether evidentiary hearing is held).

20       In state habeas, Millwee alleged with specificity the basis of his constitutional

21  claims for relief; he supported his allegations with the evidence available to him

22  without subpoena power; and he requested an evidentiary hearing.  Despite his diligent

23  efforts, his claims were summarily denied without a hearing, discovery, or a written

24  opinion.

25       Denying Millwee relief in this Court without at least first affording him

26  discovery and evidentiary hearing to further prove his entitlement to relief, on top of

27  the summary denials in state court without a hearing, would result in the

28  unconstitutional suspension of the writ of habeas corpus.  U.S. Const., Art. I, § 9, cl. 2.

124

1    The Suspension Clause guarantees a prisoner in post-conviction proceedings at least

2    one adequate and effective opportunity to demonstrate the illegality of his detention,

3    including a "full and fair opportunity to develop the factual predicate of his claims."

4    *Boumediene v. Bush*, 553 U.S. 723, 779, 790 (2008).  The Suspension Clause does not

5    permit restriction of federal habeas review in cases like this one where the state court

6    did not afford the petitioner a full and fair opportunity to factually develop his claims.

7    *Miller v. Marr*, 141 F.3d 976, 977 (10th Cir. 1998) (Suspension Clause violation occurs

8    where a restriction on habeas renders the writ "inadequate or ineffective" to test the

9    legality of detention).

10        Millwee also alleges that he received ineffective assistance of state post-

11    conviction counsel.  *See also* Exhaustion Exhibit 194 (declaration of state habeas

12    counsel attesting to her deficient performance).  At a minimum, this ineffective

13    assistance is cause for any procedural defaults.  *Evitts v. Lucey*, 469 U.S. 387 (1985);

14    *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012); *Trevino v. Thaler*, 133 S. Ct. 1911,

15    1915, 1921 (2013); *Nguyen v. Curry*, 736 F.3d 1287, 1289-90 (9th Cir. 2013).

16    **THIRTY-EIGHTH CLAIM FOR RELIEF FOR VIOLATION OF**

17    **PETITIONER'S RIGHT TO BE COMPETENT IN HABEAS PROCEEDINGS**

18        This claim alleges that the final resolution of Millwee's habeas claims would

19    violate his constitutional rights because he is incompetent to assist habeas counsel, and

20    accordingly his habeas case must be stayed until his competence is restored.  Amended

21    Petition at 383-88.  This claim was presented to the California Supreme Court as the

22    19th Claim of the exhaustion petition.  Exhaustion Petition at 296-304.  The state

23    court's summary denial says that the 19th Claim is not denied on the merits but that the

24    motion for a stay made pursuant to the claim is denied on the merits and as moot.

25    Lodgment 11.  In 2008, this Court stayed the federal habeas action pursuant to this

26    claim after finding that Millwee was incompetent to assist habeas counsel, but then

27    lifted the stay in 2015 at Respondent's request under *Ryan v. Gonzales*, 133 S. Ct. 696

28

1    (2013).  Docket nos. 115, 122, 134.  Millwee reserves the right to request another stay

2    in the future if appropriate.

3    **THIRTY-NINTH CLAIM FOR RELIEF FOR VIOLATION OF PETITIONER'S**

4    **RIGHT NOT TO BE EXECUTED WHILE INCOMPETENT**

5        Millwee's 39th claim alleges that his execution would violate his Eighth

6    Amendment right to be free from cruel and unusual punishments and other

7    constitutional rights because he is incompetent to be executed.  Amended Petition at

8    389.  Millwee presented this claim to the California Supreme Court as the 20th Claim

9    in his exhaustion petition.  Exhaustion Petition at 305-06.  The court denied the claim

10    as premature.  Lodgment 11.  Because the state court did not adjudicate the claim on

11    the merits, this Court reviews the claim *de novo*.

12        *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti v. Quarterman*, 551 U.S.

13    930, 948-949 (2007), are clearly established federal law for this claim.  Millwee

14    understands that this claim may be premature because his execution is not imminent.

15    *Panetti*, 551 U.S. at 946-47.  Nevertheless, in 2008 this Court adjudged Millwee to be

16    incompetent to assist habeas counsel and stayed this case pursuant to Ninth Circuit law.

17    Docket no. 115.  All four experts who opined on the matter, including the state's

18    expert, Daniel Martell, agreed that Millwee was incompetent.  Docket nos. 105-06, 108,

19    113.  Dr. Martell concluded that "Mr. Millwee is not competent to proceed due to the

20    brain damage from his stroke that has resulted in severe physical and cognitive

21    impairments."  Docket no. 108 at 6.

22        After the Supreme Court's decision in *Gonzales*, 133 S. Ct. 696, the Court lifted

23    the stay at Respondent's request.  Docket nos. 122, 134.  Millwee's condition has not

24    improved.  Docket nos. 117-21.  Millwee argued in response to Respondent's motion to

25    lift the stay that he is incompetent to be executed and incompetent to be re-tried, and

26    that the Court should order settlement discussions.  Docket no. 127.  The Attorney

27    General represented that she lacked authority to settle the case, docket no. 128 at 5, and

28

1  the Court declined to order settlement talks.  Docket no. 134 at 10-11.  In any event,

2  Millwee is incompetent and cannot constitutionally be executed.

3                              **V.  REMAINING PETITION CLAIMS**

4          Millwee has not briefed here the remaining claims in his petition:  Claims 13, 16,

5  18, 21, 23, 24, 26, 28, 31, and 32.  For the reasons stated and shown in the petition, he

6  is entitled to relief on those claims.

7                                    **VI.  CONCLUSION**

8          For the forgoing reasons, and the reasons stated in his petition, the Court should

9  grant relief.  At a minimum, the Court should at least grant an evidentiary hearing on

10  Millwee's claims.

11                                        Respectfully submitted,

12                                        HILARY POTASHNER
                                          Federal Public Defender
13

14  DATED:  September 15, 2015          By  */s/  Mark R. Drozdowski*

15                                          MARK R. DROZDOWSKI
                                            Deputy Federal Public Defender
16
                                            Attorneys for Petitioner
17                                          DONALD RAY MILLWEE

18

19

20

21

22

23

24

25

26

27

28

                                              127